UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
SAMUEL RICARLOS MITCHELL, JR.,

                                    Plaintiff,            Case No.: 1:23cv01932(JLR)

        -against-


PLANNED PARENTHOOD OF GREATER NEW
YORK, INC., WENDY STARK individually, ANDREA
HAGAN individually, GILLIAN DEAN individually,
KEITH CORSO individually, and ANNE DAVIS
individually,
                                    Defendants.
-------------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

THE COCHRAN FIRM
**Attorneys for Plaintiff**
55 Broadway, 23rd Floor
New York, New York 10279
(Tel No.)   (212) 553-9215
(Facsimile) (212) 227-8763

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES……………………………………………….…….……….i

PRELIMINARY STATEMENT…………………………………………………........1

FACTS……………………………………………………………....................................2

STANDARD OF REVIEW……………………………………………………............4

ARGUMENT………………………………………………………….…………5

PLAINTIFF'S SECOND AMENDED COMPLAINT MUST NOT BE DISMISSED BECAUSE ITS CLAIMS ARE NOT TIME-BARRED..………………………......................................5

PLAINTIFF HAS ALLEGED FACTS TO STATE A CLAIM FOR RELIEF THAT IS PLAUSIBLE ON ITS FACE FOR DISCRIMINATION UNDER FEDERAL, STATE, AND CITY LAW.........................9

PLAINTIFF HAS ALLEGED ENOUGH FACTS TO STATE A CLAIM FOR RELIEF THAT IS PLAUSIBLE ON ITS FACE FOR HOSTILE WORK ENVIRONMENT UNDER FEDERAL, STATE, AND CITY LAW………………………………………………………………14

PLAINTIFF HAS PLEADED FACTS SUFFICIENT TO ESTABLISH RETALIATION AFTER ENGAGING IN PROTECTED CONDUCT UNDER FEDERAL, STATE, AND CITY LAW…..……16

PLAINTIFF HAS ALLEGED SUFFICIENT FACTS TO STATE A CLAIM FOR RELIEF THAT IS PLAUSIBLE AGAINST INDIVIDUALLY NAMED DEFENDANTS WHO MUST NOT BE DISMISSED……………...................................................................................20

CONCLUSION......................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdu-Brisson v. Delta Air Lines, Inc.*,
239 F.3d at 467. ……………….............................................................................................**12**

*Alfano v. Costello*,
294 F.3d 365, 374 ……………………………….........................................**14**

*Bagley v. Baruch College et al.*,
2012 WL 10007958………………………………………………….............................**16, 18**

*Baker v. Putnal*,
75 F.3d 190, 196…………………………………………….........................................**5**

*Barnum v. N.Y. City Transit Auth.*,
62 A.D.3d 736, 738, 878 N.Y.S.2d 454, 455-56 (2d Dep't 2009)……………………….. ……..**15**

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 555 (2007)……..………… ……………………………………..…..….......**5**

*Bendeck v. NYU Hosps.*,
77 A.D.3d 552, 553 (1st Dept. 2010) ……… ………………………………..…..….......**16**

*Berger-Rothberg v. City of New York*,
803 F. Supp.2d at 166……………………………………………….…..…..….........**7**

*Blalock v. Metals Trades, Inc.*,
775 F.2d 703, 709…………………………………………………….…..…..….............**12**

*Brice v. Sec. Operations Sys., Inc.*,
No. 00-cv-2438, 2001 WL 185136, ………………………………..….…………………………**21**

*Brightman v. Prison Health Serv., Inc.*,
33 Misc. 3d 1201……..………… ……………………………………………..…..**22**

*Brook v. Overseas Media, Inc.*,
69 A.D.3d 444, 445 (1st Dept. 2010) …………… ………………………………………..**16, 18**

*Bryant v. Verizon Communications Inc.*,
550 F.Supp.2d 513, 537 (S.D.N.Y. 2008) …………… …………………………………….....**16**

*Burhans v. Assembly of the State of New York,*
2014 NY Slip Op 30587(U) (Sup. Ct., N.Y. Cnty. 2014) …………….………...….…….........**20**

*Clark v. State of New York,*
302 A.D.2d942, [2003] ……………….…………...………………………...............**6**

*Cornwell v. Robinson,*
23 F.3d 694, 703-04 (2d Cir, 1994) …………………….……...……………………..…..……**6**

*Cruz v. Coach Stores, Inc.,*
202 F.3d 560, 570 (2d Cir. 2000) …………………… …………….………….........**13**

*D'Cunha v. Genovese/Eckerd Corp.,*
479 F.3d 193, 195………………………… …………….………….............................**12**

*De la Cruz v. N.Y.C. Human Resources Admin. Dep't of Soc. Servs.,*
82 F.3d 16, 20………………………… .………………….………………...........................**12**

*Duch v. Jakubek,*
588 F.3d 757, 762 (2d Cir. 2009) ………………………… ………………………..…….......**15**

*During v. City University of New York,*
No. 01 Civ. 9584, 2002 U.S. Dist. LEXIS 9796, 7…………………………...………….............**7**

*EEOC v. Suffolk Laundry Servs., Inc.,*
48 F. Supp.3d 497, 523………………… …………….………………………………...**21**

*Equal Employment Opportunity Commission v. Costco Wholesale Corporation,*
2018 WL 4289379, 5 (7th Cir. Ct. App. 2018) ………………………… ……………….……**10**

*Evans v. City of New York,*
2003 U.S. Dist. LEXIS 18281………………………… ……………………………..…...**6, 16**

*Father Belle Community Center. v New York State Division of Human Rights on Complaint of King*
221 A.D.2d 44………………………… …………….………………………..……........**15**

*Feingold v. State of New York,*
366 F.3d 138, 158………………………… …………………………………...............**21**

*Fletcher v. Dakota, Inc.,*
99 A.D.3d 43………………………… …………….………….………………...…**16, 17**

*Forrest v. Jewish Guild for the Blind,*
3 N.Y.3d 295, 310, 786 N.Y.S.2d 382, 394………. ………………… …………………………**15**

*Gavigan v. Clarkstown Cent. Sch. Dist.*,
84 F. Supp. 2d 540, 546……………...……………….………………...…………**12, 13**

*Gomes v. Avco Corp.*
964 F.2d 1330……………………………………… ……………………………………...**6**

*Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty.*,
252 F.3d 545, 554……………...………………… …………….……………...…………**21**

*Guzman v. News Corp.*,
No. 09 Civ. 09323(LGS), 2013 WL 5807058……………………………………………...**21**

*Harris v. City of New York*,
186 F.3d 243, 249……………………………………… …………………………….…**6**

