UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SAMUEL RICARLOS MITCHELL, JR.,

Plaintiff,

-against-

PLANNED PARENTHOOD OF GREATER NEW
YORK, INC., WENDY STARK, ANDREA
HAGAN, GILLIAN DEAN, ANNE DAVIS, and
KEITH CORSO,

Defendants.

---

Case No. 1:23-cv-01932 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

Samuel Ricarlos Mitchell, Jr. ("Plaintiff") brings this action against Planned
Parenthood of Greater New York, Inc. ("PPGNY"), Wendy Stark, Andrea Hagan, Gillian
Dean, Anne Davis, and Keith Corso (collectively, "Defendants"). ECF No. 34 (the "Second
Amended Complaint" or "SAC"). Plaintiff asserts claims under six statutes: Title VII of the
Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); 42 U.S.C. § 1981 ("Section
1981"); the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* (the
"ADEA"); the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* (the
"ADA"); the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* (the
"NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et
seq.* (the "NYCHRL").

Defendants have moved to dismiss the Second Amended Complaint under Federal
Rule of Civil Procedure ("Rule") 12(b)(6). ECF No. 41-6 ("Br."). For the reasons set forth
below, Defendants' motion is granted in part and denied in part. The Court also grants
Plaintiff leave to replead his dismissed claims.

## BACKGROUND

### I.    Factual Background

The Court accepts as true the following factual allegations, taken primarily from the Second Amended Complaint, and draws all reasonable inferences in Plaintiff's favor. *Commerzbank AG v. U.S. Bank, N.A.*, 100 F.4th 362, 374 (2d Cir. 2024).

Plaintiff is a Black, African American man.  SAC ¶ 10.  He is an ordained pastor.  *Id.* ¶ 11.  He is heterosexual.  ECF No. 40 ("Opp.") at 9; *cf.* SAC ¶ 77.  He also "suffers from a disabling neurological condition which causes him to stutter and stammer excessively and involuntarily in the face of stressful situations."  SAC ¶ 12.  Although the Second Amended Complaint does not allege Plaintiff's exact age – or even whether Plaintiff is over 40 years old – Plaintiff asserts in his brief, and Defendants do not contest, that "Plaintiff was over the age of 40" at all relevant times.  Opp. at 12; *see O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996) ("Th[e ADEA] does not ban discrimination against employees because they are aged 40 or older; it bans discrimination against employees because of their age, but limits the protected class to those who are 40 or older.").

PPGNY is a nonprofit organization organized under New York law.  SAC ¶ 14.  Stark is a white woman.  *Id.* ¶ 18.  During some of the events underlying this case, Stark was President and Chief Executive Officer ("CEO") of PPGNY.  *Id.* ¶ 17.  Stark "controll[ed] many tangible aspects of Plaintiff's job duties" and had the power to control Plaintiff's schedule and to discipline Plaintiff, including through termination.  *Id.* ¶ 18.  Hagan is a white woman.  *Id.* ¶ 20.  At all relevant times, Hagan was the Treasurer of PPGNY's board.  *Id.* Hagan "controll[ed] many tangible aspects of Plaintiff'[s] job duties" and had the power to discipline Plaintiff, including through termination.  *Id.* ¶ 21.  Dean is a white woman.  *Id.* ¶ 23. At all relevant times, Dean was Chief Medical Officer ("CMO") of PPGNY.  *Id.*  Dean

"controll[ed] many tangible aspects of Plaintiff's job duties." *Id.* ¶ 24.  Davis is a white woman. *Id.* ¶ 29.  At all relevant times, Davis was an Associate CMO of PPGNY.  *Id.*  Davis "controll[ed] many tangible aspects of Plaintiff's job duties." *Id.* ¶ 30.  Corso is a homosexual white man. *Id.* ¶ 26.  At all relevant times, Corso was Chief Development Officer ("CDO") of PPGNY. *Id.*  Corso "controll[ed] many tangible aspects of Plaintiff's job duties." *Id.* ¶ 27.

On September 27, 2021, PPGNY hired Plaintiff as interim Chief Operating Officer ("COO") based at its Manhattan location. *Id.* ¶ 36.  PPGNY hired Plaintiff as the full-time COO on February 23, 2022. *Id.* ¶ 91.  In this position, Plaintiff was the second in command of PPGNY, behind only the CEO. *Id.* ¶¶ 109-110.  At all relevant times, "Plaintiff was the sole disabled, Christian, black, African American cisgender male" on PPGNY's executive-leadership team. *Id.* ¶ 41.  He was also the first Black, African American man ever to serve on this team. *Id.* ¶ 40.

According to Plaintiff, PPGNY "required Plaintiff to endure a disproportionate number of background checks due to his age, race, color, disability, and gender." *Id.* ¶ 47.  Plaintiff claims that the number of background checks that he underwent was "far above" what "younger, Caucasian, and non-disabled prospective employees go through," *id.* ¶ 48, and that PPGNY "did not require similarly situated younger, white, Caucasian, or female employees, to face this level of intrusive background checks, both in terms of sheer number and invasiveness," *id.* ¶ 49, although Plaintiff does not identify any similarly situated employees.  Plaintiff also claims that PPGNY and its board members, including Hagan, "forced Plaintiff to constantly defend himself against personal attacks by themselves and their employees relating to his character, experience, capabilities, and skillsets." *Id.* ¶ 50.

In October 2021, PPGNY and its board members, including Hagan, discovered that Plaintiff is an ordained pastor. *Id.* ¶ 52.  Almost immediately thereafter, several PPGNY

board members made comments insinuating that Christians and pastors, like Plaintiff, were not welcome to work for PPGNY. *Id.* ¶ 53. These board members, including Hagan, "shunned" Plaintiff. *Id.* ¶¶ 55-56. Also, PPGNY board members "conspired to force" PPGNY's then-CEO, Joy Calloway, to "interrogate" Plaintiff's pastor and obtain a statement about the church's stance on abortion; according to Plaintiff, their intent was to "paint Plaintiff and/or Plaintiff's church as 'pro-life' in a particularly invasive attempt to terminate PPGNY's employment." *Id.* ¶¶ 57, 61. Hagan "spearheaded and orchestrated" this conduct with Dean's and Davis's encouragement and participation. *Id.* ¶ 60.

On October 14, 2021, Plaintiff formally complained to Calloway and another PPGNY board member, Leslie Lindenbaum, "about the offensive and illegal race, color, and gender discrimination as well as the intimidating and humiliating, hostile work environment he was being subjected to by PPGNY executive board members, including specifically Hagan." *Id.* ¶ 61 (emphasis and further capitalization omitted). PPGNY took no "immediate or appropriate corrective action in response" to Plaintiff's complaint, nor did it reprimand any PPGNY board members or employees. *Id.* ¶ 62. According to Plaintiff, this inaction "emboldened" Hagan, Dean, and Davis, *id.* ¶ 63, and resulted in "a targeted campaign against Plaintiff in retaliation for his protected conduct," *id.* ¶ 65. In particular, Hagan "began disproportionately and excessively monitoring and micromanaging Plaintiff." *Id.* ¶ 67.

In November 2021, during a meeting attended by several of Plaintiff's colleagues, Corso mocked Plaintiff's Southern drawl and pronunciation. *Id.* ¶ 71. Corso yelled at Plaintiff and, "in a snarky manner," pronounced each syllable of a name that Plaintiff was struggling to pronounce. *Id.* ¶ 72. That same month, Plaintiff complained to Calloway about Corso's conduct, but PPGNY did not "take appropriate corrective action." *Id.* ¶¶ 73-74. Shortly thereafter, Corso confronted Plaintiff, stating at one point: "What's wrong Samuel,

have you never worked with gay men before?  We are very dramatic and it's clear you are not

cut out for this job!"  *Id.* ¶ 76 (emphasis and further capitalization omitted).

In December 2021, Dean and Davis "began subjecting Plaintiff to discriminatory

comments based on Plaintiff's age, race, color, and gender," including by referring to him as

"angry," "offensive," "out of control," "harsh," and "aggressive."  *Id.* ¶ 79 (emphasis and

further capitalization omitted).  The sole example provided in the Second Amended

Complaint is that, in January 2022, Davis told Plaintiff that his use of red text in an email was

"aggressive."  *Id.* ¶ 80.  When Plaintiff responded that he used red text to highlight or provide

commentary on prior communications, Davis replied that blue or green was "more fitting."

*Id.* ¶¶ 81-82.  Around a month later, Dean and Davis both used red text in communications,

whereupon Plaintiff "called out their discriminatory and hypocritical usage of 'aggressive' red

text."  *Id.* ¶ 83.

In February 2022, Dean referred to Merle McGee, who served as PPGNY's Chief

Equity and Engagement Officer, as "a loud Black woman."  *Id.* ¶ 85 (emphasis and further

capitalization omitted).  Plaintiff complained to Dean and Davis about their comments and

asked them not to refer to him or other nonwhite employees in this manner.  *Id.* ¶ 90.  On

March 28, 2022, Plaintiff formally complained about Dean and Davis.  *Id.* ¶ 100.  PPGNY did

not "take any immediate or appropriate corrective action in response" to Plaintiff's complaint,

nor did PPGNY reprimand Dean or Davis.  *Id.* ¶ 101.

In July 2022, Dean and Davis "deliberately and unreasonably refuted, debated, and

refused Plaintiff's plan to engage world-renowned African American thought leader Dr.

Ronald Wyatt as a consultant for PPGNY."  *Id.* ¶ 105 (emphasis omitted).  On July 31, 2022,

Plaintiff formally complained about Dean and Davis.  *Id.* ¶ 106.  PPGNY did not "take any

immediate or appropriate corrective action in response" to Plaintiff's complaint, nor did PPGNY reprimand Dean or Davis. *Id.* ¶ 107.

In August 2022, PPGNY announced that a white woman, Rosalba Messina, would assume the duties of interim CEO of PPGNY. *Id.* ¶ 109. As COO, Plaintiff was second in command, and "under long standing policy and custom he should have been elevated to the position of interim CEO." *Id.* ¶ 110. According to Plaintiff, he was "better qualified, more experienced, and . . . better positioned to succeed in the interim CEO position." *Id.* ¶ 115. Plaintiff does not claim, however, that he applied for or otherwise sought this position. PPGNY allowed Messina to forego a residency requirement that would have required her to relocate from Connecticut to New York City. *Id.* ¶ 117. PPGNY also allowed Zoee Davidson (a white female resident of Illinois) and Virginia Morin (a white female resident of Utah) to work for PPGNY without having to change their residencies to New York. *Id.* ¶ 118. In contrast, PPGNY required Plaintiff to have a New York City residency, even though he had a home in Florida. *Id.*

On September 14, 2022, while attending an executive-level meeting for the Planned Parenthood Clinical Health Network for Transformation ("CHN"), Hagan "singled out and ridiculed Plaintiff with an onslaught of disparaging comments" in front of Karen Seltzer, chair of PPGNY's board. *Id.* ¶ 120. During this meeting, Hagan also approached Franklin Rosado, CHN's Chief Information Officer, and accused Plaintiff of "not being a good partner to CHN." *Id.* ¶ 122. Hagan encouraged Rosado to "report out in front of the entire membership." *Id.* Plaintiff immediately complained about Hagan's comments. *Id.* ¶ 127.

In September 2022, during an executive-committee meeting, a white woman holding a lower-level position than Plaintiff presented a report authored by Plaintiff. *Id.* ¶ 130. "Plaintiff was meant to present the report himself but was unable to do so due to the effects of

Plaintiff's disabling condition." *Id.* Seltzer and "a few other unnamed executive board committee members" stated that they thought the subordinate employee was "a much better communicator" than Plaintiff, *id.* ¶ 131, which Plaintiff understands to be a "direct, discriminatory reference to the symptoms of Plaintiff's disabling condition," *id.* ¶ 132.