*Henny v. New York State*,
842 F. Supp. 2d 530, 553-554……………………… ……………….…………………….......**12**

*Hernandez v. Bankers Trust Co.*,
5 A.D.3d 146, 148…………………………………………………………………….......**16**

*Hughes v. United Parcel Serv., Inc.*,
798 N.Y.S.2d 344, 344 …………………………………………………….......**6, 7**

*Johnson v. Xerox Corp.*,
 838 F. Supp. 2d 99, 105……………….…………………… ……………………...**15**

*Kaytor v. Elec. Boat Corp.*,
609 F.3d 537, 552…………………….………………………………….......................**19**

*Kwan v. Andalex Grp.*, LLC,
737 F.3d 834, 845…………..…………………………………………….......................**19**

*Lewis v. Triborough Bridge and Tunnel Authority*,
77 F. Supp. 2d 376, 384 (1999) ……………………………………….......................**22**

*Littlejohn v. City of N.Y.*,
795 F.3d 297, 319(2d Cir. 2015) ……………...……………………………...................**9, 19**

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
594 F.3d 383, 387…………………………………………….................................**5**

*Malena v. Victoria's Secret Direct*, LLC,
886 F. Supp. 2d 349, 362 …………………………………………………………...**17**

*Martin K Eby Constr. Co. v. Dallas Area Rapid Transit*,

369 F.3d 464…………………….....................................................**5**

*Matter of Henderson v. Town of Van Buren,*
281 A.D.2d 872, 723 N.Y.S.2d 282 ...……………………………….............**6**

*Matter of Lozada v Elmont Hook & Ladder Co. No. 1,*
2015 WL 6637312 (N.Y.A.D. 2 Dept.) ……………………………………...........**8**

*Mayers v Emigrant Bancorp, Inc.,*
96 F Supp 2d 434, 448 (S.D.N.Y. 2011) ……………………………………........**17**

*Mian v. Donaldson, Lufkin & Jenrette,*
7 F. 3d 1085…………………………...................................................**9**

*Mittl v. NY State Div. of Human Rights,*
100 N.Y.2d 326, 330, 763 N.Y.S.2d 518, 794 N.E.2d 660 [2003] ……………………….....**9**

*Patane v. Clark,*
508 F.3d 106,113…………………...................................................**14**

*Quinn v Green Tree Credit Corp.,*
159 F3d 759, 766 (2d Cir. 1998) ……………………………………..…..……..…………..**6**

*Ramos v. Marriott Intern., Inc.,*
134 F.Supp.2d 328, 338………………………………...…...…..…………..…....………...**12**

*Rojas v. Roman Catholic Diocese of Rochester,*
660 F.3d 98, 107 n.10………….……………………………………………………………**21**

*Salgado v. The City of New York,*
2001 U.S. Dist. LEXIS 3196, 2001 WL 290051 (S.D.N.Y. 2001) ……………...……..........**6**

*Sharpe v. MCI Communications Servs., Inc.,*
684 F.Supp.2d 394, 406 (S.D.N.Y. 2010) ……………………………………………….........**5**

*Sier v. Jacobs Persinger & Parker,*
276 A.D.2d 401, 714 N.Y.S.2d 283 [2000] ……………………………..…...................**6**

*Strauss v. New York State Dep't of Educ.,*
26 A.D.3d 67, 69, 805 N.Y.S.2d 704, 706-07 (2005)...………………………...……….....**8**

*Summa v. Hofstra Univ.,*
708 F.3d 115, 124 (2d Cir. 2013) …………………………………………….**14**

*Terry v. Ashcroft,*
336 F.3d 128, 148 (2d Cir. 2003) ……………………………………………...**14**

*Turner v NYU Hosps. Ctr.,*
784 F Supp 2d 266, 285-286 (S.D.N.Y. 2011), *affd*……………………………………………**17**

*Vitale v. Rosina Food Prods.,*
283 A.D.2d 141, 145, 727 N.Y.S.2d 215, 219 (4th Dep't 2001). …………………………………**15**

*Zipes v. Trans World Airlines, Inc.,*
455 U.S. 385, 398, 102 S.Ct. 1127, 1135, 71 L.Ed.2d 234 (1982)………… …………………....**5**

*Other*

FRCP 12(b)………………………………………………………………………………....**1, 3, 10, 18**

N.Y.S. Executive Law § 296(1)(h)…………………………………………………………………**14**

<u>**PRELIMINARY STATEMENT**</u>

Plaintiff's Second Amended Verified Complaint (Complaint ("Plaintiff's Complaint" and/or "Am. Compl." and/or "the SAC") addresses multiple employment law violations by Defendants including, without limitation, willful and deliberate disparate treatment of Plaintiff during the course of his employment based upon his age, race, color, religion, disability, sex/sexual orientation, gender, as well as a hostile work environment. Following Plaintiff's complaints and other protected activity including filing the initial lawsuit in this case, Plaintiff was wrongfully terminated within a three-week time frame. The Second Amended complaint pleads each of these causes of action sufficiently to satisfy the *Iqbal* standard and renders Defendants' motion to dismiss frivolous and without merit. This court must therefore deny the motion in its entirety.

Defendants PLANNED PARENTHOOD OF GREATER NEW YORK, INC. ("**PPGNY**"), WENDY STARK individually ("**STARK**"), ANDREA HAGAN individually ("**HAGAN**"), GILLIAN DEAN individually ("**DEAN**"), KEITH CORSO individually ("**CORSO**"), and ANNE DAVIS individually ("**DAVIS**") (collectively together referred to as "**Defendants**") have filed Defendants' Motion to Dismiss (hereinafter referred to as "Defendant's Motion" and/or "the said Motion to Dismiss" and/or "the MTD" and/or "the MTDSAC") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (hereinafter referred to as "FRCP"), seeking to dismiss Plaintiff's Second Amended Complaint against the Defendants in its entirety.

Defendants' arguments are frivolous in the face of the SAC which contains timely, sufficiently pleaded facts and very specific allegations, comprising but not limited to discrimination based on age, race, color, religion, disability, sex/sexual orientation and gender by staff imbued with supervisory authority, differential treatment *vis-a-vis* hostile work environment by staff imbued with supervisory authority, protected activity, consequent retaliation, and

1

establishes the Defendants' liability for all causes of action under the applicable Federal (1981, Title VII) and State Law. The State Law claims, the Executive Law § 296 (hereinafter referred to as "New York State Human Rights Law" and/or "NYSHRL") and the New York City Administrative Code, § 8-107 (hereinafter referred to as "New York City Human Rights Law" and/or "NYCHRL") (collectively "NYHRL") have a lower standard of proof than Federal law. For these reasons the MTDSAC must be denied in its entirety.