On September 15, 2022, Plaintiff formally complained to PPGNY about experiencing racial discrimination and being subjected by Hagan to a hostile work environment. *Id.* ¶ 133. PPGNY did not "take any immediate or appropriate corrective action in response" to Plaintiff's complaint, nor did PPGNY reprimand Hagan. *Id.* ¶ 134.

On September 21, 2022, during a full executive-board meeting, a white male board member suggested that Plaintiff refrain from replacing or backfilling three critical operational positions until Stark, "the new permanent white, Caucasian, female hire," assumed the role of CEO. *Id.* ¶ 136; *see id.* ¶¶ 17-18, 144. This hiring delay "negatively impacted Plaintiff's ability to do his job." *Id.* ¶ 137.

In November 2022, Lisa Williams (PPGNY's Chief of Staff) and Lori Trzop (PPGNY's Senior Vice President of Health-Center Operations) accompanied Stark on a tour of PPGNY health centers. *Id.* ¶ 142. While on this tour, Williams told Trzop – in front of Stark – that Messina was "a bitch." *Id.* ¶ 143. "[N]othing was done" in response to this comment, "signaling that women at PPGNY could do and say anything without recourse or correction." *Id.* Plaintiff also notes that Stark allowed Williams to wear a shirt saying "Women Run Shit" while at work. *Id.* ¶ 150 (emphasis and further capitalization omitted).

During a December 2022 meeting of the executive-leadership team, "Stark rudely, condescendingly[,] and with utter disdain, chastised Plaintiff by responding to a point he raised as follows: 'Samuel, I don't care and I don't agree with you!'" *Id.* ¶ 146 (emphasis and

further capitalization omitted).  Stark repeated this statement multiple times in the presence of six other people, including Corso, Messina, Dean, and Williams.  *Id.* ¶ 147.

On February 27, 2023, Andy Herz (a white male member of the PPGNY board) asked a Black female PPGNY employee who wore her hair in twists: "Hey Dawn, how do you get your hair all on one side, I can't do that?"  *Id.* ¶ 152.  Plaintiff witnessed this interaction, which "emotionally sickened" him.  *Id.* ¶ 153.

On March 7, 2023, Plaintiff commenced the instant action, asserting claims under Section 1981 (for discrimination and retaliation), the NYSHRL (for discrimination, harassment, retaliation, and hostile work environment based on age, race, gender/sex, and disability), and the NYCHRL (same).  ECF No. 1 (the "Initial Complaint" or "Compl.") ¶¶ 125-155.  The Initial Complaint stated that Plaintiff was "[s]imultaneous[ly]" filing a charge with the EEOC and that Plaintiff "intend[ed] to amend the [Initial] Complaint to add claims under Title VII, [the] ADA[,] and [the] ADEA once Plaintiff is given a right to sue."  *Id.* ¶ 5.

"In response to [Plaintiff filing the Initial Complaint], PPGNY's retaliatory and discriminatory misconduct intensified dramatically."  SAC ¶ 155 (emphasis omitted).  Plaintiff was "subjected to a campaign of discrimination," including "rampant incivility," "being excommunicated from key operational and fiscal stakeholder meetings," "having several key responsibilities covertly transitioned to other female PPGNY employees," "recording of meetings without Plaintiff's consent," and unspecified Defendants "meeting with Plaintiff's direct reports without his consent."  *Id.* (emphasis omitted).

In the morning of March 28, 2023, Plaintiff sent an email (the "March 28 Email") "forwarding a complaint on behalf of two (2) new members of the PPGNY Human Resources team."  *Id.* ¶¶ 156-157 (emphasis omitted).  The coworkers' complaint "corroborated

Plaintiff's own complaint of discrimination against Dean." *Id.* ¶ 156 (emphasis and further

capitalization omitted).  Plaintiff sent the March 28 Email to four people, including Stark.  *Id.*

¶ 157.  About six hours later, PPGNY terminated Plaintiff.  *Id.* ¶ 158.

## II.    Procedural History

As noted, Plaintiff brought this action on March 7, 2023.  Compl.  Plaintiff filed a

charge with the U.S. Equal Employment Opportunity Commission (the "EEOC") on March

13, 2023.  ECF No. 41-5 at 2-3, 22.[1]  Before any Defendant responded to the Initial

Complaint, Plaintiff amended his complaint on April 11, 2023.  ECF No. 14 (the "First

Amended Complaint").  After Defendants moved to dismiss the First Amended Complaint

---

[1] In the Second Amended Complaint, Plaintiff alleges that he "filed a charge with the Equal Employment Opportunity Commission . . . with respect to the herein charges of harassment and discrimination on or about March 31, 2023."  SAC ¶ 5.  In conjunction with their motion to dismiss, however, Defendants submitted a copy of an EEOC charge "forwarded [to Defendants] by Plaintiff's counsel."  ECF No. 41-1 ¶ 9.  This document states several times that it was filed on March 13, 2023, rather than on March 31.  ECF No. 41-5 at 2-3, 22.  Plaintiff does not contest this document's authenticity or otherwise discuss it at all in his opposition brief.  *See generally* Opp.  It is unclear whether the Second Amended Complaint's mention of a March 31 EEOC charge is a typographical error, an indicator that Plaintiff filed two separate EEOC charges, or something else entirely.

For purposes of this motion, the Court assumes that Plaintiff filed a single EEOC charge on March 13, 2023.  The Court makes this assumption for two reasons.  First, as a general rule, when an allegation in a complaint is squarely contradicted by a properly considered document, "the document controls and the allegation is not accepted as true."  *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011) (per curiam).  Here, the Court properly considers the EEOC charge because it is integral to the Second Amended Complaint and Plaintiff never contests its authenticity.  *See In re Trib. Co. Fraudulent Conv. Litig.*, 10 F.4th 147, 176 (2d Cir. 2021); *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).  Second, at the motion-to-dismiss stage, the Court must draw all reasonable inferences in favor of Plaintiff.  *See Commerzbank*, 100 F.4th at 374.  In this case, it would be more favorable for Plaintiff to have filed his EEOC charge on the earlier date, March 13, because that date would potentially bring additional adverse actions within the 300-day period under Title VII, the ADEA, and the ADA.  Therefore, the Court assumes that Plaintiff filed the EEOC charge on March 13 rather than March 31.

and the parties fully briefed the motion, ECF Nos. 18-20, Plaintiff received a right-to-sue

letter from the EEOC on July 28, 2023, SAC ¶ 6.

On August 8, 2023, Plaintiff sought leave to amend again.  ECF No. 27.  Defendants

did not oppose this request, ECF No. 31, and the Court granted it, ECF No. 32, thereby

mooting the initial motion to dismiss.  Plaintiff filed the operative Second Amended

Complaint on August 22, 2023.  SAC.  Plaintiff asserts various causes of action in the Second

Amended Complaint:

1.  Claims against PPGNY under Title VII for (a) discrimination on the basis of race, color, sex, and religion and (b) retaliation, *see* SAC ¶¶ 203-212;

2.  Claims against all Defendants under Section 1981 for (a) discrimination and (b) retaliation, *see id.* ¶¶ 172-177, 192-198;

3.  Claim against PPGNY under the ADEA for discrimination on the basis of age, *see id.* ¶¶ 224-226;

4.  Claims against PPGNY under the ADA for (a) discrimination on the basis of disability, (b) retaliation, and (c) a hostile work environment, *see id.* ¶¶ 213-223;

5.  Claims against all Defendants under the NYSHRL for (a) discrimination on the basis of race, age, sex/gender, sexual orientation, and disability, (b) retaliation, and (c) harassment and a hostile work environment, *see id.* ¶¶ 178-202; and

6.  Claims against all Defendants under the NYCHRL for (a) discrimination on the basis of race, age, sex/gender, sexual orientation, and disability, (b) retaliation, and (c) harassment and a hostile work environment, *see id.*

Defendants moved to dismiss the Second Amended Complaint.  ECF Nos. 35 (original filing),

41 (corrected filing).  The motion is fully briefed.  Opp.; ECF No. 42 ("Reply").

On May 29, 2024, the Court directed that by June 14, 2024, the parties could submit

letter briefs addressing the potential impact on this case of the Supreme Court's decision in

*Muldrow v. City of St. Louis*, 144 S. Ct. 967 (2024).  ECF No. 43.  The parties timely

submitted letters.  ECF Nos. 44 ("Pl. Ltr."), 45 ("Defs. Ltr.").

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must allege "more than a sheer possibility that a defendant has acted unlawfully" and more than "facts that are 'merely consistent with' a defendant's liability." *Id.* (quoting *Twombly*, 550 U.S. at 557).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Determining whether a complaint states a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## DISCUSSION

### I.    Title VII, the ADEA, and the ADA

The Court begins with Plaintiff's claims against PPGNY (1) under Title VII (race, color, sex, and religion), the ADEA (age), and the ADA (disability) for discrimination, (2) under Title VII and the ADA for retaliation, and (3) under the ADA for a hostile work environment.

####    A.    Time-Barred Claims

Defendants contend that insofar as Plaintiff's Title VII, ADEA, and ADA claims are based on events more than 300 days before Plaintiff filed his complaint with the EEOC, those claims are time-barred.  *See* Br. at 6-7; Reply at 6-7.  The Court agrees (except as to Plaintiff's ADA claim for a hostile work environment).

"As a precondition to filing a Title VII[, ADEA, or ADA employment-discrimination] claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC." *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486,

489 (2d Cir. 2018) (citation omitted) (Title VII); *accord Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 562 (2d Cir. 2006) (ADEA), *aff'd*, 552 U.S. 389 (2008); *Soules v. Conn. Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 57 (2d Cir. 2018) (ADA).  A plaintiff "must file a charge with the EEOC within 180 days or, in states like New York that have local administrative mechanisms for pursuing discrimination claims, 300 days after the alleged unlawful employment practice occurred."  *King v. Aramark Servs. Inc.*, 96 F.4th 546, 559 (2d Cir. 2024) (brackets, quotation marks, and citation omitted) (Title VII); *accord Holowecki*, 440 F.3d at 562 & n.1 (ADEA); *Purcell v. N.Y. Inst. of Tech. - Coll. of Osteopathic Med.*, 931 F.3d 59, 63 n.16 (2d Cir. 2019) (ADA).  "This statutory requirement 'operates as a statute of limitations.'"  *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 259 (2d Cir. 2023) (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982)).  "Because a discrete discriminatory act is individually actionable and 'occurs' on the day that it 'happened,' the 300-day limitations period begins running on the day of each occurrence, meaning each discrete act claim carries its own 300-day limitations period."  *King*, 96 F.4th at 559 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002)).  "Claims concerning discrete acts outside this window will be time barred," *Buon v. Spindler*, 65 F.4th 64, 77 (2d Cir. 2023), but untimely events may be used "as background evidence in support of a timely claim," *Morgan*, 536 U.S. at 113.

Plaintiff filed his EEOC complaint on March 13, 2023.  ECF No. 41-5 at 2-3, 22. Three hundred days before that date was May 17, 2022.  Therefore, to the extent that Plaintiff's Title VII, ADEA, and ADA discrimination and retaliation claims are premised on discrete acts that took place before May 17, 2022, those claims are time-barred.  *See Buon*, 65 F.4th at 77.  Events before May 17, 2022, however, may serve as background evidence to support timely claims under those statutes.  *Morgan*, 536 U.S. at 113.  They may also support

Plaintiff's ADA claim for a hostile work environment.  *See Banks*, 81 F.4th at 260 ("So long as 'an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.'" (quoting *Morgan*, 536 U.S. at 117)).