## FACTS

As the Defendants have paid scant attention to the actual allegations of Plaintiff's Amended Complaint and instead have ignored and misstated them in their Motion to Dismiss, Plaintiff will summarize the relevant allegations here.

Plaintiff's Complaint states that even before his hiring by **PPGNY** on or about September 27, 2021, and continuing "throughout Plaintiff's employment, he was, and still is, subjected to a continuing pattern and practice of discrimination and hostile work environment based upon his age, race, color, disability, religion, and gender and in retaliation for complaining about **PPGNY's** discriminatory actions and other wrongdoing,[1]" that "that **PPGNY** and **STARK**, **HAGAN**, **DEAN**, **CORSO**, and **DAVIS** engaged, and continue to engage, in a pattern and practice of discrimination against older black male employees, African American male employees, employees with perceived disabilities, and employees who engage in protected conduct on behalf of themselves and other minority employees,[2]" and provides an extensive list of specific examples including, *inter alia*, the discriminatory shunning by board members in contrast to treatment of Plaintiff's non-disabled, non-Christian, younger, white, female counterparts[3], the discriminatory,

---

[1] Am. Compl. ¶ 45,
[2] Am. Compl. ¶ 46,
[3] Am. Compl. ¶¶ 55-55

unreasonable and unjustified interrogation of Plaintiff's pastor[4], the failure to take corrective action in response to protected conduct[5], discriminatory and retaliatory micromanaging by **HAGAN**[6], **CORSO**'s discriminatory misconduct regarding Plaintiff's disability and sexual orientation which was intended to humiliate and intimidate Plaintiff in front of co-workers[7], the deliberate, unjustified, unreasonable and disparate use of racially-coded terms built upon cruel, ugly and discriminatory stereotypes demeaning to black, African American men by **DEAN** and **DAVIS**[8] discriminatory disruptions of Plaintiff's scheduled plans with Dr. Ronald Wyatt[9] deliberately failing to promote Plaintiff in violation of **PPGNY's** long standing practice of automatically promoting the COO to interim CEO when the CEO position is vacated and despite his credentials, title, qualifications, accolades, experience and performance, at a cost of a lucrative bonus worth around $13,0000, unlike his younger, white, Caucasian, female counterparts[10], deliberate and discriminatory residency requirements, at the cost of increased living expenses, increased travel, and increased time away from Plaintiff's family, unlike his similarly situated non-disabled, non-Christian, younger, female white, Caucasian counterparts[11], abusive, defamatory, and discriminatory comments by **HAGAN** in front of **PPGNY** executive leaders, business partners and CHN peers[12], retaliatory and discriminatory comments regarding Plaintiff's disability by **PPGNY** executive board committee members[13], **STARK**'s unreasonable and unjustified discriminatory, retaliatory onslaught of harassment against Plaintiff[14], and Defendants' wrongful pretextual termination of Plaintiff's employment temporally proximate to his protected conduct

---

[4] Am. Compl. ¶ 57
[5] Am. Compl. ¶¶ 61-64, 73-74, 100-102, 133-135
[6] Am. Compl. ¶¶ 67-59
[7] Am. Compl. ¶¶ 71-74, 76-77
[8] Am. Compl. ¶¶ 79-83
[9] Am. Compl. ¶105
[10] Am. Compl. ¶¶ 109-115
[11] Am. Compl. ¶¶117-119
[12] Am. Compl. ¶¶117-125
[13] Am. Compl. ¶¶129-132
[14] Am. Compl. ¶¶142-152

from earlier that very same day[15], and the wrongful conduct set forth in the SAC are repeated specific examples of discriminatory activity creating a hostile work environment.

The Complaint lists specific comparators to whom Plaintiff was treated less well including Rosalba Messina (Caucasian Female) who was promoted ahead of Plaintiff to interim CEO despite being less qualified and who received a 13k bonus. (SAC Para. 109-115). Messina, Zoee Davidson, and Virginia Morin (all Caucasian females) were also not required to fulfill the residency requirement that Plaintiff was forced to fulfill. (Par. 117, 118). Plaintiff was treated less well than **CORSO, DEAN, MCCLARY, LISA WILLIAMS** and **DIPAL SHAH** (all members of the **PPGNY** executive team) by **STARK** who minimized and demeaned him by openly, and in front of the executive leadership team, telling Plaintiff "Samuel, I don't care and I don't agree with you!" (Id. at 146, 147).

The complaint likewise alleges discriminatory and offensive comments that were made to Plaintiff by defendants including **CORSO** who mocked him by saying "What's wrong Samuel, have you never worked with a gay man before? We are very dramatic and it's clear you are not cut out for this job." (Id. at 76). Defendants **DEAN** and **DAVIS** referred to Plaintiff in stereo typical fashion as "**ANGRY, OFFENSIVE, OUT OF CONTROL, HARSH, and AGGRESSIVE.**" Plaintiff was also subjected to the written, discriminatory, and offensive statement "**WOMEN RUN SHIT.**" (Id at 150). When Plaintiff took protected action, including filing this lawsuit, he was fired in retaliation.

## **STANDARD OF REVIEW**

Defendants move to dismiss the SAC for failure to state a claim pursuant to FRCP **12(b)(6)** (hereinafter "Rule 12(b)(6)"). When considering a motion to dismiss pursuant to Rule 12(b)(6),

---

[15] Am. Compl. ¶¶153-158

the Complaint's allegations must be construed in the light most favorable to the Plaintiff. The court must accept as true all of the Plaintiff's factual allegations and draw all reasonable inferences from them. *Baker v. Putnal*, 75 F.3d 190, 196 (5ᵗʰ Cir. 1996). The "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464 (5th Cir. 2004). The Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). Applying these standards, Plaintiffs' causes of action in the SAC should survive Defendants' Motion.

## **ARGUMENT**

**PLAINTIFF'S SECOND AMENDED COMPLAINT MUST NOT BE DISMISSED BECAUSE ITS CLAIMS ARE NOT TIME-BARRED**

Defendants' Motion to Dismiss asserts that none of Defendants' wrongful conduct pre-dating June 4, 2022, may be considered as part of this lawsuit or for the purposes of this motion; that position is not consistent with the prevailing case law. The limitations period is not jurisdictional and may be tolled in certain situations including "when equity so requires." *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 398 (1982), at 1135.