Plaintiff notes that the filing deadlines in Title VII, the ADEA, and the ADA are "not jurisdictional and may be tolled in certain situations including 'when equity so requires.'" Opp. at 5 (quoting *Zipes*, 455 U.S. at 398).  That is true, *see Zipes*, 455 U.S. at 393 (Title VII); *Holowecki*, 440 F.3d at 565 (ADEA); *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (ADA), but "equitable tolling is only appropriate in rare and exceptional circumstances in which a party is prevented in some extraordinary way from exercising his rights," *Zerilli-Edelglass*, 333 F.3d at 80 (brackets, quotation marks, and citation omitted). Plaintiff never explains why the Court should equitably toll the filing deadlines, and the Court perceives no basis to do so in this case.

Plaintiff's invocation of the continuing-violation doctrine is also meritless.  *See* Opp. at 5-8.  "The continuing violation doctrine, where applicable, provides an exception to the normal knew-or-should-have-known accrual date." *Tassy v. Buttigieg*, 51 F.4th 521, 532 (2d Cir. 2022) (quotation marks and citation omitted).  "The doctrine applies to claims composed of a series of separate acts that collectively constitute one unlawful practice and functions to delay the commencement of the statute of limitations period until the last discriminatory act in furtherance of that broader unlawful practice." *Id.* (quotation marks and citations omitted). Significantly, it "does *not* apply to discrete acts of discrimination or retaliation that occur outside the statutory time period, even if other related acts of discrimination occurred within the statutory time period." *Id.* (brackets, quotation marks, and citation omitted; emphasis added).  "Rather, the doctrine extends exclusively to claims that by their nature accrue only

after the plaintiff has been subjected to some threshold amount of mistreatment." *Id.* (quotation marks and citation omitted).

Plaintiff's claims for discrimination (under Title VII, the ADEA, and the ADA) and retaliation (under Title VII and the ADA) are discrete-act claims, so the claims cannot benefit from the continuing-violation doctrine. Concededly, Plaintiff asserts several times in a conclusory fashion that he suffered from, and that PPGNY perpetuated, "a pattern and practice of discrimination." SAC ¶¶ 45-46, 140. Likewise, he broadly "claims a continuous practice of discrimination and makes all claims herein under the continuing violations doctrine." *Id.* ¶ 171. But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Simply put, Plaintiff's Title VII, ADEA, and ADA claims for discrimination and retaliation "allege[] discrete actions – separate instances of alleged unlawful conduct, occurring at different times and under different circumstances, without a non-conclusory factual connection – rather than a common policy under which all the actions were carried out." *Jackson v. New York State*, 523 F. App'x 67, 69 (2d Cir. 2013) (summary order). Therefore, the continuing-violation doctrine does not apply to these claims – although it does apply to Plaintiff's hostile-work-environment claim under the ADA. *See Banks*, 81 F.4th at 259-60 ("Claims alleging a hostile work environment require a different analysis than discrimination or retaliation claims because 'their very nature involves repeated conduct.'" (brackets omitted) (quoting *Morgan*, 536 U.S. at 115)).

### B.    Timely Claims

#### 1.    Discrimination

None of Plaintiff's post-May 17, 2022 discrimination claims under Title VII, the ADEA, or the ADA "states a plausible claim for relief."  *Iqbal*, 556 U.S. at 679.

Under Title VII, "for a discrimination claim to survive a motion to dismiss, 'absent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff (1) is a member of a protected class, (2) was qualified, (3) suffered an adverse employment action, and (4) has at least minimal support for the proposition that the employer was motivated by discriminatory intent.'"  *Buon*, 65 F.4th at 79 (brackets omitted) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)). The same requirements apply for claims under the ADEA and the ADA except that under the fourth prong, the plaintiff's age or disability must be a but-for cause (rather than a motivating cause) of the plaintiff's injury.  *See Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 302-03, 302 n.3 (2d Cir. 2021) (ADEA); *Natofsky v. City of New York*, 921 F.3d 337, 348 (2d Cir. 2019) (ADA).

Plaintiff is a member of protected classes based on his race and color (African American, Black), sex (cisgender, heterosexual man),[2] religion (Christian), age (over 40), and disability.[3]  SAC ¶¶ 10, 12, 41, 77; Opp. at 9, 12.  Also, for purposes of their motion to

---

[2] Title VII's prohibition on sex discrimination encompasses discrimination based on sexual orientation or transgender status.  *See Bostock v. Clayton County*, 590 U.S. 644, 651-52 (2020) ("An employer who fires an individual for being homosexual or transgender fires that person for traits or actions it would not have questioned in members of a different sex.  Sex plays a necessary and undisguisable role in the decision, exactly what Title VII forbids.").

[3] As mentioned, Plaintiff alleges that he "suffers from a disabling neurological condition which causes him to stutter and stammer excessively and involuntarily in the face of stressful situations."  SAC ¶ 12.  Although Defendants call into question whether Plaintiff is "disabled as defined by the ADA," Br. at 19, and Plaintiff may not so qualify, *see, e.g.*, *Laface v. E.*

dismiss, "Defendants do not argue that Plaintiff has failed to allege that he was qualified for the position" of COO of PPGNY.  Br. at 8 n.2.  Instead, the parties centrally contest whether Plaintiff has plausibly alleged the third and fourth elements of his Title VII and ADEA claims. *Compare id.* at 8-11, *and* Reply at 3-6, *with* Opp. at 8-13.

### a.  Adverse Employment Action

Defendants argue that Plaintiff's timely Title VII, ADEA, and ADA discrimination claims should be dismissed because Plaintiff "has not sufficiently alleged an adverse action," which Defendants define as a "materially adverse change" to the terms and conditions of employment.  Br. at 8 (emphasis, capitalization, and citation omitted); *see also* Reply at 8.  The Court disagrees.

For decades, courts in this Circuit understood an "adverse employment action" under federal law to be "a materially adverse change in the terms and conditions of employment." *Sanders v. N.Y.C. Hum. Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (quotation marks and citation omitted); *accord, e.g.*, *Tolbert v. Smith*, 790 F.3d 427, 435 (2d Cir. 2015); *Torres v. Pisano*, 116 F.3d 625, 640 (2d Cir. 1997).  Under this formulation, "[a]n adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) (citation omitted).  "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Id.* (citation omitted).

---

*Suffolk Boces*, 349 F. Supp. 3d 126, 144-47 (E.D.N.Y. 2018); *Detko v. Blimpies Rest.*, 924 F. Supp. 555, 556-57 (S.D.N.Y. 1996), given the limited briefing on this issue and the procedural posture, the Court assumes that Plaintiff has sufficiently alleged (at least at this stage) that he is disabled under the ADA.

In this respect, "the landscape has changed with the Supreme Court's decision in *Muldrow*." *Anderson v. Amazon.com, Inc.*, No. 23-cv-08347 (AS), 2024 WL 2801986, at *10 (S.D.N.Y. May 31, 2024). In *Muldrow*, the plaintiff claimed that the defendant transferred her from one job to another because of her sex. 144 S. Ct. at 971. The lower courts granted the defendant's motion for summary judgment, reasoning that "the transfer did not cause [the plaintiff] a 'significant' employment disadvantage." *Id.* at 972; *see id.* at 973 n.1 (noting that the Second Circuit similarly used a "materially significant disadvantage" standard (citation omitted)). The Supreme Court "disapprove[d] that approach," holding that "[a]lthough an employee must show some harm from a forced transfer to prevail in a Title VII suit, she need not show that the injury satisfies a significance test." *Id.* at 972. Focusing on the text of Title VII's anti-discrimination provision, the Supreme Court explained that the statutory language "requires [a plaintiff] to show that the transfer brought about some disadvantageous change in an employment term or condition." *Id.* at 974 (quotation marks and citation omitted). In other words, "[t]o make out a Title VII discrimination claim, a transferee must show some harm respecting an identifiable term or condition of employment." *Id.* "What the transferee does *not* have to show . . . is that the harm incurred was 'significant.' Or serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." *Id.* (citation omitted; emphasis added).

While the Second Circuit has not yet addressed the issue, Defendants suggest that *Muldrow*'s holding should be limited to transfers. *See* Defs. Ltr. at 1-2. The Court disagrees. Although *Muldrow* directly concerned a transfer, its reasoning relies on the language of Title VII's anti-discrimination provision rather than anything special about transfers. *See* 144 S. Ct. at 974-75. Thus, the Court holds that *Muldrow* applies to Title VII discrimination cases not involving transfers. *See, e.g.*, *Peifer v. Bd. of Prob. & Parole*, 106 F.4th 270, 277 (3d Cir.

2024) (applying *Muldrow* to non-transfer case); *Cole v. Grp. Health Plan, Inc.*, 105 F.4th 1110, 1114 (8th Cir. 2024) (same); *Williams v. Memphis Light, Gas & Water*, No. 23-5616, 2024 WL 3427171, at *5-6 (6th Cir. July 16, 2024) (same); *Riggs v. Akamai Techs.*, No. 23-cv-06463 (LTS), 2024 WL 3347032, at *6 (S.D.N.Y. July 8, 2024) (same). The Court also holds that *Muldrow* applies to discrimination claims under the ADEA and the ADA, given that the pertinent language in those statutes is similar to the pertinent language in Title VII. *See, e.g.*, *Milczak v. Gen. Motors, LLC*, 102 F.4th 772, 787 (6th Cir. 2024) (applying *Muldrow* to ADEA claim); *Van Horn v. Del Toro*, No. 23-5169, 2024 WL 3083365, at *2-3 (D.C. Cir. June 21, 2024) (per curiam) (same); *Rios v. Centerra Grp. LLC*, 106 F.4th 101, 112-13 (1st Cir. 2024) (same for ADA claim); *Davis v. Orange County*, No. 23-12759, 2024 WL 3507722, at *3-4 (11th Cir. July 23, 2024) (per curiam) (same). To the extent that pre-*Muldrow* decisions imposed a higher threshold for finding an adverse employment action, those decisions appear to no longer be good law. *See Packer ex rel. 1-800-Flowers.Com, Inc. v. Raging Cap. Mgmt., LLC*, 105 F.4th 46, 54 n.36 (2d Cir. 2024) ("In rare cases, a district court can decline to follow our precedent if it concludes that an intervening Supreme Court decision has so clearly undermined our precedent that it will almost inevitably be overruled.").

That said, even under *Muldrow*, some workplace events that are unpleasant are not necessarily adverse employment actions. For example, a "mere admonition by a supervisor without any formal consequences is not an adverse employment action because it does not represent any disadvantageous change in the terms or conditions of the plaintiff's employment." *Rios*, 106 F.4th at 112-13. Also, *Muldrow* did not alter the existing understanding that Title VII's anti-retaliation provision "covers those (and only those) employer actions that would have been *materially adverse* to a reasonable employee or job applicant." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006) (emphasis

added); *see Muldrow*, 144 S. Ct. at 976 (distinguishing *White* as based on "reasons peculiar to the retaliation context"); Pl. Ltr. at 4 (implicitly recognizing that *Muldrow* did not overrule *White*).