Further, if the Court were to apply the June 4, 2022, starting point, it is settled that the continuing violation doctrine delays commencement of the three-year statute of limitations applicable to discrimination claims.[16] The doctrine provides an exception to the limitations period "where there is proof of specific ongoing discriminatory policies or practices, or where specific

---

[16]*Salgado v. The City of New York*, 2001 WL 290051 (S.D.N.Y. 2001) ("the existence of a continuous policy or practice delays the commencement of the statute of limitations until the last discriminatory act in furtherance of that policy or practice."); *Cornwell v. Robinson*, 23 F.3d 694, 703-04 (2d Cir, 1994); *Evans v. City of New York*, at 10-11 (S.D.N.Y. Oct. 9, 2003); *Clark v. State of New York*, 302 A.D.2d 942, 945 [2003];*Matter of Henderson v. Town of Van Buren*, 281 A.D.2d 872 [2001]; *Sier v. Jacobs Persinger & Parker*, 276 A.D.2d 401 [2000].

and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Quinn v Green Tree Credit Corp.*, 159 F3d 759, 766 (2d Cir. 1998).

Under the continuing violations doctrine, a plaintiff "must point to his disparate treatment stemming from a continuous practice of intentional discrimination." *Hughes v. United Parcel Serv., Inc.*, 798 N.Y.S.2d 344, 344 (Sup. Ct. N.Y. County. June 28, 2004) (quoting, *Harris v. City of New York*, 186 F.3d 243, 249 (2d Cir. 1999); citing, *Gomes v. Avco Corp.* 964 F.2d 1330 (2d Cir. 1992). In *Harris,* the Court held that the continuing violation doctrine applied by delaying the start of the three-year statute of limitations where "plaintiff's allegations that he was passed over for a promotion based on his disability, and that the defendant had a policy of no promotions or other accommodation of employees with disabilities were enough to withstand a motion to dismiss, notwithstanding that plaintiff could point to no specific instance where his employer failed to promote him on a particular date."

Further, the Court in *Hughes* held that the plaintiffs alleged numerous "instances where they were passed over for promotions, while their non-African-American counterparts were given the promotions, many of which occurred within the three year statute of limitations," and contrary to Defendants' assertions, "as discovery is in its early stages, plaintiffs' failure to provide admissible evidence to support their assertions regarding the discriminatory promotion mechanism is not fatal to their claims alleging a 'pattern or practice' of discrimination.[17]"

The SAC, as summarized in the facts section above, lists numerous examples of specific events of discrimination, harassment, and complaints followed by retaliatory actions, prior to June

---

[17] *Hughes*, 798 N.Y.S.2d at 344 (citing *During v. City University of New York*, No. 01 Civ. 9584, 2002 U.S. Dist. LEXIS 9796, 7 (S.D. N.Y. 2002)).

4, 2022, which supports Plaintiff's claim that Defendants engaged in a continuous practice and policy of discrimination.

In addition, the discriminatory conduct described arose in the context of Defendants' long-standing pattern of retaliation, harassment, disparate treatment, and Plaintiff otherwise being continuously subjected to a hostile work environment, as explicitly detailed in the SAC at paragraph 171, "**Plaintiff claims a continuous practice of discrimination and makes all claims herein under the continuing violations doctrine**."

Defendants' discriminatory, intimidating, and harassing acts before and after June 4, 2022, constitute a retaliatory harassment practice. *Berger-Rothberg v. City of New York,* 803 F. Supp.2d at 166 ("A hostile work environment itself can constitute an adverse employment action, the third prong required to establish retaliation.").

Defendants never adequately investigated Plaintiff's numerous complaints of discrimination and of retaliation, that such behavior occurred over such a considerable period, may be said to amount to a policy. **STARK**, **HAGAN**, **DEAN**, **CORSO**, and **DAVIS** acted with unabashed retaliatory motivation both before and after June 4, 2022. This behavior was emboldened by Defendants' custom and practice that supervisors will always back other supervisors even when they know the supervisor is wrong. Defendants' retaliatory behavior before June 4, 2022, is sufficiently related to the retaliatory behavior after June 4, 2022. Defendants' continuing actions were part of a pattern of conduct that created a hostile and discriminatory work environment that fits squarely with the wrongful conduct detailed above as occurring during the period between late 2021 and March 2023.

This hostile work environment occurred well within the statute of limitations and is the anchor that brings within the statute of limitations all of the incidents that transpired beforehand,

and Defendants' discriminatory acts are all bound together by their similarity into a unified and continuous plot and did not transpire over the course of isolated dates. The events outside the statutory period may be considered in conjunction with the acts within the statutory period. *Strauss v. New York State Dep't of Educ.,* 26 A.D.3d 67, 69 (2005); *Matter of Lozada v Elmont Hook & Ladder Co. No. 1,* 2015 WL 6637312 (N.Y.A.D. 2 Dept.)

Therefore, Plaintiff's claims are timely and all allegations of wrongful conduct leading up to the wrongful termination and which constituted continuing violations must be considered for the purposes of this motion. Defendants have failed to meet their *prima facie* burden of demonstrating that Plaintiff's claims are time-barred, or that the continuing violation doctrine does not apply to claims alleged to have been part of a continuing pattern of conduct, and the MTDSAC fails to address Plaintiff's legitimate assertions of adverse employment actions occurring before June 4, 2022, which satisfy the requirement of a discriminatory act occurring within the statute of limitations period.

Additionally, facts arising before June 4, 2022, can be used as background evidence in support of Plaintiff's timely pleaded claims. Consequently, this Court need not disregard the pre-June 4, 2022, allegations when considering Plaintiff's claims, nor must it analyze the post- June 4, 2022, allegations in a vacuum. Plaintiff was subject to a practice of retaliatory harassment/discrimination from 2021 to 2023, and Defendant's pre-June 4, 2022, conduct provides important background to their later conduct.

**PLAINTIFF HAS ALLEGED FACTS TO STATE A CLAIM FOR RELIEF THAT IS PLAUSIBLE ON ITS FACE FOR DISCRIMINATION UNDER FEDERAL, STATE, AND CITY LAW**

To establish a discrimination claim under Section 1981, ADA, ADEA, and Title VII a plaintiff must allege; (1) the plaintiff is a member of a protected group; (2) an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the

statute. *Mian v. Donaldson, Lufkin & Jenrette*, 7 F. 3d 1085, at 1087-88 (2nd Cir. 1993). The SAC's allegations establish a claim of employment discrimination and satisfy all three elements of Section 1981 and Title VII.