Turning to the facts of this case, Plaintiff has alleged multiple adverse employment actions during the filing period (that is, on or after May 17, 2022), including Plaintiff's loss of job responsibilities during March 2023 and Plaintiff's termination on March 28, 2023. SAC ¶¶ 155, 158. For that reason, the Court declines to dismiss Plaintiff's federal discrimination claims for lack of an adverse employment action.[4]

### b. Discriminatory Intent

Although Plaintiff identifies cognizable adverse employment actions, he does not plead sufficient facts to provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent" based on Plaintiff's race, color, sex, or religion, as required by Title VII, *Buon*, 65 F.4th at 79 (citation omitted), or that Plaintiff's age or disability was a but-for cause of an adverse employment action taken against him, as required by the ADEA and the ADA, *see Lively*, 6 F.4th at 306; *Natofsky*, 921 F.3d at 348. In his opposition brief, Plaintiff asserts several bases for inferring discriminatory intent that the Court addresses and rejects in turn. *See* Opp. at 8-13.

First, Plaintiff notes that he was the first Black, African American man on PPGNY's executive-leadership team. *See id.* at 9. That fact, by itself, does not indicate that any actions were motivated by Plaintiff's race, color, or sex (let alone his religion), or that his age or

---

[4] To be clear, some incidents that Plaintiff characterizes as adverse employment actions do not so qualify under *Muldrow*. For example, Stark's comments at the December 2022 meeting – including "Samuel, I don't care and I don't agree with you!" – were not adverse employment actions. SAC ¶¶ 146-149 (emphasis and further capitalization omitted). That is because these comments did not cause "some harm respecting an identifiable term or condition of [Plaintiff's] employment." *Muldrow*, 144 S. Ct. at 974; *accord Rios*, 106 F.4th at 112-13.

disability was a but-for cause of any action. *See, e.g.*, *Pattanayak v. Mastercard Inc.*, No. 22-1411, 2023 WL 2358826, at *2 (2d Cir. Mar. 6, 2023) (summary order) ("[T]he fact that [the plaintiff] was the only employee of a protected class in a department does not, standing alone, give rise to an inference of discriminatory motive.").

Second, Plaintiff highlights general allegations in the Second Amended Complaint that he suffered discrimination based on his race, color, sex, religion, age, and/or disability. *See* Opp. at 10; *see, e.g.*, SAC ¶ 45 ("Throughout Plaintiff's employment, he was, and still is, subjected to a continuing pattern and practice of discrimination . . . based upon his age, race, color, disability, religion, and gender."); *id.* ¶ 46 (Defendants "engaged . . . in a pattern and practice of discrimination against older black male employees"). As mentioned, however, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "mere conclusory statements . . . do not suffice" to state a claim. *Iqbal*, 556 U.S. at 678. "Naked assertions of discrimination[,] without any specific allegation of a causal link between the defendants' conduct and the plaintiff's membership in a protected class, are too conclusory to withstand a motion to dismiss." *Williams v. Westchester Med. Ctr. Health Network*, No. 21-cv-03746 (KMK), 2024 WL 990153, at *9 (S.D.N.Y. Mar. 7, 2024) (citation omitted).

Third, Plaintiff flags assertions in the Second Amended Complaint that employees lacking some or all of his protected traits were treated better. *See* Opp. at 10-11. "A plaintiff may demonstrate circumstances giving rise to an inference of discrimination by alleging that he was treated less favorably than similarly situated employees." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 229 (2d Cir. 2014). "An employee is similarly situated to co-employees if they were (1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct." *Ruiz v. County of Rockland*, 609 F.3d 486, 493-94 (2d Cir. 2010)

(quotation marks and citation omitted).  The Second Amended Complaint is replete with conclusory allegations that people outside of Plaintiff's protected classes were treated better. *See, e.g.*, SAC ¶ 126 ("Hagan's comments and conduct are clearly discriminatory because she does not subject white, Caucasian, and female employees to similarly humiliating, defamatory comments in the presence of their colleagues." (emphasis and further capitalization omitted)); *id.* ¶ 138 ("PPGNY and PPGNY's executive board members do not similarly interfere with the job functions of younger, non-disabled, Caucasian, and female board members." (emphases omitted)); *id.* ¶ 161 ("PPGNY's actions in this regard are clearly discriminatory, given non-black, non-African American, non-Christian male employees are not treated in this manner." (emphasis omitted)).

Yet except for the instances discussed in the next two paragraphs, the Second Amended Complaint never attempts to identify potential comparators, let alone allege facts indicating that these comparators were similarly situated to Plaintiff.  Such conclusory allegations fail to give "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Buon*, 65 F.4th at 79 (citation omitted); *see, e.g.*, *Boyar v. Yellen*, No. 21-507, 2022 WL 120356, at *2 (2d Cir. Jan. 13, 2022) (summary order) (discrimination claim failed where plaintiff "alleged no facts showing that [certain] employees were suitable comparators"); *Morrison v. Jones*, No. 20-2733, 2021 WL 5829749, at *1 (2d Cir. Dec. 9, 2021) (summary order) (same); *Henderson v. Physician Affiliate Grp. of N.Y. P.C.*, No. 18-cv-03430 (JMF), 2019 WL 3778504, at *5 (S.D.N.Y. Aug. 12, 2019) ("Put simply, [the plaintiff] fails to identify *any* similarly situated comparator, alleging only 'upon information and belief' that the 'other' physicians in the Obstetrics and Gynecology Department – 'none of whom were African-American or disabled, and most of whom were younger' – were treated differently.  Without more, that is insufficient." (citations omitted)).

The closest that Plaintiff comes to alleging a comparator is in relation to the August 2022 selection of Messina (a white woman), rather than Plaintiff (a Black man), as interim CEO. SAC ¶¶ 10, 109, 111. Plaintiff alleges that he, as COO, was "the second in command and under long standing policy and custom he should have been elevated to the position of interim CEO." *Id.* ¶ 110. Plaintiff also asserts that he "was qualified for the position" and (without further explanation) that he was "better qualified, more experienced, and . . . better positioned to succeed in the interim CEO position" than Messina. *Id.* ¶¶ 112, 115. Even accepting these allegations as true, Plaintiff does not allege that he applied for or otherwise sought the position of interim CEO, thus defeating any potential inference of discriminatory intent based on PPGNY's choice of someone else. *See, e.g.*, *Bancroft v. Farino*, No. 11-cv-07567 (GBD), 2014 WL 1255280, at *4 (S.D.N.Y. Mar. 26, 2014) (rejecting failure-to-promote claim where the plaintiff "did not apply for any specific promotion"); *Gaffney v. Dep't of Info. Tech. & Telecomms.*, 536 F. Supp. 2d 445, 459-60 (S.D.N.Y. 2008) ("As part of plaintiffs' *prima facie* cases in failure to hire claims, courts generally require that the plaintiff establish that she applied for the specific position but did not receive an offer."); *During v. City Univ. of N.Y.*, No. 01-cv-09584 (BSJ), 2005 WL 2276875, at *4 (S.D.N.Y. Sept. 19, 2005) ("For the 1987, 1998 and 2002 positions, Plaintiff fails to make out a prima facie case [of failure to promote] because he did not apply for those positions.").

Relatedly, Plaintiff alleges that PPGNY allowed Messina, Davidson, and Morin (all white women) to work remotely without changing their residencies to New York, whereas PPGNY required Plaintiff to have a New York City residency. SAC ¶¶ 109, 117-118. But Plaintiff alleges no facts suggesting that his role of full-time COO is comparable to Messina's role of interim CEO. *Compare id.* ¶ 91, *with id.* ¶ 109. As for Davidson and Morin, Plaintiff alleges no facts about them whatsoever other than their race and gender, thus preventing the

Court from assessing whether they were similarly situated to Plaintiff.  *See Littlejohn*, 795 F.3d at 312 ("[A]dverse actions taken against employees who are not similarly situated cannot establish an inference of discrimination."); *see, e.g.*, *Bramble v. Moody's Corp.*, No. 23-506, 2024 WL 705955, at *3 (2d Cir. Feb. 21, 2024) (summary order) (plaintiff failed to raise inference of discriminatory intent where she "failed to explain how she was similarly situated to any of the employees to whom she sought to compare herself – all of whom held different titles, performed different job duties, worked in different departments, or had different levels of seniority than" the plaintiff).

Fourth, Plaintiff points to certain statements by people affiliated with PPGNY that, in his view, support an inference of discriminatory intent.  *See* Opp. at 10-11.  For example, Plaintiff alleges (as a background fact for purposes of his federal claims) that in December 2021, "Dean and Davis both began subjecting Plaintiff to discriminatory comments based on Plaintiff's age, race, color, and gender, including referring to him with racist terms like 'angry,' 'offensive,' 'out of control,' 'harsh,' and 'aggressive.'"  SAC ¶ 79 (emphasis and further capitalization omitted); *see* Opp. at 10.  "The Court recognizes that certain facially non-discriminatory terms can invoke racist concepts that are already planted in the public consciousness – words like 'welfare queen,' 'terrorist,' 'thug,' [and] 'illegal alien.'"  *Lloyd v. Holder*, No. 11-cv-03154 (AT), 2013 WL 6667531, at *9 (S.D.N.Y. Dec. 17, 2013); *see, e.g.*, *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456 (2006) (per curiam) (rejecting the notion that, as a matter of law, "the use of 'boy' alone is not evidence of discrimination"; rather, the word's meaning "may depend on various factors including context, inflection, tone of voice, local custom, and historical usage" (citation omitted)).  Here, however, Plaintiff fails to provide sufficient contextual information to support a plausible inference that the facially race-neutral terms used by Dean and Davis were in fact racially motivated.  *See, e.g.*, *Williams v.*

*Westchester Med. Ctr. Health Network*, No. 21-cv-03746 (KMK), 2022 WL 4485298, at *8 &

n.21 (S.D.N.Y. Sept. 27, 2022) ("[T]he [Amended Complaint] is devoid of any specifics as to

the context, inflection, [or] tone of voice with regard to when, where, or how Steger allegedly

deployed the term ['janitor']." (further quotation marks and citation omitted)); *Newsome v.*

*IDB Cap. Corp.*, No. 13-cv-06576 (VEC), 2016 WL 1254393, at *14 (S.D.N.Y. Mar. 28,

2016) ("None of the derogatory names that Proux testified Sweeney used . . . imply the race-

or religion-based animus that Proux urges.  Sweeney's alleged comments are indisputably

race and religion neutral, and Proux fails to offer any other factor – context, inflection, tone of

voice, local custom, or historical usage – from which the Court could infer a discriminatory

animus from the use of the terms."); *Humphries v. City Univ. of N.Y.*, No. 13-cv-02641 (PAE),

2013 WL 6196561, at *9 (S.D.N.Y. Nov. 26, 2013) ("Although use of [words such as

'aggressive' and 'angry'] to describe an employee could, in combination with other concrete

factual allegations, support a claim of racial and/or gender discrimination, here there are no

such allegations.  Without more, [the plaintiff's] subjective interpretation of her co-workers'

use of these critical but facially non-discriminatory terms does not, itself, reveal

discriminatory animus.").