The essential elements a Plaintiff must establish for a race discrimination claim under NYHRL are: (1) membership in a protected class, (2) qualification to hold the position, (3) adverse employment action, and (4) "circumstances giving rise to a an inference of discrimination" *Mittl v. NY State Div. of Human Rights*, 100 N.Y.2d 326, 330, 763 N.Y.S.2d 518, 794 N.E.2d 660 [2003]. In other words, "absent direct evidence of discrimination," to survive a motion to dismiss a claim of employment discrimination in violation of Section 1981, Title VII, and the NYSHRL, a plaintiff must plausibly allege facts that would support a finding that she suffered an adverse employment action and "has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of N.Y.,* 795 F.3d 297, at 311.

 Plaintiff's SAC has established the elements required for a *prima facie* case of discrimination, specifically, that he is an older, disabled, Christian, heterosexual, black, African-American man who suffered multiple adverse employment actions including, *inter alia*, pretextual wrongful termination. Plaintiff has consistently alleged that he was subjected to multiple adverse employment actions based on unlawful discriminatory and retaliatory reasons. Plaintiff alleges **PPGNY** executives were aware of this type of conduct in the workplace yet failed to take any corrective action against it. Plaintiff alleges he was qualified for his position, and specifically alleges he received no negative marks regarding his work performance until after he engaged in protected conduct. The SAC contains allegations that plausibly demonstrate race and other protected categories to be but-for causes of Plaintiff's sustained injuries. It states, "Tellingly Plaintiff is the first *black*, *African American* male on **PPGNY**'s executive leadership team." Am.

Compl. ¶ 40. "Throughout Plaintiff's employment, he was…subjected to a continuing pattern and practice of discrimination and hostile work environment based upon his… *race, color*" Am. Compl. ¶ 41. "Plaintiff asserts that **PPGNY** and **STARK, HAGAN, DEAN, CORSO,** and **DAVIS** engaged, and continue to engage, in a pattern and practice of discrimination against older *black* male employees, *African American* male employees" Am. Compl. ¶ 42. **PPGNY** required Plaintiff to undergo a disproportionate number of background checks which is so far above what younger, Caucasian, and *non-disabled* prospective employees go through as to be clearly discriminatory and harassing." Am. Compl. ¶ 44. "**PPGNY** and/or **PPGNY**'s board members do not treat similarly situated *white*…employees in this manner" Am. Compl. ¶ 47. "Plaintiff was shunned by board members who made these comments. Non-African American, non-disabled, non-Christian ministers were not treated in a similar fashion." Am. Compl. ¶ 51. The failure to adequately address Plaintiff's complaints emboldened **HAGAN, DEAN,** and **DAVIS** to continue discriminating and retaliating against Plaintiff. Non-African American, Non-Christian, Non-disabled employees were not treated in the same fashion when they engaged in protected activity at **PPGNY**." Am. Compl. ¶¶ 59-60. "**HAGAN** did not hold other non-black, older, non-African American or female members of **PPGNY**'s executive team to the same standard with respect to monitoring or micromanagement. **HAGAN**'s holding of Plaintiff to a different standard than the other team members is stained with racist overtones which play into her preferred negative stereotypes about black and African American men in the workplace and beyond." Am. Compl. ¶¶ 64-65. "**DEAN** and **DAVIS** both began subjecting Plaintiff to discriminatory comments based on Plaintiff's age, race, color, and gender, including referring to him with racist terms like "**ANGRY**," "**OFFENSIVE**," "**OUT OF CONTROL**," "**HARSH**," and "**AGGRESSIVE**." Am. Compl. ¶ 75. "**DEAN** made offensive racially discriminatory comments regarding other black,

African American employees, including "**SHE WAS A LOUD BLACK WOMAN,**" in reference to Ms. Merle McGee, a black, African American **PPGNY** Chief Equity & Engagement Officer. These comments by **DEAN** and **DAVIS** are stained with racist overtones which play into their preferred negative stereotypes about black and African American men in the workplace and beyond." Am. Compl. ¶¶ 81-82. "The interim CEO position and the attendant cash bonus were discriminatorily withheld from Plaintiff due to his age, race, color, disabling condition, religion, and gender, and because Plaintiff engaged in protected activity by complaining about **PPGNY**'s unlawful misconduct." Am. Compl. ¶¶ 112. "**HAGAN** subjected Plaintiff to this retaliatory onslaught of public ridicule because he engaged in protected activity and because he is the only black, African American male employee on **PPGNY**'s executive leadership team and because **HAGAN** is a Board Director for both **PPGNY** and CHN." Am. Compl. ¶ 119. "**HAGAN**'s comments and conduct are clearly discriminatory because she does not subject white, Caucasian, and female employees to similarly humiliating, defamatory comments in the presence of their colleagues." Am. Compl. ¶ 122. "**PPGNY** and **PPGNY**'s board members engaged in a pattern and practice of discrimination against black employees" Am. Compl. ¶ 136. "white, Caucasian male **PPGNY** Board member, Mr. Andy Herz asked a black, African American female employee who wore her hair in twists, 'Hey Dawn, how do you get your hair all on one side, I can't do that?' Plaintiff, who witnessed this humiliating and racist comment, was emotionally sickened at the racially hostile work environment that was allowed to exist within **PPGNY**'s upper management." Am. Compl. ¶¶ 148-149. "Rudimentary internet research paints a similarly distressing picture of discriminatory abuse and misconduct by **PPGNY** and those occupying the most powerful positions within **PPGNY**." Am. Compl. ¶ 158.

Given "'but for' causation is satisfied when the plaintiff establishes that the defendant's

discriminatory intent more likely than not was the basis of the adverse employment action," *Blalock v. Metals Trades, Inc.,* 775 F. 2d at 709 to suggest that Plaintiff did not state but-for causation is without merit, frivolous and sanctionable.

Additionally, Plaintiff's burden to establish a *prima facie* case of discrimination under the ADEA is "minimal" and the evidence must be viewed "in Plaintiff's favor.[18]" The requirement to establish a prima facie case "is neither 'onerous' nor intended to be 'rigid, mechanized or ritualistic.'" *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d at 467. Indeed, "the burden is so minimal that some courts simply assume the existence of a prima facie case." *Ramos v. Marriott Intern., Inc.*, 134 F.Supp.2d 328, 338 (S.D.N.Y. 2006). Furthermore, "The requirements of proof of age discrimination are the same as that for proving discrimination under Title VII," and "[t]he burden to establish a prima facie case is *de minimis*." *Gavigan v. Clarkstown Cent. Sch. Dist.*, 84 F. Supp. 2d 540, 546 (S.D.N.Y. 2000). The *prima facie* elements "of an employment discrimination claim are 'virtually identical' under the New York Executive Law and Title VII." *Gavigan*, 84 F. Supp. 2d at 546.