        The only example in the Second Amended Complaint of a comment by Dean or Davis

directed at Plaintiff that includes such context is when Davis "informed Plaintiff that his

choice of red text via email was 'aggressive'" and that "a blue or green color was 'more

fitting.'"  SAC ¶¶ 80, 82.  This single piece of feedback does not plausibly suggest that

PPGNY acted with discriminatory intent towards Plaintiff based on his race or any other

protected characteristic.  That Dean and Davis "used red text in their communications" around

a month later evinces, at most, some degree of hypocrisy by Davis (assuming that these

communications were comparable to Plaintiff's emails).  SAC ¶ 83.  But this fact does not

plausibly suggest that Davis's January 2022 remarks to Plaintiff were motivated by discriminatory intent – let alone that any adverse employment action by PPGNY during the filing period (on or after May 17, 2022) was motivated by the intent to discriminate, especially given the long gap in time and because it does not appear that Davis had the authority to fire Plaintiff. *Compare id.* ¶¶ 18, 21 (alleging that Stark and Hagan had to power to fire Plaintiff), *with id.* ¶¶ 29-31 (making no such allegation as to Davis); *see Lively*, 6 F.4th at 306-07 ("[S]tray remarks are rarely given great weight, particularly if they were made temporally remote from the date of the decision." (citation omitted)); *id.* at 307 ("Remarks made by someone other than the person who made the decision adversely affecting the plaintiff may have little tendency to show that the decision-maker was motivated by the discriminatory sentiment expressed in the remark." (brackets and citation omitted)); *see, e.g.*, *Lee v. Grocery Haulers, Inc.*, No. 22-680, 2023 WL 8253089, at *1 (2d Cir. Nov. 29, 2023) (summary order) (Lee, a Black truck dispatcher, alleged that Bocca, another dispatcher, "made racially disparaging remarks and discriminated against Black and Latino drivers by giving them less desirable trucking routes"; "since Bocca himself was not a decisionmaker with authority to discharge Lee, . . . no reasonable juror could draw an inference of discrimination on the part of the GHI supervisors who actually did the firing").

The other comments cited by Plaintiff are no more probative of whether PPGNY acted with discriminatory intent towards Plaintiff based on his race, color, sex, religion, age, or disability. For example, in February 2022, Dean referred to McGee (PPGNY's Chief Equity and Engagement Officer) as "a loud Black woman." SAC ¶ 85 (emphasis and further capitalization omitted). It is true that "[a]n inference of discriminatory intent may arise from an employer's invidious comments about others in the employee's protected group." *Myers v. Doherty*, No. 21-3012, 2022 WL 4477050, at *2 (2d Cir. Sept. 27, 2022) (summary order)

(citing *Littlejohn*, 795 F.3d at 312-13). But even if Dean's comment was invidious, Dean does not appear to have had the authority to fire Plaintiff, and Plaintiff alleges no facts connecting Dean's February 2022 remark about McGee to Plaintiff's termination in March 2023 or any other adverse employment action by PPGNY during the filing period. *Compare* SAC ¶¶ 18, 21 (alleging that Stark and Hagan had to power to fire Plaintiff), *with id.* ¶¶ 23-25 (making no such allegation as to Dean); *see, e.g.*, *Abada v. Delta Air Lines, Inc.*, No. 21-123, 2022 WL 894704, at *2 (2d Cir. Mar. 28, 2022) (summary order) ("Abada also alleges that various Delta employees made antisemitic and racist statements directed at other employees or passengers. These allegations are insufficient to state a claim because they are without any link to the adverse employment action taken against Abada.").

Plaintiff also alleges that at the CHN meeting on September 14, 2022, Hagan "singled out and ridiculed Plaintiff with an onslaught of disparaging comments" in front of Seltzer (chair of PPGNY's board), and that Hagan told Rosado (CHN's Chief Information Officer) that Plaintiff was "not being a good partner to CHN." SAC ¶¶ 120, 122; *see* Opp. at 11. But Plaintiff does not plausibly connect Hagan's comments to Plaintiff's race, color, sex, religion, age, or disability. "To the extent that [Plaintiff] found these comments to be insensitive or callous, 'mistreatment at work is actionable under Title VII only when it occurs because of an employee's protected characteristic.'" *Farooq v. City of New York*, No. 20-3185, 2022 WL 793117, at *3 (2d Cir. Mar. 16, 2022) (summary order) (original brackets and ellipses omitted) (quoting *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)). Moreover, Plaintiff fails to tie Hagan's comments to any adverse employment actions taken by PPGNY. Although Hagan was one of multiple people with the authority to fire Plaintiff, *see* SAC ¶¶ 18, 21, Plaintiff does not allege that Hagan was involved in Plaintiff's firing.

Plaintiff further alleges that on February 27, 2023, Herz (a white male PPGNY board member) asked a Black female PPGNY employee about her hair. *See id.* ¶ 152; Opp. at 11. Even if that comment was indecorous, Plaintiff does not plausibly allege that it "reflected discriminatory intent," let alone that it "played a motivating factor in [any] adverse employment action" by PPGNY *against Plaintiff. Hanks v. City of Syracuse*, No. 22-2819, 2023 WL 8889764, at *2 (2d Cir. Dec. 26, 2023) (summary order) (quotation marks and citation omitted); *see, e.g., Bramble*, 2024 WL 705955, at *3 (question "unconnected to any purported adverse employment decision" was "insufficient to demonstrate discriminatory intent"); *Gittens-Bridges v. City of New York*, No. 22-810, 2023 WL 8825342, at *2 (2d Cir. Dec. 21, 2023) (summary order) (similar); *see also Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 150 (2d Cir. 2010) ("The relevance of discrimination-related remarks does not depend on their offensiveness, but rather on their tendency to show that the decision-maker was motivated by assumptions or attitudes relating to the protected class." (citation omitted)).

Altogether, Plaintiff fails to allege facts providing "at least minimal support for the proposition that" PPGNY, in taking any adverse employment action against Plaintiff during the filing period, "was motivated by discriminatory intent" based on Plaintiff's race, color, sex, or religion, *Buon*, 65 F.4th at 79 (citation omitted), or that Plaintiff's age or disability was a but-for cause of any adverse employment action, *see Lively*, 6 F.4th at 306; *Natofsky*, 921 F.3d at 348. Hence, Plaintiff's Title VII, ADEA, and ADA discrimination claims are dismissed.

### 2. Retaliation

In the Second Amended Complaint, Plaintiff plausibly alleges that Defendants retaliated against Plaintiff for filing the Initial Complaint, in violation of Title VII and the ADA. Plaintiff does not, however, state a claim for retaliation under Title VII or the ADA

based on the March 28 Email forwarding a complaint by two coworkers (or, for that matter, any other event during the 300 days prior to Plaintiff's EEOC filing).

The anti-retaliation provisions of Title VII and the ADA are "substantially similar," *Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F.4th 159, 170 (2d Cir. 2024), and retaliation claims under both statutes are analyzed using "the well-known *McDonnell Douglas* burden-shifting framework," *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018) (Title VII); *accord Tafolla v. Heilig*, 80 F.4th 111, 125 (2d Cir. 2023) (ADA). "To present a prima facie case of retaliation under [Title VII or the ADA], a plaintiff must show that (1) she participated in an activity protected by Title VII [or the ADA], (2) this participation was known to her employer, (3) the employer subjected her to a materially adverse action thereafter, and (4) a causal connection existed between the protected activity and the adverse action." *Moll v. Telesector Res. Grp., Inc.*, 94 F.4th 218, 239 (2d Cir. 2024) (quotation marks and citation omitted) (Title VII); *accord Tafolla*, 80 F.4th at 125 (ADA). The Court addresses each element in turn.

### a. Participation in a Protected Activity

The first element of a retaliation claim is participation in a protected activity. *Moll*, 94 F.4th at 239. "Protected activity includes opposing an unlawful employment practice or otherwise making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing." *Banks*, 81 F.4th at 275 (quotation marks and citation omitted). "In other words, an employer cannot 'retaliate on account of an employee's having opposed, complained of, or sought remedies for, unlawful workplace discrimination.'" *Felder v. U.S. Tennis Ass'n*, 27 F.4th 834, 842 (2d Cir. 2022) (brackets omitted) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 342 (2013)).

"A plaintiff seeking to demonstrate that he engaged in protected activity need not show that the behavior he opposed in fact violated Title VII" or the ADA, *Cooper v. N.Y. State Dep't of Lab.*, 819 F.3d 678, 680-81 (2d Cir. 2016) (per curiam), but rather that his protected activity "was motivated by a good faith, reasonable belief that the underlying employment practice was unlawful," *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 24 (2d Cir. 2014) (quotation marks and citation omitted). Thus, even if the plaintiff fails to adequately allege that the defendant violated Title VII or the ADA, the defendant may still have retaliated against the plaintiff for engaging in protected conduct. *See Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 234 (2d Cir. 2000) (per curiam). "The reasonableness of the plaintiff's belief is to be assessed in light of the totality of the circumstances," but "mere subjective good faith belief is insufficient; the belief must be reasonable and characterized by objective good faith." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14-16 (2d Cir. 2013) (per curiam) (brackets, emphasis, and citations omitted). "The objective reasonableness of an employee's belief that the employer has violated Title VII [or the ADA] must be measured against existing substantive law, because a failure to do so would eviscerate the objective component of [the] reasonableness inquiry." *Shkoza v. NYC Health & Hosps. Corp.*, No. 20-cv-03646 (RA), 2021 WL 4340787, at *7 (S.D.N.Y. Sept. 22, 2021) (quoting *Sosa v. Local Staff, LLC*, 618 F. App'x 19, 19-20 (2d Cir. 2015) (summary order)).

In this case, Plaintiff has plausibly alleged that the Initial Complaint "was motivated by a good faith, reasonable belief that the underlying employment practice[s] w[ere] unlawful" under Title VII and the ADA. *Rivera*, 743 F.3d at 24 (quotation marks and citation omitted). In the Initial Complaint, Plaintiff asserted, among other things, that his coworkers' insensitive comments and conduct created a hostile work environment, and that PPGNY

refused to take remedial disciplinary actions despite Plaintiff making multiple formal complaints. *See* Compl. ¶¶ 44-45, 48-49, 58-61, 65-66, 70-71, 93-98, 110, 112-114.  In doing so, Plaintiff had a good-faith reasonable belief that he was "challeng[ing] employment practices that, if proven, were unlawful under Title VII and the [ADA]." *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 210 (2d Cir. 2006); *see Cox v. Onondaga Cnty. Sheriff's Dep't*, 760 F.3d 139, 149 (2d Cir. 2014) ("[Under Title VII, e]mployers are under an independent duty to investigate and curb racial harassment by lower level employees of which they are aware."); *see, e.g.*, *Phillips v. Fashion Inst. of Tech.*, No. 23-375, 2024 WL 1005500, at *3 (2d Cir. Mar. 8, 2024) (summary order) (plaintiff's official complaint was "protected activity because she had a good faith, reasonable belief that the racially insensitive comments about which she complained amounted to an unlawful employment practice, namely, a discriminatory hostile work environment" (quotation marks and citation omitted)); *La Grande v. DeCrescente Distrib. Co.*, 370 F. App'x 206, 212 (2d Cir. 2010) (summary order) (plaintiff complained about two isolated incidents of race-based comments, occurring more than seven months apart; even if this conduct was not severe or pervasive enough to constitute a violation of Title VII, it was enough to support a plausible retaliation claim).  Thus, Plaintiff has plausibly alleged that he filed the Initial Complaint under a good faith, reasonable belief that the underlying employment practices violated Title VII and the ADA.