Finally, to establish a *prima facie* case of disparate treatment discrimination under the ADA, a plaintiff must allege that (1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of his disability or perceived disability.

Plaintiff was over the age of 40, qualified for his position since, among other things, he has

---

[18] *Henny v. New York State*, 842 F. Supp. 2d 530, 553-554 (S.D.N.Y. 2012) (citing *D'Cunha v. Genovese/Eckerd Corp.*, 479 F.3d 193, 195 (2d Cir. 2007) (holding that inference of age discrimination was shown where plaintiff was passed over for hiring in favor of two others, one of whom had a "significant enough" difference in age from the plaintiff); *De la Cruz v. N.Y.C. Human Resources Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 20 (2d Cir. 1996) (noting that *prima facie* case of discrimination may be demonstrated by showing that the plaintiff "was replaced by someone not a member of his protected class").

over 17 years of experience, suffered adverse employment action by, among other things, being singled out for workplace abuse, ridicule and humiliation, discriminatorily micromanaged and otherwise harassed, deliberately and discriminatorily passed over for promotion and bonus opportunities, and ultimately terminated, and the circumstances surrounding the adverse actions and his termination give rise to an inference of discrimination since, among other things, he was terminated after years of service at the age of 41, while younger comparable employees, were treated significantly better and more favorably than Plaintiff. Defendants discriminated against Plaintiff on the basis of his disability, in violation of the NYHRL, by treating him differently from and less favorably than similarly situated employees who were not disabled and subjecting him to disparate working conditions and other disparate terms and conditions.

Drawing all reasonable inferences in Plaintiff's favor, as the Court must, the SAC makes it clear that his experiences stand in stark contrast to other **PPGNY** employees and board members who did not share Plaintiff's protected characteristics. Defendants' conduct, taken together with the close temporal proximity of Plaintiff's complaints of discrimination and Defendants' revocation to his right to an investigation, demonstrate that the Defendants' adverse employment actions were clearly motivated by discriminatory and retaliatory animus, in violation of Title VII, Section 1981, the ADEA, the ADA, and the NYHRL.

Accordingly, Plaintiff's discrimination causes of action should not be dismissed, because Plaintiff has alleged enough facts to state plausible claims of relief. Therefore, the Motion to Dismiss should be denied in its entirety.

**PLAINTIFF HAS ALLEGED ENOUGH FACTS TO STATE A CLAIM FOR RELIEF THAT IS PLAUSIBLE ON ITS FACE FOR HOSTILE WORK ENVIRONMENT UNDER FEDERAL, STATE, AND CITY LAW**

Defendants' argument that Plaintiff's well-pleaded hostile work environment claims are defective is also without merit, given that, to avoid dismissal under Rule 12(b)(6), a plaintiff need

only plead facts sufficient to support the conclusion that she was faced with "harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse," and "[the Second Circuit has] repeatedly cautioned against setting the bar too high" in this context." *Patane v. Clark,* 508 F.3d 106,113 (2d Cir.2007), at 113 (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003). It must also be noted that the NYHRL does not require a claim of harassment to meet the same "severe or pervasive" standards as Title VII or Section 1981, despite Defendants' contentions otherwise.[19]

Additionally, even a single act can meet the threshold of severe and pervasive "if, by itself, it can and does work a transformation of the plaintiff's workplace." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (internal quotation marks omitted).

"[T]o prevail on a hostile work environment claim, a plaintiff must make two showings: (1) that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment and (2) that there is a specific basis for imputing the conduct creating the hostile work environment to the employer." *Summa v. Hofstra Univ.*, 708 F.3d 115, 124 (2d Cir. 2013) (quoting *Duch v. Jakubek*, 588 F.3d 757, 762 (2d Cir. 2009).

In terms of establishing employer liability, when the discriminator is the victim's supervisor, as is the case in the present matter, the employer will normally be strictly liable. *Johnson v. Xerox Corp.,* 838 F. Supp. 2d 99, 105(W.D.N.Y. 2011). *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 312, 786 N.Y.S.2d 382, 395 (2004); *Barnum v. N.Y. City Transit Auth.*, 62 A.D.3d 736, 738, 878 N.Y.S.2d 454, 455-56 (2d Dep't 2009); *Vitale v. Rosina Food Prods.*, 283 A.D.2d 141, 145, 727 N.Y.S.2d 215, 219 (4th Dep't 2001).

---

[19] N.Y.S. Executive Law § 296(1)(h).

However, "a hostile work environment claim may be made out in the absence of proof of linkage between the offensive conduct and decisions affecting employment." *Father Belle Community Ctr.*, 221 A.D.2d at 50. Additionally, a charge alleging a hostile work environment claim "will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Greene v. Trustees of Columbia Univ.*, 234 F. Supp. 2d 368, 377 (S.D.N.Y. 2002).

The SAC and the facts section hereinabove describe at great length the horrific conditions Plaintiff endured at **PPGNY**, including multiple instances of public outbursts intended to humiliate and intimidate the Plaintiff.

Thus, under the totality of the circumstances, the workplace discrimination, harassment, and retaliation that Defendants subjected Plaintiff, including but not limited to attempts to terminate, actual termination, and post-termination isolation were severe enough to establish a hostile work environment claim under state law. *Evans v. City of New York*, 2003 U.S. Dist. LEXIS 18281, at 16-17 (a reasonable juror could find that, in view of the totality of the circumstances, Plaintiff was subjected to a hostile work environment in retaliation for filing a discrimination complaint); *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000) ("Determining whether workplace harassment was severe or pervasive enough to be actionable depends on the totality of the circumstances").

Moreover, the issue of whether harassment of an employee is objectively severe or pervasive is a matter for the jury and thus inappropriate for a motion to dismiss. *Equal Employment Opportunity Commission v. Costco Wholesale Corporation*, 2018 WL 4289379, 5 (7th Cir. Ct. App. 2018). Accordingly, Plaintiff's well and timely-pleaded hostile work environment claims under ADA and NYHRL should not be dismissed, because Plaintiff has alleged enough facts to

state a plausible claim of relief. Therefore, the said Motion to Dismiss should be denied in its entirety.