On the other hand, Plaintiff has not plausibly alleged that the March 28 Email supports a retaliation claim under Title VII or the ADA.  Plaintiff states that he "forward[ed] a complaint on behalf of two (2) new members of the PPGNY Human Resources team.  The details of this complaint corroborated Plaintiff's own complaint of discrimination against Dean." SAC ¶ 156 (emphasis and further capitalization omitted).  To be sure, "protected

activities are not limited to complaints involving discrimination against the complainant herself, but also extend to complaints of discrimination on behalf of other employees and complaints of discriminatory practices generally." *Littlejohn*, 795 F.3d at 317; *see Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990) ("In addition to protecting the filing of formal charges of discrimination, [Title VII] protects as well informal protests of discriminatory employment practices, including making complaints to management . . . and expressing support of co-workers who have filed formal charges."). Plaintiff, however, provides no information about the "details" of his coworkers' complaint against Dean. SAC ¶ 156. Plaintiff also does not specify what "complaint of discrimination" against Dean he believes the coworkers' complaint to have "corroborated," which matters because the Second Amended Complaint recounts two formal complaints that Plaintiff lodged against Dean alleging discrimination based on three different traits (none of which was Plaintiff's disability for purposes of the ADA). *Id.*; *see id.* ¶ 100 ("On or about March 28, 2022, Plaintiff formally complained about the offensive and illegal race and gender discrimination he was being subjected to by Dean and Davis." (emphasis and further capitalization omitted)); *id.* ¶ 106 ("On or about July 31, 2022, Plaintiff yet again formally complained to PPGNY's Human Resources representative about race and age discrimination he was subjected to by Dean and Davis." (emphasis and further capitalization omitted)).[5] It is thus impossible for the Court to determine the basis for the coworkers' complaint, let alone whether their complaint supported

---

[5] These complaints by Plaintiff in March and July 2022 do not support a retaliation claim because they are too attenuated from any materially adverse actions by PPGNY during the filing period, given that those adverse actions happened almost a year later. *See Ward v. Cohen Media Publ'ns LLC*, No. 22-cv-06431 (JLR), 2023 WL 5353342, at *14 (S.D.N.Y. Aug. 21, 2023) ("Courts in this District have granted motions to dismiss retaliation claims when the allegedly retaliatory conduct took place more than five months after engaging in protected activity, absent other allegations of a causal connection." (quotation marks and citation omitted)).

"a good faith, reasonable belief that the underlying challenged actions" were unlawful. *Kelly*, 716 F.3d at 14 (citation omitted); *see Green v. Mount Sinai Health Sys., Inc.*, 826 F. App'x 124, 125 (2d Cir. 2020) (summary order) ("We have repeatedly held that generalized grievances about an unpleasant or even harsh work environment, without more, do not reasonably alert an employer of *discriminatory* conduct and therefore fail to rise to the level of protected activity.").

Even assuming that the coworkers' complaint related to race (the common denominator of Plaintiff's formal complaints against Dean), the lack of information about the coworkers' complaint deprives the Court of the ability to determine whether Plaintiff had a good faith, reasonable belief that the coworkers were complaining about unlawful conduct. Although, at the pleading stage, Plaintiff need not recount the coworkers' complaint in exacting detail, Plaintiff has not provided *any* information about the substance of the coworkers' complaint, thus preventing the Court from assessing whether he had "a good faith, reasonable belief that the underlying challenged actions" violated Title VII or the ADA. *Kelly*, 716 F.3d at 14 (citation omitted); *see id.* at 17 ("Although particular words such as 'discrimination' are certainly not required to put an employer on notice of a protected complaint, neither are they sufficient to do so if nothing in the substance of the complaint suggests that the complained-of activity is, in fact, unlawfully discriminatory."). Therefore, as presently pleaded, the March 28 Email cannot support a retaliation claim under Title VII or the ADA.

In sum, Plaintiff has plausibly alleged that he participated in a protected activity by filing the Initial Complaint but not by sending the March 28 Email. Consequently, the rest of the Court's discussion of retaliation under Title VII and the ADA will focus on the Initial Complaint.

### b.  Defendants' Knowledge of the Protected Activity

The second element of a retaliation claim is that the defendant knew about the

protected activity.  *Moll*, 94 F.4th at 239.  Defendants do not contest that Plaintiff has

sufficiently pleaded this element as to the Initial Complaint.  *See* Br. at 15-16; Reply at 8-9.

### c.  Materially Adverse Action

The third element of a retaliation claim is a materially adverse action.  *Moll*, 94 F.4th

at 239.  "An action qualifies as 'materially adverse' if it is 'harmful to the point that it could

well dissuade a reasonable worker from making or supporting a charge of discrimination.'"

*Id.* (brackets and emphasis omitted) (quoting *White*, 548 U.S. at 57).  "[T]he significance of

any given act of retaliation will often depend upon the particular circumstances."  *Thompson*

*v. N. Am. Stainless, LP*, 562 U.S. 170, 175 (2011) (quoting *White*, 548 U.S. at 69).

Plaintiff alleges that in the weeks after he filed the Initial Complaint, PPGNY

"excommunicated [Plaintiff] from key operational and fiscal stakeholder meetings," "covertly

transitioned" "several key responsibilities" to other PPGNY employees, recorded meetings

"without Plaintiff's consent," and ultimately fired Plaintiff.  SAC ¶¶ 155, 158.  These actions,

taken together, "could . . . dissuade a reasonable worker from making or supporting a charge

of discrimination."  *White*, 548 U.S. at 57; *see Rivera*, 743 F.3d at 25 ("[A]lleged acts of

retaliation must be evaluated both separately and in the aggregate, as even trivial acts may

take on greater significance when they are viewed as part of a larger course of conduct."

(citation omitted)); *Starzynski v. Stanley Black & Decker, Inc.*, No. 21-3040, 2022 WL

17825920, at *1 (2d Cir. Dec. 21, 2022) (summary order) ("Examples of materially adverse

employment actions in the context of a retaliation claim include, but are not limited to[,]

termination of employment . . . [and] significantly diminished material responsibilities."

(quotation marks and citation omitted)).  Hence, Plaintiff has plausibly alleged that Defendants subjected him to materially adverse actions.

### d.  Causal Connection

The fourth element of a retaliation claim is a causal connection between the protected activity and the materially adverse action.  *Moll*, 94 F.4th at 239.  "To adequately plead causation" under the retaliation provisions of Title VII and the ADA, "the plaintiff must plausibly allege that the retaliation was a but-for cause of the employer's adverse action." *Duplan*, 888 F.3d at 625 (quotation marks and citation omitted) (Title VII); *accord Sharikov*, 103 F.4th at 170 (ADA).  But-for causation "does not require proof that retaliation was the only cause of the employer's action."  *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013).  Rather, a plaintiff need only establish that "the adverse action would not have occurred in the absence of the retaliatory motive."  *Id.*  "Causation may be shown by direct evidence of retaliatory animus or inferred through temporal proximity to the protected activity."  *Duplan*, 888 F.3d at 625.

Plaintiff successfully relies on the latter method of showing causation.  He alleges that "PPGNY's retaliatory and discriminatory misconduct intensified dramatically after March 7, 2023."  SAC ¶ 155 (emphasis omitted).  Although Plaintiff does not specify exactly when, for example, he was subjected to "rampant incivility" or "excommunicated from key operational and fiscal stakeholder meetings," these incidents necessarily happened within three weeks after he filed the Initial Complaint because Plaintiff was terminated on March 28, 2023.  *Id.* ¶¶ 155-156, 158.  Even looking solely at Plaintiff's termination, that event was sufficiently close in time to Plaintiff's filing of the Initial Complaint to support, at least at the pleading stage of this case, the requisite inference of causation.  *See, e.g.*, *Banks*, 81 F.4th at 277 ("[W]e have previously held that a period of several months can demonstrate a causal

connection between the protected activity and the alleged adverse action."); *Zeng v. N.Y.C. Hous. Auth.*, No. 22-138, 2023 WL 4553416, at *7 (2d Cir. July 17, 2023) (summary order) (sufficient basis for inferring causation where relevant adverse employment action happened several weeks after plaintiff engaged in protected activity).

Based on the foregoing analysis, the Court holds that Plaintiff states claims for retaliation under Title VII and the ADA.  Defendants' motion to dismiss those claims is denied.

### 3. Hostile Work Environment

Plaintiff also brings a hostile-work-environment claim under the ADA.  SAC ¶¶ 221-223.  To prevail on a hostile-work-environment claim, a plaintiff must establish "(1) that the harassment was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment, and (2) that a specific basis exists for imputing the objectionable conduct to the employer."  *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 74 (2d Cir. 2019) (brackets, quotation marks, and citation omitted).  The Court considers events before May 17, 2022, because "[s]o long as 'an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.'"  *Banks*, 81 F.4th at 260 (quoting *Morgan*, 536 U.S. at 117).  Even so, Plaintiff fails to allege that any disability-related harassment "was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment."  *Fox*, 918 F.3d at 74 (brackets and citation omitted).  Thus, the Court need not decide whether Plaintiff adequately alleges "that a specific basis exists for imputing the objectionable conduct to" PPGNY.  *Id.* (citation omitted).

"To establish a hostile work environment . . . , a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is

sufficiently severe or pervasive to alter the conditions of the victim's employment and create

an abusive working environment.'" *Littlejohn*, 795 F.3d at 320-21 (quoting *Harris v. Forklift*

*Sys., Inc.*, 510 U.S. 17, 21 (1993)); *see Fox*, 918 F.3d at 74 ("By borrowing Title VII's

language [authorizing hostile-work-environment claims], Congress suggested that it intended

for the ADA to be coextensive, at least in this respect, with Title VII.").  "Although the victim

must *subjectively* perceive the conduct as abusive, the misconduct shown also must be severe

or pervasive enough to create an *objectively* hostile or abusive work environment." *Fox*, 918

F.3d at 74 (quotation marks and citation omitted; emphases added).  Sometimes, "an isolated

act may be so serious that it requires the conclusion that the terms and conditions of

employment were altered." *Id.*  Usually, however, "[t]he incidents complained of must be

more than episodic; they must be sufficiently continuous and concerted in order to be deemed

pervasive." *Littlejohn*, 795 F.3d at 321.

In the lengthy Second Amended Complaint, the only allegations related to Plaintiff's

alleged disability are that when Plaintiff was hired in September 2021, he underwent a

"disproportionate number of background checks" that was "so far above what . . . non-

disabled prospective employees go through" (although he identifies no comparators), SAC

¶¶ 36, 47-48, and that several board members, including Seltzer, stated in September 2022

that they thought Plaintiff's subordinate was "a much better communicator" than Plaintiff

after the subordinate presented a report that Plaintiff was unable to present himself, *id.* ¶¶ 130-

131.  These facts are plainly inadequate to give rise to a hostile-work-environment claim

under the ADA.  Under federal law, "simple teasing, offhand comments, and isolated

incidents (unless extremely serious) will not amount to discriminatory changes in the terms

and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)

(quotation marks and citation omitted).  Courts routinely hold that stray incidents of the nature

alleged in this case (and, indeed, of a more serious nature) fail to support a hostile-work-environment claim under federal civil-rights statutes. *See, e.g.*, *Freud v. N.Y.C. Dep't of Educ.*, No. 22-879, 2023 WL 3103588, at *3 (2d Cir. Apr. 27, 2023) (summary order) ("At most, [the plaintiff] has identified an assistant principal's episodic remarks allegedly expressing ignorance and dislike of his religious observance."); *Harge v. City of New York*, No. 21-2293, 2022 WL 17481819, at *2 (2d Cir. Dec. 7, 2022) (summary order) ("The record contains evidence of episodic racially biased comments. But, for racist comments, slurs, and jokes to constitute a hostile work environment, there generally must be more than a few isolated incidents of racial enmity." (brackets, quotation marks, and citations omitted)); *Miller v. N.Y. State Police*, No. 20-3976, 2022 WL 1133010, at *1-3 (2d Cir. Apr. 18, 2022) (summary order) (the plaintiff "pointed to at least twelve incidents over a period of three years wherein [his supervisor], in [the plaintiff's] presence, allegedly repeated the statements of colleagues or witnesses containing racial slurs"; affirming grant of summary judgment to defendants on hostile-work-environment claim); *Zheng-Smith v. Nassau Health Care Corp.*, No. 20-3544, 2021 WL 4097316, at *1-3 (2d Cir. Sept. 9, 2021) (summary order) (hostile-work-environment claim failed where "[t]he only alleged mistreatment with a nexus to [the plaintiff's] race or national origin" was that her supervisor "ridiculed and mocked her accent"; this conduct was not "sufficiently severe or pervasive to amount to a hostile work environment" (quotation marks and citation omitted)). So too here. Therefore, the Court grants the motion to dismiss Plaintiff's claim under the ADA for a hostile work environment.