<u>**PLAINTIFF HAS PLEADED FACTS SUFFICIENT TO ESTABLISH RETALIATION AFTER ENGAGING IN PROTECTED CONDUCT UNDER FEDERAL, STATE, AND CITY LAW**</u>

To establish a claim of unlawful retaliation under Section 1981, Title VII, ADA, as well as the NYHRL, a Plaintiff must show: "(1) participation in a protected activity known to defendant; (2) an adverse employment action; and (3) a causal connection between the protected activity and the adverse employment action." *Fletcher v. Dakota, Inc.,* 99 A.D.3d 43, (1st Dept. 2012); *Bendeck v. NYU Hosps.,* 77 A.D.3d 552, 553 (1st Dept. 2010); *Hernandez v. Bankers Trust Co.,* 5 A.D.3d 146, 148 (1st Dept. 2004). "**'Protected activity' refers to action taken to oppose or complain about any discriminatory practices prohibited by the state and city human rights statutes.**" *Bagley,* 2012 WL 10007958, citing *Forrest*, 3 N.Y.3d at 313 n.11; *Brook v. Overseas Media, Inc.,* 69 A.D.3d 444, 445 (1st Dept. 2010); *Sharpe v. MCI Communications Servs., Inc.,* 684 F.Supp.2d 394, 406 (S.D.N.Y. 2010); *Bryant v. Verizon Communications Inc.,* 550 F.Supp.2d 513, 537 (S.D.N.Y. 2008).

To establish a *prima facie* case of ADA retaliation, [the plaintiff] must show that (1) he was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action. *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir.2012). Here, Plaintiff engaged in protected activities by putting the Defendants on notice of his disability, followed almost immediately by Plaintiff's co-workers subjecting him to discriminatory conduct regarding his disabling condition.

Further, other than requiring a showing that something was "reasonably likely to deter a person from engaging in protected activity" rather than an "adverse employment action," "a *prima*

*facie* case of retaliation faces the same requirements under the NYCHRL as under the NYSHRL." *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 362 (S.D.N.Y. 2012).

Defendants' argument that Plaintiff's many instances of objecting to discriminatory comments and conduct in addition to complaining directly to **PPGNY** Human Resources representatives do not qualify as protected conduct[20] is without merit. The law is clear that opposition to discrimination may be inferred from other evidence even when a plaintiff "does 'not say so in so many words'" *Fletcher,* 2012 WL 2532149, at 6, 2012 NY App Div LEXIS 5245 at 17, citing *Albunio,* 16 NY3d at 479). "[I]n order for a complaint to form the basis of a retaliation claim... the employer must have 'understood, **or could reasonably have understood**, that the Plaintiff's opposition was directed at conduct prohibited by the employment discrimination laws.'" *Mayers v Emigrant Bancorp, Inc.,* 96 F Supp 2d 434, 448 (S.D.N.Y. 2011) *Turner v NYU Hosps. Ctr.,* 784 F Supp 2d 266, 285-286 (S.D.N.Y. 2011), *affd* 470 Fed Appx 20 (2d Cir 2012). The NY Court of Appeals has expressly held that the phrase "opposed any practice forbidden under this chapter" should be broadly construed. *Albunio v. City of New York,* 16 N.Y.3d 472, 477-479 (2011). "'Protected activity' refers to action taken to oppose or complain about any discriminatory practices prohibited by the state and city human rights statutes." *Bagley,* 2012 WL 10007958, citing *Forrest*, 3 N.Y.3d at 313 n.11; *Brook v. Overseas Media, Inc.,* 69 A.D.3d 444, 445 (1st Dept. 2010).

However, in the instant matter, per paragraph 61 of the SAC, in October 2021, Plaintiff "formally complained to the then-CEO of **PPGNY**, Ms. Joy Calloway and to board member Ms. Leslie Lindenbaum about the offensive and illegal race, color, and gender discrimination as well as the intimidating and humiliating, hostile work environment he was being subjected to by

---

[20] Defendants' Motion to Dismiss, p.15

**PPGNY** executive board members, including specifically **HAGAN.**" Per paragraph 73 of the SAC, in November 2021, Plaintiff "complained to the former **PPGNY** Interim President & CEO, Ms. Joy Calloway, about the hostile work environment to which he was being subjected as a result of **CORSO**'s discriminatory misconduct." Per paragraph 100 of the SAC, in March 2022, Plaintiff "formally complained about the offensive and illegal race and gender discrimination he was being subjected to by **DEAN** and **DAVIS**." Per paragraph 106 of the SAC, in July 2022, Plaintiff "yet again formally complained to **PPGNY**'s Human Resources representative about race and age discrimination he was subjected to by **DEAN** and **DAVIS**." Per paragraph 133 of the SAC, in July 2022, Plaintiff "formally complained to **PPGNY** about being racially discriminated against "as the sole black male on the [**PPGNY**] Executive Leadership Team" and subjected to a hostile work environment by **HAGAN**." Per paragraph 156 of the SAC, Plaintiff "engaged in further protected conduct by forwarding a complaint on behalf of two (2) new members of the **PPGNY** Human Resources team. The details of this complaint corroborated Plaintiff's own complaint of discrimination against **DEAN**."

Additionally, Plaintiff complained directly to **DEAN** and **DAVIS** for their discriminatory, retaliatory misconduct at paragraph 90 of the SAC, as well as **HAGAN** for hers at paragraph 127 of the SAC. Therefore, Defendants, individual inclusive, were undoubtedly aware of Plaintiff's protected activities in the form of formal *and* informal complaints, which were specific and pertained to discrimination based on his age, religion, disability, sex and sexual orientation, gender, race, and skin color.

Moreover, Plaintiff can establish causality between his protected activity and the adverse actions he suffered "by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow

employees who engaged in similar conduct." *Littlejohn*; *Kwan v. Andalex Grp.*, LLC, 737 F.3d 834, 845(2d Cir. 2013). Here, for example, Plaintiff filed his complaint in this Court and three weeks later was fired.

Where the temporal proximity between the protected activities and the adverse employment actions is short and frequent a trier of fact should find that the adverse employment actions are retaliatory and discriminatory in nature. Courts have found that temporal proximity, "in appropriate circumstances," can provide sufficient evidence of causation to support Plaintiff's *prima facie* claim. ("Close temporal proximity between the plaintiff's protected action and the employer's adverse employment action may in itself be sufficient to establish the requisite causal connection between a protected activity and retaliatory action") (citing, *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010)). Here, the temporal proximity is shorter than six weeks, in some cases just a matter of hours, it is therefore sufficient, in and of itself, to allow a trier of fact to find that the adverse actions taken against Plaintiff are retaliatory and discriminatory. Plaintiff can rely on temporal proximity between his protected conduct, and the failure and/or refusal to investigate Plaintiff's complaints, and his unlawful pretextual termination, to establish causation, and Plaintiff has indeed pleaded his claims properly at this stage.