*    *    *

In sum, although Plaintiff does not state discrimination claims under Title VII, the ADEA, or the ADA or a hostile-work-environment claim under the ADA, he states retaliation

37

claims under Title VII and the ADA.  Thus, Defendants' motion to dismiss is granted on the former claims and denied on the latter claims.

## II.    Section 1981

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."  42 U.S.C. § 1981(a).  Section 1981 "thus outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." *Patterson v. County of Oneida*, 375 F.3d 206, 224 (2d Cir. 2004).  "Although [Section 1981] never uses the word 'race,' the Supreme Court has construed it as forbidding 'racial' discrimination." *Village of Freeport v. Barrella*, 814 F.3d 594, 604 (2d Cir. 2016).  In addition to discrimination claims, retaliation claims may also be brought under Section 1981. *Felder*, 27 F.4th at 848 n.9.  Claims under Section 1981 are subject to a four-year statute of limitations. *Banks*, 81 F.4th at 260.

Plaintiff raises Section 1981 discrimination and retaliation claims against all Defendants, which the Court addresses in turn.

### A.  Discrimination

To state a discrimination claim under Section 1981, a plaintiff must plausibly allege that (1) the plaintiff is a member of a racial minority, (2) the defendant intended to discriminate on the basis of race, (3) the defendant's discrimination concerned one of Section 1981's enumerated activities, and (4) the plaintiff's injury would not have occurred but for the defendant's discrimination. *See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 329-31, 341 (2020); *Felder*, 27 F.4th at 848.  Defendants argue that Plaintiff's Section 1981 discrimination claims should be dismissed because Plaintiff "has not alleged

race as the but-for cause of his alleged injury." Br. at 7 (emphasis and capitalization omitted). The Court agrees with Defendants.

Plaintiff's only response is that but-for causation "is satisfied when the plaintiff establishes that the defendant's discriminatory intent more likely than not was the basis of the adverse employment action." Opp. at 11-12 (quoting *Blalock v. Metals Trades, Inc.*, 775 F.2d 703, 709 (6th Cir. 1985)). But *Blalock*'s reference to "more likely than not" is merely a reference to "the preponderance-of-the-evidence standard generally applicable in civil actions." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 390 (1983). Even under the preponderance standard, Plaintiff must "plead and ultimately prove that, but for race, [he] would not have suffered the loss of a legally protected right." *Comcast*, 589 U.S. at 341. The Second Amended Complaint does not even attempt to plausibly allege as much with respect to Plaintiff's Section 1981 discrimination claims (let alone succeed in doing so), so the Court dismisses these claims.

### B. Retaliation

Retaliation claims under Section 1981 are "subject to the same standards" as retaliation claims under Title VII. *Banks*, 81 F.4th at 275. Thus, insofar as Plaintiff states a claim against PPGNY for race-based retaliation under Title VII (as held above), Plaintiff also states a retaliation claim against PPGNY under Section 1981.

"[U]nlike Title VII, [S]ection 1981 permits a plaintiff, under certain circumstances, to sue persons other than employers." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 151 n.6 (2d Cir. 2014). "[A]n individual may be held liable for retaliation under [Section] 1981 'if that individual is personally involved in the alleged deprivation.'" *McFadden v. County of Monroe*, 672 F. App'x 81, 83 (2d Cir. 2016) (summary order) (further quotation marks omitted) (quoting *Littlejohn*, 795 F.3d at 314); *accord Liu v. Indium Corp. of Am.*, No. 20-64,

2021 WL 3822871, at *2 (2d Cir. Aug. 27, 2021) (summary order).  Defendants argue that

Plaintiff has failed to plead sufficient allegations to support retaliation claims against Stark,

Hagan, Dean, Davis, and Corso (collectively, the "Individual Defendants") under Section

1981.  *See* Br. at 21.  Plaintiff does not respond to this argument, *cf.* Opp. at 16-22, thus

effectively conceding it, *see Curry Mgmt. Corp. v. JPMorgan Chase Bank, N.A.*, 643 F. Supp.

3d 421, 426 (S.D.N.Y. 2022) ("A party may be deemed to concede an argument by failing to

address it in an opposition brief.").  Therefore, the Court dismisses Plaintiff's Section 1981

retaliation claim as to the Individual Defendants.

## III.    NYCHRL

Having addressed Plaintiff's federal-law claims, the Court turns to Plaintiff's timely

state-law claims.  *See Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 238 (2d Cir.

2007) ("[C]laims under the NYSHRL and the NYCHRL are time-barred unless filed within

three years of the alleged discriminatory acts."); *Mejia v. T.N. 888 Eighth Ave. LLC*, 95

N.Y.S.3d 168, 170 (1st Dep't 2019) (same).  The Court starts with Plaintiff's claims under the

NYCHRL for (a) discrimination on the basis of race, age, sex/gender, sexual orientation, and

disability, (b) retaliation, and (c) hostile work environment.

"[C]ourts must analyze NYCHRL claims separately and independently from any

federal and state law claims" and "constru[e] the NYCHRL's provisions 'broadly in favor of

discrimination plaintiffs, to the extent that such a construction is reasonably possible.'"

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (quoting

*Albunio v. City of New York*, 947 N.E.2d 135, 137 (N.Y. 2011)).  "Thus, even if the

challenged conduct is not actionable under federal and state law, federal courts must consider

separately whether it is actionable under the broader New York City standards."  *Id.*  Still,

"even under the more lenient requirements of the NYCHRL, [a] plaintiff's claims must be

more than conclusory or speculative to survive a motion to dismiss." *Ward v. Cohen Media Publ'ns LLC*, No. 22-cv-06431 (JLR), 2023 WL 5353342, at *15 (S.D.N.Y. Aug. 21, 2023) (original brackets and citation omitted).

## A. Discrimination

"To state a cause [of] action to recover damages for [employment] discrimination in violation of the NYCHRL, a plaintiff must allege that (1) he or she is a member of a protected class, (2) he or she was qualified to hold the position, (3) he or she was subject to an unfavorable change or treated less well than other employees, and (4) the unfavorable change or different treatment occurred under circumstances giving rise to an inference of discrimination." *Okeke v. Interfaith Med. Ctr.*, 205 N.Y.S.3d 189, 191 (2d Dep't 2024) (quotation marks and citation omitted). Unlike Title VII, the NYCHRL permits suits against individual supervisors. *See McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 157 (2d Cir. 2017) (per curiam). For purposes of individual liability under the NYCHRL, supervisors include "not just those with formal managerial or titular authority over a plaintiff," but also "those who wield any ability to dictate or administer the compensation, terms, conditions, or privileges of the plaintiff's employment." *Russell v. N.Y. Univ.*, --- N.E.3d ----, 2024 WL 1773218, at *6 (N.Y. Apr. 25, 2024). To be liable under the NYCHRL, individual employees must also have "actually participated in the conduct giving rise to the discrimination." *Espinoza v. CGJC Holdings LLC*, No. 23-cv-09133 (DLC), 2024 WL 3520662, at *5 n.5 (S.D.N.Y. July 23, 2024); *accord Mahoney v. City of Albany*, 181 N.Y.S.3d 716, 722 (3d Dep't 2022).

The NYCHRL must be liberally construed. *See Russell*, 2024 WL 1773218, at *3; *Brooklyn Ctr. for Indep. of the Disabled v. Metro. Transp. Auth.*, 11 F.4th 55, 68 (2d Cir. 2021). Yet "the NYCHRL is not a 'general civility code,'" and a plaintiff "still bears the

burden of showing that the conduct is caused by a discriminatory motive." *Mihalik*, 715 F.3d at 110 (quoting *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 40 (1st Dep't 2009)). "It is not enough that a plaintiff has an overbearing or obnoxious boss. She must show that she has been treated less well at least in part '*because of* her [protected characteristic].'" *Id.* (quoting *Williams*, 872 N.Y.S.2d at 39).

For substantially the same reasons stated above regarding Plaintiff's claims under Title VII, the ADEA, and the ADA, Plaintiff does not plausibly allege that he "has been treated less well [by Defendants] at least in part because of" any protected characteristic. *Id.* (emphasis, quotation marks, and citation omitted). The Court therefore dismisses Plaintiff's discrimination claims under the NYCHRL. *See, e.g.*, *Cooper v. Franklin Templeton Invs.*, No. 22-2763, 2023 WL 3882977, at *3 (2d Cir. June 8, 2023) (summary order) (NYCHRL claims dismissed where plaintiff failed to plausibly allege discriminatory motive); *Abada*, 2022 WL 894704, at *2 (same); *Doolittle v. Bloomberg L.P.*, No. 22-cv-09136 (JLR), 2023 WL 7151718, at *7-9 (S.D.N.Y. Oct. 31, 2023) (same); *cf. Serrano v. City of New York*, 208 N.Y.S.3d 603, 604 (1st Dep't 2024) ("[P]laintiffs raised an inference of animus through their allegations of differential treatment of similarly situated white officers in terms of assignments, evaluations, and placement on performance monitoring. Plaintiffs sufficiently alleged that the white officers were similarly situated. The allegations of differential treatment were also sufficiently specific and factual in nature."); *Okeke*, 205 N.Y.S.3d at 765 (plaintiff made "specific factual allegations that [he] was paid less money for doing the same job as his less experienced, less qualified, much younger coworkers, two of whom were identified in detail").

### B.    Retaliation

A plaintiff "shoulders a more relaxed burden to plead a sufficient retaliation claim under the NYCHRL" than under federal law. *Moore v. Hadestown Broadway Ltd. Liab. Co.*, --- F. Supp. 3d ----, 2024 WL 989843, at *6 (S.D.N.Y. Mar. 7, 2024). "A complaint alleging retaliation under this more lenient standard need not plead that the plaintiff suffered an adverse employment action." *Id.* "Instead, a plaintiff can survive a motion to dismiss if she shows that something happened that was reasonably likely to deter a person from engaging in protected activity." *Id.* (brackets, quotation marks, and citation omitted); *accord Bilitch v. N.Y.C. Health & Hosps. Corp.*, 148 N.Y.S.3d 238, 246 (2d Dep't 2021). Also, "'opposing any practice' can include situations where a person, before the retaliatory conduct occurred, merely 'made clear her disapproval of the defendant's discrimination by communicating to him, in substance, that she thought his treatment of the victim was wrong.'" *Mihalik*, 715 F.3d at 112 (brackets omitted) (quoting *Albunio*, 947 N.E.2d at 138).

As explained previously, Plaintiff states claims against PPGNY for retaliation under Title VII, the ADA, and Section 1981. Consequently, he also states a retaliation claim against PPGNY under the NYCHRL. *See, e.g.*, *Friederick v. Passfeed, Inc.*, No. 21-cv-02066 (RA), 2022 WL 992798, at *11 (S.D.N.Y. Mar. 31, 2022) (because plaintiff stated Title VII retaliation claim, plaintiff necessarily also stated NYCHRL retaliation claim); *Stewart v. City of New York*, No. 11-cv-06935 (CM), 2012 WL 2849779, at *11 (S.D.N.Y. July 10, 2012) (same).