Simply put, a reasonable worker would not have filed a discrimination complaint against the Defendants if he knew that doing so would place him in the situation Plaintiff experienced following his protected conduct: Terminated.

Finally, even if Defendants wish to claim a legitimate, non-retaliatory reason for the adverse employment actions, such an argument is without merit on a motion to dismiss, where the Court accepts Plaintiff's allegations as true and does not engage in a burden shifting exercise. Thus, Plaintiff does not need to plead that the Defendants' proffered reason for Plaintiff's

termination was pretext. This argument is reserved for a motion for summary judgment, *Adu-Beniako v. Maimonides Med. Ctr.,* 97-CV-693 (JG), 1997 WL 1068672, at 2 (E.D.N.Y. July 25, 1997). Accordingly, Plaintiff's retaliation claims should not be dismissed, because Plaintiff has alleged enough facts to state plausible claims of relief. Therefore, the Motion to Dismiss should be denied in its entirety.

**PLAINTIFF HAS ALLEGED SUFFICIENT FACTS TO STATE A CLAIM FOR RELIEF THAT IS PLAUSIBLE AGAINST INDIVIDUALLY NAMED DEFENDANTS WHO MUST NOT BE DISMISSED**

It is undeniable that NYSHRL provides for "aiding and abetting" liability in addition to typical employer liability. Specifically, the NYSHRL provides that "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." N.Y. Exec. Law § 296(6).

"As a general rule, one who counsels, advises, abets, or assists in commission of an actionable wrong by another is responsible to the injured for the entire loss or damage...." *Burhans v. Assembly of the State of New York*, 2014 NY Slip Op 30587(U) (Sup. Ct., N.Y. Cnty. 2014) (citing Exec. Law § 296(6)); *Gorman v. Covidien, LLC*, 146 F. Supp.3d 509, 521-22 (S.D.N.Y. 2015) (quoting *EEOC v. Suffolk Laundry Servs., Inc.*, 48 F. Supp.3d 497, 523 (E.D.N.Y. 2014)). Thus, "a co-worker who 'actually participates in the conduct giving rise to a discrimination claim'" can be "held liable under the NYSHRL even though that co-worker lacked the authority to either hire or fire the plaintiff." *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004); *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 n.10 (2d Cir. 2011)("[W]hile an individual defendant with supervisory control may not be held personally liable under Title VII, an individual defendant may be held liable under the aiding and abetting provision of the NYSHRL if he actually participates in the conduct giving rise to a discrimination claim." (internal quotations and citations omitted). "Aiding and abetting liability requires that the aider and abettor share the intent or

purpose of the principal actor, and there can be no partnership in an act where there is no community of purpose." *Brice v. Sec. Operations Sys., Inc.*, No. 00-cv-2438, 2001 WL 185136, at *4 (S.D.N.Y. Feb. 26, 2001)(internal quotation marks and citations omitted). "Consequently, to find that a defendant actually participated in the discriminatory conduct requires a showing of direct, purposeful participation." *Id.* (internal quotation marks and citation omitted).

Simply stated, Plaintiff has alleged facts that connect Defendants to the alleged discrimination that warrant the imposition of NYSHRL aider and abettor liability, regardless of the individual's authority to hire or fire the plaintiff. *Guzman v. News Corp.*, No. 09 Civ. 09323(LGS), 2013 WL 5807058, at *22 (S.D.N.Y. Oct. 28, 2013). Here, Plaintiff has sufficiently alleged that **STARK**, **HAGAN**, **DEAN**, **CORSO**, and **DAVIS** were *direct* participants in his discrimination. Plaintiff has also sufficiently established liability for discrimination and retaliation with respect to **PPGNY**, Plaintiff's claims of aider and abettor liability against Defendants **STARK**, **HAGAN**, **DEAN**, **CORSO**, and **DAVIS** are therefore proper.

Additionally, "Individual claims brought pursuant to Executive Law § 296 (6) may also be viable against **supervisors who failed to investigate or take appropriate measures despite being informed about the alleged conduct**...." *Brightman v. Prison Health Serv., Inc.,* 33 Misc. 3d 1201 (Sup. Ct., Queens Cnty. 2011) (emphasis added) (citing *Lewis v. Triborough Bridge and Tunnel Authority*, 77 F. Supp. 2d 376, 384 (1999) ("Rather, the case law establishes beyond cavil that a supervisor's failure to take adequate remedial measures can rise to the level of "actual participation" under HRL § 296(6).") The SAC clearly details the specific discriminatory acts on **STARK**, **HAGAN**, **DEAN**, **CORSO**, and **DAVIS**' parts, who, at the very least aided and abetted the discrimination suffered by Plaintiff, as well as the failures and/or refusal of **PPGNY**

supervisors, including **STARK**, **HAGAN**, **DEAN**, **CORSO**, and **DAVIS** to investigate or take any corrective measures to prevent the continuation of such conduct.

Individually named Defendants, including **STARK**, **HAGAN**, **DEAN**, **CORSO**, and **DAVIS** will be personally liable so long as they actually engaged or participated in the discriminatory and retaliatory acts suffered by Plaintiff. Plaintiff clearly pleaded facts demonstrating **STARK**, **HAGAN**, **DEAN**, **CORSO**, and **DAVIS** were active participants in the discrimination and retaliation he endured.

Accordingly, the SAC should not be dismissed, because Plaintiff has alleged sufficient facts to state a claim to relief that is plausible on its face in alleging that the relevant individually named Defendants were responsible for aiding and abetting, as well as in alleging supervisory liability under State and City law. Thus, the MTDSAC should be denied in its entirety.

## CONCLUSION

Defendants' Motion should be denied. Plaintiff has clearly alleged enough facts to state a claim for relief that is plausible on its face for discrimination, hostile work environment, and retaliation on the basis of age, disabling conditions, religion, race, sex and sexual orientation, color, and gender.

Additionally, the SAC clearly articulates a viable claim for retaliation, individual liability, supervisor, and employer liability. As such, the Defendants' MTDSAC should be denied in its entirety, together with such other and further relief as this Court may deem just and proper.

If the Court deems it appropriate to grant in part or whole the MTDSAC, or any portion thereof, Plaintiff requests that any such be granted without prejudice, and with leave to amend the Complaint to cure any perceived deficiencies.

New York, New York
September 22, 2023

THE COCHRAN FIRM

DEREK S. SELLS
Counsel for Plaintiff
One Exchange Plaza
55 Broadway, 23rd Floor
New York, New York 10279
(Tel No.)  (212) 553-9215
(Facsimile) (212) 227-8763