The Court turns next to the retaliation claims against the Individual Defendants. As noted above, individuals can be held liable under the NYCHRL if they are "supervisors who actually participated in the conduct giving rise to the [plaintiff's claim]." *Espinoza*, 2024 WL 3520662, at *5 n.5. Plaintiff alleges that each of the Individual Defendants "controll[ed]

many tangible aspects of Plaintiff's job duties," SAC ¶¶ 18 (Stark), 21 (Hagan), 24 (Dean), 27 (Corso), 30 (Davis), indicating that they qualify as supervisors in this context, *see Russell*, 2024 WL 1773218, at *6 (supervisors include "not just those with formal managerial or titular authority over a plaintiff, but [also] those who wield any ability to dictate or administer the compensation, terms, conditions, or privileges of the plaintiff's employment").  Plaintiff also sets forth sufficient facts (at least for purposes of surviving the motion to dismiss) indicating that Hagan "actually participated," *Espinoza*, 2024 WL 3520662, at *5 n.5, in conduct that "was reasonably likely to deter [Plaintiff] from engaging in protected activity," *Moore*, 2024 WL 989843, at *6 (citation omitted); *see, e.g.*, SAC ¶ 67 ("[A]lmost immediately following Plaintiff's complaint, [Hagan] began disproportionately and excessively monitoring and micromanaging Plaintiff, in direct retaliation against Plaintiff for having engaged in protected conduct by complaining about unlawful discrimination.").

On the other hand, Plaintiff does not plausibly allege in a non-conclusory manner that any other Individual Defendants "actually participated" in cognizable acts of retaliation against Plaintiff.  *Espinoza*, 2024 WL 3520662, at *5 n.5.  For example, although Plaintiff sent the March 28 Email to four people, including Stark, Plaintiff does not claim that Stark (nor any of the other Individual Defendants) "actually participated" in his termination.  *Id.* Nor does Plaintiff allege, except in the most conclusory of ways, that Dean, Davis, or Corso took any retaliatory actions against Plaintiff.  *See Ward*, 2023 WL 5353342, at *15 ("[E]ven under the more lenient requirements of the NYCHRL, [a] plaintiff's claims must be more than conclusory or speculative to survive a motion to dismiss." (citation omitted)).

Therefore, Plaintiff's NYCHRL retaliation claims against PPGNY and Hagan survive, but Plaintiff's NYCHRL retaliation claims against the other Individual Defendants are dismissed.

### C.    Harassment and Hostile Work Environment

"The NYCHRL does not distinguish between claims of 'discrimination' and 'harassment' or hostile work environment, which is a term of art borrowed from the more restrictive Title VII jurisprudence." *Mitura v. Finco Servs., Inc.*, --- F. Supp. 3d ----, 2024 WL 232323, at *3 n.3 (S.D.N.Y. Jan. 22, 2024); *accord Doolittle*, 2023 WL 7151718, at *8 ("Under the NYCHRL, the standard for a hostile-work-environment claim is the same as for a discrimination claim.").  To state a hostile-work-environment claim under the NYCHRL, Plaintiff must adequately plead that he was "treated less well than other employees because of [his] protected status." *Chin v. N.Y.C. Hous. Auth.*, 965 N.Y.S.2d 42, 44 (1st Dep't 2013). For the reasons stated above regarding the federal and NYCHRL discrimination claims, Plaintiff fails to plausibly allege that he was treated less well because of his protected status, so he fails to state harassment or hostile-work-environment claims under the NYCHRL.  *See also Bilitch*, 148 N.Y.S.3d at 245 ("The conduct alleged must . . . exceed what a reasonable victim of discrimination would consider petty slights and trivial inconveniences, and mere personality conflicts will not suffice to establish a hostile work environment." (quotation marks and citations omitted)); *Lennert-Gonzalez v. Delta Airlines, Inc.*, No. 11-cv-01459 (JMF), 2013 WL 754710, at *8 (S.D.N.Y. Feb. 28, 2013) (NYCHRL hostile-environment-claim failed where plaintiff could not connect hostile conduct to national origin).

## IV.    NYSHRL

The Court concludes its analysis of Defendants' motion to dismiss by examining Plaintiff's claims under the NYSHRL for (a) discrimination on the basis of race, age, sex/gender, sexual orientation, and disability, (b) retaliation, and (c) hostile work environment.

### A. Discrimination

Employment-discrimination claims under the NYSHRL have long been "analyzed identically to claims under Title VII." *Cooper*, 819 F.3d at 680 n.3 (ellipsis omitted) (quoting *Brenna v. Metro. Opera Ass'n*, 192 F.3d 310, 316 n.2 (2d Cir. 1999)); *accord Ferrante v. Am. Lung Ass'n*, 687 N.E.2d 1308, 1311 (N.Y. 1997). But "[t]he New York State Legislature passed several amendments to the NYSHRL in June 2019, the effect of which is to render the standard for claims closer to the standard of the NYCHRL." *Livingston v. City of New York*, 563 F. Supp. 3d 201, 232 n.14 (S.D.N.Y. 2021).

The question is *how much* closer the NYSHRL and NYCHRL standards now are. "The case law . . . has yet to definitively resolve whether the NYSHRL's liability standard is now coextensive with that of the NYCHRL, or whether it requires more, so as to impose a standard between federal and city law." *Wheeler v. Praxair Surface Techs., Inc.*, 694 F. Supp. 3d 432, 451 (S.D.N.Y. 2023). That said, New York courts have implied that the standards for employment-discrimination claims under the NYSHRL and the NYCHRL are now largely the same. *See, e.g.*, *Syeed v. Bloomberg L.P.*, 235 N.E.3d 351, 355-56 (N.Y. 2024) (treating the NYSHRL and the NYCHRL as coextensive in protecting nonresidents who are not yet employed but have proactively sought an actual state- or city-based job opportunity); *cf. Alshami v. City Univ. of N.Y.*, 162 N.Y.S.3d 720, 720 n.1 (1st Dep't 2022) ("[B]ecause [the] plaintiff's claims under the [NYS]HRL accrued before the enactment of [the 2019 amendments], the standard for the discrimination claim under the [NYS]HRL differs from the standard for the discrimination claim under the [NYC]HRL."). These signals – in conjunction with the fact that "the language of the NYSHRL is now nearly identical to that of the NYCHRL," *Cannizzaro v. City of New York*, 206 N.Y.S.3d 868, 884-85 (Sup. Ct. 2023); *see Hosking v. Mem'l Sloan-Kettering Cancer Ctr.*, 126 N.Y.S.3d 98, 102 n.1 (1st Dep't 2020) –

suggest that, at least as to liability for employment-discrimination claims, the NYSHRL and the NYCHRL are coextensive.

Still, the Court "need not resolve the impact of [the 2019 NYSHRL] amendments here" because, as explained above, "Plaintiff's employment discrimination claims fall short even under the NYCHRL's more liberal standards." *Franklin Templeton*, 2023 WL 3882977, at *3; *see, e.g.*, *id.* (NYSHRL claims dismissed where plaintiff failed to plausibly allege discriminatory motive); *Abada*, 2022 WL 894704, at *2 (same); *Doolittle*, 2023 WL 7151718, at *7-9 (same); *see also Cagino v. Levine*, 157 N.Y.S.3d 561, 564 n.1 (3d Dep't 2021) ("Neither the liberal construction of the [NYSHRL] nor a favorable reading of [the] plaintiff's complaint obviates the need for [the] plaintiff to allege sufficient facts to state a cause of action for discrimination in the first instance."). Therefore, Plaintiff's NYSHRL employment-discrimination claims are dismissed.

### B. Retaliation

As explained above, Plaintiff states retaliation claims against PPGNY under Title VII, the ADA, and Section 1981. Consequently, he also states a retaliation claim against PPGNY under the NYSHRL. *See, e.g.*, *Doyle v. Am. Glory Rest. Corp.*, No. 23-cv-07624 (PAE), 2024 WL 1466161, at *8 (S.D.N.Y. Apr. 4, 2024) (because plaintiff stated Title VII retaliation claim, plaintiff necessarily also stated NYSHRL retaliation claim).

As for the retaliation claims against the Individual Defendants, "[u]nder the NYSHRL, individual liability may be imposed if (1) a defendant has an ownership interest in the employer or, alternatively, has the authority to hire or terminate its employees; or (2) if a defendant aided and abetted the unlawful discriminatory acts of others." *Mitura*, 2024 WL 232323, at *11 (quotation marks and citation omitted). "An individual, however, must actually participate in the conduct giving rise to a discrimination claim." *Id.* (brackets,

quotation marks, and citation omitted).  As explained above with respect to Plaintiff's

retaliation claims under the NYCHRL, Plaintiff has not plausibly alleged that any of the

Individual Defendants except Hagan "actually participate[d]" in any cognizable acts of

retaliation against Plaintiff.  *Id.* (citation omitted).  Therefore, Plaintiff's NYSHRL retaliation

claims against the Individual Defendants other than Hagan are dismissed.

### C.  Harassment and Hostile Work Environment

Like employment-discrimination claims, harassment and hostile-work-environment

claims under Title VII and the NYSHRL previously were "governed by the same standard,"

*Summa v. Hofstra Univ.*, 708 F.3d 115, 123-24 (2d Cir. 2013), but the standard for NYSHRL

claims is now in flux following the 2019 amendments, *see Wheeler*, 694 F. Supp. 3d at 451.

Once again, the Court need not resolve the impact of the 2019 NYSHRL amendments because

(as explained above) even under the NYCHRL's more liberal standard, Plaintiff has failed to

state a claim for harassment or a hostile work environment.  Hence, Plaintiff's claims under

the NYSHRL for harassment and a hostile work environment are dismissed.

### V.   Leave to Amend

Plaintiff requests that the Court grant leave to amend if the Court dismisses some or all

of Plaintiff's claims.  *See* Opp. at 22.  The Court grants this request.

A court "should freely give leave" to amend a complaint "when justice so requires."

Fed. R. Civ. P. 15(a)(2).  "This permissive standard is consistent with [the Second Circuit's]

strong preference for resolving disputes on the merits."  *Williams v. Citigroup Inc.*, 659 F.3d

208, 212-13 (2d Cir. 2011) (per curiam) (quotation marks and citation omitted).  Of course, a

district court "may deny leave to amend for good reason, including futility, bad faith, undue

delay, or undue prejudice to the opposing party."  *Cohen v. Am. Airlines, Inc.*, 13 F.4th 240,

247 (2d Cir. 2021) (per curiam) (quotation marks and citation omitted).  While Plaintiff has

already amended his complaint twice, the Second Circuit is "particularly skeptical of denials of requests to amend when a plaintiff did not previously have a district court's ruling on a relevant issue" because "without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies." *Attestor Value Master Fund v. Republic of Argentina*, 940 F.3d 825, 833 (2d Cir. 2019) (per curiam) (brackets and citation omitted); *see Cresci v. Mohawk Valley Cmty. Coll.*, 693 F. App'x 21, 25 (2d Cir. 2017) (summary order) ("It is the [d]istrict [c]ourt's ruling, not the defendant's arguments in support of a motion to dismiss, that puts a plaintiff on notice of the complaint's deficiencies.").

The Court grants Plaintiff leave to amend within 28 days of the date of this opinion and order. The Court has no reason to conclude that Plaintiff has unduly delayed or acted in bad faith, that granting leave to amend would unduly prejudice Defendants, or that granting leave to amend would necessarily be futile. *See Cohen*, 13 F.4th at 247.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. Plaintiff may file an amended complaint within 28 days of this opinion and order. The stay of discovery currently in place (ECF No. 39) is LIFTED. Within seven days of this opinion and order, Plaintiff and Defendants must jointly submit a proposed case-

management plan.  The Clerk of Court is respectfully directed to terminate the motion at ECF

No. 41.

Dated:  August 16, 2024
        New York, New York

                                    SO ORDERED.

                                    _Jennifer Rochon_____
                                    JENNIFER L. ROCHON
                                    United States District Judge