UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SAMUEL RICARLOS MITCHELL, JR.,

                Plaintiff,

-against-

PLANNED PARENTHOOD OF GREATER NEW
YORK, INC., WENDY STARK, ANDREA
HAGAN, GILLIAN DEAN, KEITH CORSO, and
ANNE DAVIS,

                Defendants.

Case No. 1:23-cv-01932 (JLR)

**OPINION AND ORDER**

---

JENNIFER L. ROCHON, United States District Judge:

Samuel Ricarlos Mitchell, Jr. ("Plaintiff") brings this action against Wendy Stark ("Stark"), Andrea Hagan ("Hagan"), Gillian Dean ("Dean"), Keith Corso ("Corso") (collectively, the "Individual Defendants"), and Planned Parenthood of Greater New York, Inc. ("PPGNY") (together with the Individual Defendants, "Defendants"). Dkt. 49 ("TAC"). Plaintiff, PPGNY's former Chief Operating Officer, asserts claims arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981, the Age Discrimination in Employment Act (ADEA) of 1967, 29 U.S.C. § 621 *et seq.*, the Americans with Disabilities Act (ADA) of 1990, 42 U.S.C. § 12101 *et seq.*, the New York State Human Rights Law (NYSHRL), N.Y. Exec. Law § 290 *et seq.*, and the New York City Human Rights Law (NYCHRL), N.Y.C. Admin. Code § 8-101 *et seq.* The Court previously granted in part and denied in part Defendants' motion to dismiss the Second Amended Complaint for failure to state a claim, but granted Plaintiff leave to amend. *See generally Mitchell v. Planned Parenthood of Greater N.Y.*, 745 F. Supp. 3d 68 (S.D.N.Y. 2024) (*Mitchell I*). Defendants

now move to dismiss the Third Amended Complaint for failure to state a claim. Dkt. 50.[1]  For

the reasons set forth below, Defendants' motion is granted in part and denied in part.

## BACKGROUND[2]

### I.  Procedural History

On March 7, 2023, Plaintiff filed this suit against Defendants, asserting claims for

race, age, gender, sex, and disability discrimination and retaliation under section 1981, the

NYCHRL, and NYSHRL, "age, race, gender/sex, and disability harassment" under the

NYCHRL and NYSHRL, and a hostile work environment claim under the NYSHRL and

NYCHRL.  *See generally* Dkt. 1 ("Compl.").  On March 13, 2023, Plaintiff filed a charge

with the U.S. Equal Employment Opportunity Commission ("EEOC").  Dkt. 41-5 at 2-3, 22.

Before any Defendant responded to the Complaint, Plaintiff filed a First Amended Complaint

on April 11, 2023.  Dkt. 14 ("FAC").  After Defendants moved to dismiss the FAC and the

parties fully briefed the motion, Dkts. 18 to 20, Plaintiff received a right-to-sue letter from the

EEOC on July 28, 2023, TAC ¶ 6.  On August 8, 2023, Plaintiff sought leave to amend again,

Dkt. 27, which Defendants did not oppose, Dkt. 31.  The Court granted the request, mooting

---

[1] Defendants erroneously move to dismiss the TAC under Federal Rule of Civil Procedure
("Rule") 12(b)(1), rather than Rule 12(b)(6), *see* Dkt. 50 at 1, but their other motion papers
cite Rule 12(b)(6), *see, e.g.*, Dkt. 50-1 ¶ 2; Dkt. 50-7 at 2; Dkt. 57 at 10.  "[W]here a motion is
brought under Federal Rule of Civil Procedure 12(b)(1) in error, a court 'may "construe the
motion as one to dismiss under 12(b)(6) . . . ."'"  *Cox v. DOJ*, 504 F. Supp. 3d 119, 144
(E.D.N.Y. 2020) (quoting *Basile v. Levittown United Tchrs.*, 17 F. Supp. 3d 195, 206
(E.D.N.Y. 2014)), *aff'd*, 111 F.4th 198 (2d Cir. 2024); *see also McLearn v. Cowen & Co.*, 660
F.2d 845, 849 (2d Cir. 1981) ("The failure of plaintiff's counsel to refer to the proper rule
number does not prevent [the Court] from granting the relief that plaintiff in substance asked
for, especially where defendants had notice of and argued against that relief.").  Therefore, the
Court will treat Defendants' motion as one under Rule 12(b)(6), rather than Rule 12(b)(1).

[2] Unless otherwise noted, the facts stated herein are taken from the TAC and are accepted as
true for purposes of this motion.  *See Empire Merchs., LLC v. Reliable Churchill LLLP*, 902
F.3d 132, 139 (2d Cir. 2018); *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56-57 (2d Cir.
2016).

the motion to dismiss, Dkt. 32, and Plaintiff filed the Second Amended Complaint on August 22, 2023, Dkt. 34 ("SAC").  The SAC principally added claims against PPGNY under Title VII, the ADEA, and the ADA.  *See id.*; Dkt. 27 at 1.  Defendants moved to dismiss the SAC on September 8, 2023.  Dkt. 35.  After briefing by the parties and supplemental briefing addressing the impact of the Supreme Court's decision in *Muldrow v. City of St. Louis*, 144 S. Ct. 967 (2024), *see* Dkts. 40, 42 to 45, the Court granted the motion in part and denied it in part, but granted Plaintiff leave to amend, *see Mitchell I*, 745 F. Supp. 3d at 81.

On September 13, 2024, Plaintiff filed the TAC.  *See generally* TAC.  Defendants moved to dismiss the TAC on September 27, 2024.  Dkt. 50; Dkt. 50-7 ("Br.").  Plaintiff filed his opposition on November 15, 2024, Dkt. 56 ("Opp."), and Defendants filed their reply on December 16, 2024, Dkt. 57 ("Reply").  The motion is thus fully briefed.

## II.  Factual Background

Plaintiff, a Black, African American, heterosexual man in his 40s, is an ordained pastor and suffers from a disabling neurological condition that causes him to stutter and stammer excessively and involuntarily in the face of stressful situations.  TAC ¶¶ 10-12, 41; *Mitchell I*, 745 F. Supp. 3d at 81-82.  On or about September 27, 2021, PPGNY hired Plaintiff as its interim Chief Operating Officer ("COO") and he was hired in a full-time role on or about February 23, 2022.  TAC ¶¶ 36, 112.  He was the only disabled, Christian, Black, African American, heterosexual man on PPGNY's executive leadership team.  TAC ¶ 41. Plaintiff's responsibilities included managing the "day-to-day operations of the entire affiliate," with 75 percent of the workforce, including "External Affairs/Comms/Marketing," reporting to his office.  TAC ¶¶ 43, 143.

At all relevant times, PPGNY employed Stark as its President and CEO; Hagan as the Board Treasurer; Dean as the Chief Medical Officer; Corso as the Chief Development Officer;

and Davis as the Associate Chief Medical Officer.  TAC ¶¶ 17-29.  Stark, Hagan, Dean, and

Davis are all white women, TAC ¶¶ 18, 20, 23, 29; Corso is a white, homosexual man, TAC

¶ 26.  Plaintiff alleges that each of these Individual Defendants held supervisory positions

within PPGNY and that they controlled tangible aspects of Plaintiff's job duties.  TAC ¶¶ 18-

30.  However, in another section of his TAC, he alleges that he "solely reported to the

President & CEO [Stark] and did not report to or answer to the Board."  TAC ¶ 87.

　　　According to Plaintiff, he had to complete several layers of background checks when

he joined PPGNY in September 2021 and was the "only employee who had to endure such

intrusive invasiveness."  TAC ¶ 50; *see also* TAC ¶¶ 47-53.  From September 27, 2021, to

October 14, 2021, Plaintiff was required to "respond to several questions daily defending his

background all stemming/originating from the Board."  TAC ¶¶ 54, 66.  Plaintiff also alleges

that at some unspecified point, several members of the PPGNY board, including Hagan, ran

unauthorized, unsolicited, and unconsented-to independent background checks on Plaintiff.

TAC ¶ 52.

　　　In or around October 2021, PPGNY and its board members, including Hagan,

discovered that Plaintiff is an ordained pastor.  TAC ¶ 67.  Almost immediately thereafter,

PPGNY board members made unidentified comments insinuating that Christians and pastors

were not welcome to work at PPGNY, "shunned" him, and gave him the cold shoulder.  TAC

¶¶ 68, 70-71.  PPGNY board members also "conspired to force" PPGNY's then-CEO, Joy

Calloway, to "interrogate Plaintiff's pastor" to obtain a statement about his church's stance on

abortion, allegedly to "paint Plaintiff and/or Plaintiff's church as 'pro-life' in a particularly

invasive attempt to terminate Plaintiff's employment."  TAC ¶ 72; *see* TAC ¶ 77.

　　　On October 14, 2021, Plaintiff formally complained to Calloway and a board member,

Leslie Lindenbaum, "about the offensive and illegal race, color, and gender discrimination as

well as the intimidating and humiliating, hostile work environment he was being subjected to by PPGNY executive board members, including specifically Hagan." TAC ¶ 77.  PPGNY did not take "any immediate or appropriate corrective action in response," nor did it reprimand any of the PPGNY employees or board members involved.  TAC ¶¶ 78-79.  According to Plaintiff, this inaction "emboldened" Hagan, Dean, and Davis, resulting in a "targeted campaign against Plaintiff in retaliation for his protected conduct."  TAC ¶¶ 80, 82.  For example, after Plaintiff's complaint, Hagan began "disproportionately and excessively monitoring and micromanaging Plaintiff."  TAC ¶ 84.

In November 2021, Corso mocked Plaintiff's southern drawl and difficulty pronouncing a white woman's name in front of several colleagues.  TAC ¶ 90.  This continued when Plaintiff met with Corso, who allegedly suggested that "Plaintiff was ill fit for his duties due to his disability" and that "Plaintiff had difficulty working with homosexuals due to what Corso called homosexual 'dramatics.'"  TAC ¶ 90.  The same month, Plaintiff complained to Calloway "about the hostile work environment to which he was being subjected as a result of Corso's discriminatory misconduct," but PPGNY did not take corrective action.  TAC ¶¶ 92-93.  Shortly thereafter, Corso confronted Plaintiff, stating, "What's wrong Samuel, have you never worked with gay men before?  We are very dramatic and it's clear you are not cut out for this job!"  TAC ¶ 95 (further capitalization and emphasis omitted).

In December 2021, Dean and Davis began making discriminatory comments based on Plaintiff's age, race, color, and gender, including referring to him with terms like "angry," "offensive," "out of control," "harsh," and "aggressive."  TAC ¶ 98.  They used these words with "Plaintiff's direct reports, to the Board, to Davis and Dean's direct reports, and in certain community settings."  TAC ¶ 103.  Plaintiff alleges the tone and context of the words were "always delivered in a condescending manner designed to 'other'" him and ensure he felt he

did not belong at PPGNY.  TAC ¶ 98.  In or around January 2022, Davis informed Plaintiff that his use of red text in emails was "aggressive."  TAC ¶ 99.  When Plaintiff explained that he used the red text to highlight or provide commentary on prior communications, Davis suggested blue or green as "more fitting."  TAC ¶¶ 100-101.  About a month later, Dean and Davis used red text in their communications, which Plaintiff "called out" as "discriminatory and hypocritical."  TAC ¶ 102.  Plaintiff alleges that Davis's and Dean's use of such "microaggressions" was part of "an aggressive and pervasive plot to cripple Plaintiff's character and credibility throughout the organization, especially with the Clinical/Medical teams."  TAC ¶ 103.

In February 2022, Dean called Merle McGee, PPGNY's Chief Equity and Engagement Officer and one of Plaintiff's direct reports, a "loud black woman."  TAC ¶ 105.  Plaintiff alleges that in so doing, Dean and Davis sought to "undermine Plaintiff's office and his black and brown employees who sought to hold them accountable for their discriminatory conduct." TAC ¶ 105.  On February 22, 2022, Plaintiff emailed Dean about complaints he had received "throughout the organization" about harm "done to black and brown women during the delivery of patient care."  TAC ¶ 111.  On March 3, 2022, Plaintiff also emailed Calloway and Lisa Williams, PPGNY's Chief of Staff, challenging certain medical practices of deep sedation for patients seeking abortions.  TAC ¶¶ 121-124.  On March 28, 2022, Plaintiff formally complained to Calloway and Williams about "the offensive and illegal race and gender discrimination he was being subjected to by Dean and Davis."  TAC ¶ 125.  PPGNY did not "take any immediate or corrective action in response" to Plaintiff's complaint, nor did PPGNY reprimand Dean or Davis.  TAC ¶ 126.

On April 22, 2022, Plaintiff emailed Calloway, Williams, and PPGNY's VP of Compliance, Lori Lahn, VP of Research & Evaluation, Lisa Colarossi, and General Counsel

and Chief Compliance Officer, Dawn McClary.  TAC ¶ 128.  Plaintiff characterizes this email

as "exemplif[ying] Dean's quest to dismantle the protections the organization had in place to

protect the interests of patients, who are predominantly black and brown women."  TAC

¶ 128.

In July 2022, Dean and Davis "deliberately and unreasonably refuted, debated, and

refused Plaintiff's plan to engage world-renowned African American thought leader Dr.

Ronald Wyatt," an "authority in creating frameworks, systems and workflows to protect black

and brown people from clinical and medical harm in healthcare settings," "as a consultant for

PPGNY."  TAC ¶ 131.  On July 20, 2022, "an email was sent" (the TAC does not specify by

whom) to Dean and several members of PPGNY's medical and operational leadership teams

that highlighted how Dean and Davis were "encouraging and inciting a rebellion amongst the

registered nursing staff against the Plaintiff's operational staff."  TAC ¶ 132.

Plaintiff "yet again formally complained" to PPGNY's VP of Human Resources, Toi

Eaton, in some unspecified month in 2022, about Dean and Davis's "race and age

discrimination" against Plaintiff.  TAC ¶ 133.  Plaintiff copied McClary, Lahn, Colarossi, and

Calloway on the email.  TAC ¶ 133.  PPGNY did not "take any immediate or appropriate

corrective action in response" to Plaintiff's complaint.  TAC ¶ 134.

At some point "[s]hortly following Plaintiff's complaint," PPGNY announced that

Rosalba Messina, a white woman who was then CFO, would assume the duties of PPGNY

interim CEO.  TAC ¶¶ 136, 146.  As COO, Plaintiff was second in command, and "under long

standing policy and custom he should have been elevated to the position of interim CEO."

TAC ¶ 137.  According to Plaintiff, he was "qualified for the position," TAC ¶ 139, and was

also "better qualified, more experienced, and . . . better positioned to succeed in the interim

CEO position" than Messina since he "already managed the day-to-day operations of the

entire affiliate, with 75% of the workforce reporting to his office," TAC ¶ 143.  Plaintiff

alleges that Messina's selection violated PPGNY's Recommendation for Promotion process,

TAC ¶ 143, and that there was "no vetting process" or "application to apply through," TAC

¶ 146.  He also alleges that Messina told him that PPGNY board members had "reached out to

her directly to offer her the Acting CEO role," which "confirm[ed] . . . it was not a posted role

and that the Plaintiff could [not] apply for the promotion."  TAC ¶ 140 (emphasis omitted).

On August 15, 2022, McClary emailed Williams, Corso, Dean, Plaintiff, and Messina

a compilation of emails submitted to her office from unidentified PPGNY employees.  TAC

¶ 145.  The emails discussed PPGNY staff's "frustration with the Board of Directors for their

selection of both the permanent and Acting CEO appointments," including disappointment

with the "broken promise of having a black woman as permanent CEO," "fatigue[]" with "a

third CEO in 1.8 years," that "equitable processes were not followed or transparent," and that

the PPGNY board "encourages systemic racism and bigotry."  TAC ¶ 145.

Plaintiff next takes issue with PPGNY's remote-work policy and practices.  At some

point during Plaintiff's employment, PPGNY adopted a policy under which the COO was

entitled to work remotely 40 percent of the time.  TAC ¶ 147.  Despite the policy, Plaintiff

was required to work 100 percent of the time in the office.  TAC ¶ 63.  Messina was permitted

to work remotely 95 percent of the time as both CFO and interim CEO.  TAC ¶ 147.  PPGNY

further elected to forgo a residency requirement that would have required Messina to relocate

from Connecticut to New York City.  TAC ¶ 149.  In contrast, PPGNY required Plaintiff to

have a New York City residence, even though he had a home in Florida.  TAC ¶ 150.

Plaintiff alleges he and Messina were "similarly situated" because they were "chief-level

executives with the same reporting lines" and "headcount responsibilities."  TAC ¶ 147.

PPGNY also allowed Zoee Davidson (a white female resident of Illinois) and Virginia Morin

(a white female resident of Utah), who had "critical supervisory jobs in Human Resources and the Equity & Learning Departments requiring them to be onsite," to work remotely 100 percent of the time without changing their residencies to New York.  TAC ¶¶ 148, 150.

On September 14, 2022, while attending an executive-level meeting for the Planned Parenthood Clinical Health Network for Transformation ("CHN"), Hagan "singled out and ridiculed Plaintiff with an onslaught of disparaging comments" in front of Karen Seltzer, chair of PPGNY's board.  TAC ¶ 152.  During this meeting, Hagan also approached Franklin Rosado, CHN's Chief Information Officer, and accused Plaintiff of "not being a good partner to CHN."  TAC ¶ 154.  Hagan encouraged Rosado to "report out in front of the entire membership."  TAC ¶ 154.  Plaintiff immediately complained about Hagan's comments. TAC ¶ 159.

In September 2022, during an executive-committee meeting, a white woman holding a position at a lower level than Plaintiff presented a report authored by Plaintiff that he was "meant to present . . . but was unable to do so due to the effects of [his] disabling condition." TAC ¶ 162.  Seltzer and unnamed "executive board committee members" told the CFO that the subordinate employee was "a much better communicator" than Plaintiff, TAC ¶ 163, which Plaintiff understood to be a "direct, discriminatory reference to the symptoms of Plaintiff's disabling condition," TAC ¶ 164.

On September 15, 2022, Plaintiff formally complained to McClary, Lahn, and Eaton about experiencing racial discrimination on the executive leadership team and being subjected by Hagan to a hostile work environment.  TAC ¶ 165.  The email also discussed concerns Plaintiff had about Hagan's "commingled Board Management obligations to both PPGNY and CHN, to whom she has both donated substantial amounts of monies to."  TAC ¶ 165.  PPGNY did not "take any immediate or appropriate corrective action in response" to Plaintiff's

complaint or reprimand Hagan. TAC ¶ 168. When Plaintiff inquired about his complaint, McClary allegedly told Plaintiff that the board told her and Lahn not to investigate it. TAC ¶ 167.

On September 21, 2022, during a full executive board meeting, a white, male board member suggested that Plaintiff refrain from replacing or backfilling three critical operational positions until Stark, the "new permanent white, Caucasian, female hire assumed the role of CEO." TAC ¶ 173. The hiring delay "negatively impacted Plaintiff's ability to do his job." TAC ¶ 174.

On September 30, 2022, an email was sent to McClary and Eaton discussing Hagan's practices of "shunning and utterly disrespecting the Plaintiff in audiences of other white Board Members, including the Plaintiff's peer." TAC ¶ 178. The TAC does not identify who sent the email. TAC ¶ 178. The complaint "landed on deaf ears." TAC ¶ 178.

In October 2022, Plaintiff complained by email to McClary and Eaton, highlighting a verbal complaint Plaintiff had made earlier in the year about Dean's and Davis's request that he stop using red in emails, despite Dean's own use of red text in emails. TAC ¶ 169. Plaintiff also complained that Dean had commented "it's so nice to work with you not being so upset, angry, or having the feeling of being slapped down," which Plaintiff found to be "extremely offensive." TAC ¶ 170.

In November 2022, Williams and Lori Trzop (PPGNY's Senior Vice President of Health Center Operations) accompanied Stark on a tour of PPGNY health centers. TAC ¶ 180. During the tour, Williams told Trzop — in front of Stark — that Messina was "a bitch." TAC ¶ 181. "[N]othing was done" in response to the comment, "signaling that women at PPGNY could do and say anything without recourse or correction." TAC ¶ 181.

Plaintiff also notes that Stark let Williams wear a shirt saying "Woman [*sic*] Run Shit" while at work.  TAC ¶ 191 (emphasis and further capitalization omitted).

During a December 2022 meeting of the executive leadership team, Stark "rudely, condescendingly and with utter disdain, chastised Plaintiff by responding to a point he raised as follows: 'Samuel, I don't care and I don't agree with you!'"  TAC ¶ 184 (capitalization omitted).  Plaintiff alleges the tone used, as well as the fact that the remark was "made in front of a large audience of executives," "demeaned and diminished [Plaintiff] in front of his peers."  TAC ¶ 184.  Stark repeated the statement multiple times in the presence of Corso, Dean, Messina, Williams, and two others.  TAC ¶ 185.  Stark also challenged Plaintiff's questioning of certain operational deficiencies, though she agreed with Corso's criticism about other operational issues.  TAC ¶¶ 187.

On February 27, 2023, Andy Herz (a white, male PPGNY board member) asked a Black female PPGNY employee who wore her hair in twists: "Hey Dawn, how do you get your hair all on one side, I can't do that?"  TAC ¶ 193.  Plaintiff witnessed the interaction, which "emotionally sickened" him, and he filed a complaint about it.  TAC ¶ 194.  The complaint was "ignored and not remedied."  TAC ¶ 194.

On March 7, 2023, Plaintiff commenced the instant action, asserting claims under section 1981 for discrimination and retaliation, and under the NYCHRL and NYSHRL for discrimination, harassment, retaliation, and hostile work environment based on age, race, gender, sex, and disability.  *See generally* Compl.  The Complaint stated that Plaintiff was "[s]imultaneous[ly]" filing a charge with the EEOC and that he intended to amend the Complaint to add Title VII, ADA, and ADEA claims once "given a right to sue."  Compl. ¶ 5. In response, "PPGNY's retaliatory and discriminatory misconduct intensified dramatically." TAC ¶ 197.  Plaintiff was "subjected to a campaign of discrimination," including "rampant

incivility," "being excommunicated from key operational and fiscal stakeholder meetings," "having several key responsibilities transitioned to female PPGNY employees," "recording of meeting without Plaintiff's knowledge or consent," and unspecified Defendants "meeting with Plaintiff's direct reports without his consent."  TAC ¶ 197.

On March 16, 2023, an email was sent to Stark and others complaining about Dean's disregard for Plaintiff's office, work, and decisions, her intent to "sabotag[e] Plaintiff's work," and attempts "to pit Plaintiff's direct reports against Plaintiff by sowing seeds of discord and discourse."  TAC ¶ 198.  The TAC does not identify who sent this email. TAC ¶ 198.  Plaintiff further alleges that he had not been "welcomed to any budgetary conversations pertinent to the organization with Stark and Messina" and had been excluded from Messina and McClary's work crafting a new vendor/workflow process, which fell into a division reportable to the COO.  TAC ¶ 202.

On the morning of March 23, 2023, two of Plaintiff's "newest team members," Christopher Castro-Gonzalez and Melissa Dorado, informed Plaintiff that they "had also been victim to and experienced environmental hostilities, acts of discrimination, and witnessed outward expressions of not wanting to participate in equity commitment[] by Dean."  TAC ¶¶ 199, 203.  On March 28, 2023, Plaintiff sent an email forwarding a complaint on behalf of two "new members" of the PPGNY Human Resources team.  TAC ¶ 200.  About six hours later, PPGNY terminated Plaintiff's employment.  TAC ¶ 204.

## LEGAL STANDARD

Under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021) (en banc) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The court draws all reasonable inferences in the plaintiff's favor and accepts as true

all nonconclusory allegations of fact. *Id.* However, a complaint must allege "more than a sheer possibility that a defendant has acted unlawfully" and more than "facts that are 'merely consistent with' a defendant's liability." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 557 (2007)). Determining whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## DISCUSSION

## I. Title VII, ADEA, and ADA Claims (Counts VI, VII, VIII, IX, X, and XI)

The Court begins with Plaintiff's claims against PPGNY for (1) discrimination under Title VII (race, color, sex, and religion), the ADEA (age), and the ADA (disability) (Counts VI, VIII, and XI); (2) retaliation under Title VII and the ADA (Counts VII and IX); and (3) hostile work environment under the ADA (Count X).

### A. Timeliness of Claims

Defendants argue that Plaintiff's Title VII, ADEA, and ADA discrimination and retaliation claims are time barred to the extent they are premised on discrete acts that took place before May 17, 2022 — that is, more than 300 days before Plaintiff filed his EEOC complaint. Br. at 6-7. The Court agrees.

Plaintiffs "must first pursue available administrative remedies and file a timely complaint with the EEOC" as a precondition to filing a Title VII, ADEA, or ADA discrimination claim in federal court. *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) (citation omitted); *see Mitchell I*, 745 F. Supp. 3d at 87 (collecting cases). A plaintiff "must file a charge with the EEOC 'within 180 [days] or, in states like New York that have local administrative mechanisms for pursuing discrimination claims, 300 days "after the alleged unlawful employment practice occurred."'" *King v. Aramark Servs., Inc.*, 96 F.4th

546, 559 (2d Cir. 2024) (alteration in original) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78-79 (2d Cir. 2015)). "This statutory requirement 'operate[s] as a statute of limitations.'" *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 259 (2d Cir. 2023) (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982)). "Because a discrete discriminatory act is individually actionable and 'occurs' on the day that it 'happened,' the 300-day limitations period begins running on the day of each occurrence, meaning each discrete act claim carries its own 300-day limitations period." *King*, 96 F.4th at 559 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002)). "Claims concerning discrete acts outside this window will be time barred," *Buon v. Spindler*, 65 F.4th 64, 77 (2d Cir. 2023), but untimely events may be used "as background evidence in support of a timely claim," *Morgan*, 536 U.S. at 113.

The Court discussed this issue at length in *Mitchell I*, *see* 745 F. Supp. 3d at 87-89, and Plaintiff has not identified any reason, nor pleaded any additional facts, that would justify the Court departing from its earlier conclusion that many of Plaintiff's claims are untimely. Plaintiff filed his EEOC complaint on March 13, 2023.  TAC ¶ 5.  May 17, 2022 was 300 days before that date.  As the Court previously explained, insofar as "Plaintiff's Title VII, ADEA, and ADA discrimination and retaliation claims are premised on discrete acts that took place before May 17, 2022, those claims are time-barred." *Mitchell I*, 745 F. Supp. 3d at 88. The Court may consider allegations about conduct before the limitations period as background information and in resolving the hostile work environment claim.  *See id.* at 87-88.  Plaintiff, as he did in opposition to the prior motion to dismiss, points out that the filing deadlines in Title VII, ADEA, and ADA cases are "not jurisdictional and may be tolled in certain situations including 'when equity so requires.'"  Opp. at 8 (quoting *Zipes*, 455 U.S. at 398). But Plaintiff still has not explained "why the Court should equitably toll the filing deadlines,"

and the Court still "perceives no basis to do so in this case." *Mitchell I*, 745 F. Supp. 3d at 88. Similarly, Plaintiff's invocation of the continuing-violation doctrine for his retaliation and discrimination claims remains meritless. *See* Opp. at 8-12; *Mitchell I*, 745 F. Supp. 3d at 88-89. "Plaintiff's Title VII, ADEA, and ADA claims for discrimination and retaliation 'allege[] discrete actions — separate instances of alleged unlawful conduct, occurring at different times and under different circumstances, without a non-conclusory factual connection — rather than a common policy under which all the actions were carried out." *Mitchell I*, 745 F. Supp. 3d at 89 (quoting *Jackson v. New York State*, 523 F. App'x 67, 69 (2d Cir. 2013) (summary order)). Thus, Plaintiff's discrimination and retaliation claims based on actions prior to May 17, 2022, are time barred.

### B. Discrimination Claims (Counts VI, VIII, and XI)

The Court will next address Plaintiff's timely discrimination claims against PPGNY under Title VII, the ADEA, and the ADA. For a claim of discrimination under Title VII to survive a motion to dismiss "absent direct evidence of discrimination," Plaintiff must plead that he "(1) is a member of a protected class, (2) was qualified, (3) suffered an adverse employment action, and (4) has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Buon*, 65 F.4th at 79 (alteration adopted) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)). "The same requirements apply for claims under the ADEA and the ADA except that under the fourth prong, the plaintiff's age or disability must be a but-for cause (rather than a motivating cause) of the plaintiff's injury." *Mitchell I*, 745 F. Supp. 3d at 89 (collecting cases). The parties dispute whether Plaintiff has plausibly alleged each element of his discrimination claims.

### 1. Membership in a Protected Class

Defendants briefly argue that Plaintiff "fails to plausibly allege membership in [a] protected class," Br. at 8 (initial capitalization omitted), since he did not allege that Defendants had knowledge of his sexual orientation or disability, *id.* at 9. The Court is not convinced: Plaintiff has alleged that he is a member of protected classes based on his race and color (African American, Black), sex (heterosexual man), religion (Christian), age (over 40), and disability. TAC ¶¶ 10, 13, 41. Defendants do not cite any case suggesting that to plead membership in a protected class, Plaintiff also had to plead that Defendants knew of his membership in that class. This may be relevant to other elements of Plaintiff's discrimination claim (such as intent), but is not relevant here. *See Mitchell I*, 745 F. Supp. 3d at 89 (Plaintiff adequately pleaded he was a member of protected classes based on identical allegations); *cf. Ibekweh v. Ascend Learning, Inc.*, No. 22-cv-01587 (EK) (SJB), 2023 WL 6292526, at *6 (E.D.N.Y. Sept. 27, 2023) (plaintiff failed to plead membership in a protected class based on race where he "referr[ed] to racial bias," but did "not specify his race").

### 2. Qualification

Defendants do not argue Plaintiff was unqualified for his position as COO. Instead, focusing on Plaintiff's claim that he was discriminated against based on race and gender when PPGNY appointed Messina interim CEO instead of him, Defendants briefly contend that Plaintiff has not adequately alleged that he was qualified for the interim CEO position. Br. at 9. The Court agrees with Defendants. "To satisfy the second element required to plead a discrimination claim under [Title VII, the ADA, and] the ADEA, a 'plaintiff must show only that he possesse[d] the basic skills necessary for the performance of [the] job,'" *Zoulas v. N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 53 (S.D.N.Y. 2019) (third alteration in original) (quoting *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 92 (2d Cir. 2001)), that is, that

he satisfied "the criteria the employer has specified for the position," *Brown v. S. Shore Univ. Hosp.*, 762 F. Supp. 3d 191, 207 (E.D.N.Y. 2025) (quoting *Scé v. City of New York*, No. 20-3954, 2022 WL 598974, at *1 (2d Cir. Mar. 1, 2022) (summary order)).  Plaintiff has conclusorily alleged that he was qualified for the interim CEO role, *see* TAC ¶ 139, but has not made any allegations about what skills were required for the interim CEO position. Instead, he asserts that he was "better qualified, more experienced, and was better positioned to succeed in the interim CEO position" than Messina "as he already managed the day-to-day operations of the entire affiliate, with 75% of the workforce reporting to his office."  TAC ¶ 143; *see also* Opp. at 1, 6.  While this provides insight into Plaintiff's role as COO, it fails to adequately allege that Plaintiff was qualified for the interim CEO position.  *See DiResta v. Biz2Credit Inc.*, No. 21-cv-00208 (LJL), 2021 WL 6052104, at *4 (S.D.N.Y. Dec. 20, 2021) (plaintiff failed to plead he was qualified for his position when he did "not provide any information about what the position . . . required or about [his] skills that made him qualified to perform that job").  The TAC thus fails to state a discrimination claim based on PPGNY's failure to promote Plaintiff to interim CEO.  However, even if the Court assumed Plaintiff has adequately pleaded that he was qualified to be interim CEO, he would still fail to state a discrimination claim based on this incident because he has not alleged facts that support an inference of discriminatory intent, as discussed below.

### 3.  Adverse Employment Action

Defendants argue that Plaintiff's timely Title VII, ADEA, and ADA discrimination claims should be dismissed because Plaintiff has not alleged an adverse employment action. Br. at 9-11.  The Court disagrees.

To allege an adverse employment action, a plaintiff "must show some harm respecting an identifiable term or condition of employment," but does not have to show that "the harm

incurred was 'significant.'" *Mitchell I*, 745 F. Supp. 3d at 90 (quoting *Muldrow v. City of St. Louis*, 144 S. Ct. 967, 974 (2024)).  The Court previously held that Plaintiff had satisfactorily "alleged multiple adverse employment actions during the filing period (that is, on or after May 17, 2022), including Plaintiff's loss of job responsibilities during March 2023 and Plaintiff's termination on March 28, 2023." *Id.* at 91.  Plaintiff makes the same allegations in the TAC.

Instead of engaging with the Court's reasoning in *Mitchell I*, Defendants argue (1) that the choice of Messina for interim CEO was not an adverse employment action because Plaintiff never applied to the interim CEO role and (2) that Plaintiff's termination was not an adverse employment action because PPGNY terminated him for nondiscriminatory reasons. Br. at 10-11.  The Court is unpersuaded.  Defendants' arguments address causation, not whether termination or a failure to promote amounts to an adverse employment action — which they plainly do.  *See Mormol v. Costco Wholesale Corp.*, 364 F.3d 54, 57 (2d Cir. 2004) (observing that adverse employment actions include "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits" (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)));  *Vega*, 801 F.3d at 85 (similar).  Moreover, Defendants' second argument relies on material outside the TAC, *see* Br. at 10-11 (citing SAC ¶ 160), and asks the Court to draw inferences in Defendants' favor on a motion to dismiss, *see id.*, which the Court may not do.  *See Francis*, 992 F.3d at 72 ("In assessing the complaint, [the court] 'accept[s] all factual allegations as true, and draw[s] all reasonable inferences in the plaintiff's favor.'" (quoting *Austin v. Town of Farmington*, 826 F.3d 622, 625 (2d Cir. 2016)));  *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559-60 (2d Cir. 2016) (vacating and remanding because the district court considered sources extrinsic to the complaint in resolving a motion to dismiss).  Plaintiff has satisfactorily alleged multiple adverse employment actions, as set out in *Mitchell I*.  *See* 745 F. Supp. 3d at 90-91.

### 4.  *Discriminatory Intent*

However, Plaintiff's discrimination claims against PPGNY under Title VII, the
ADEA, and the ADA fail because the TAC still does not plead sufficient facts to provide "at
least minimal support for the proposition that the employer was motivated by discriminatory
intent" based on his race, color, sex, religion, or disability.  *Buon*, 65 F.4th at 79 (quoting
*Littlejohn*, 759 F.3d at 311).

As an initial matter, the TAC repeats many of the allegations that the Court found
insufficient to support a proposition that PPGNY was motivated by discriminatory intent in
*Mitchell I*, namely, the fact that Plaintiff was the first Black, African American man on
PPGNY's executive leadership team and generalized conclusory allegations that he suffered
discrimination based on his race, color, disability, religion, and gender.  *See* TAC ¶¶ 40, 45;
*Mitchell I*, 745 F. Supp. 3d at 92 (rejecting argument that these allegations supported an
inference of discrimination).  These allegations do not support an inference of discrimination
for the same reasons set forth in *Mitchell I*.  *See* 745 F. Supp. 3d at 92.

Next, Mitchell points to allegations in the TAC that PPGNY employees who lacked
some or all of his protected traits were treated more favorably.  *See* Opp. at 3-5, 15.  "A
plaintiff may demonstrate circumstances giving rise to an inference of discrimination by
alleging that he was treated less favorably than similarly situated employees . . . ."  *Brown v.
Daikin Am. Inc.*, 756 F.3d 219, 229 (2d Cir. 2014).  "An employee is similarly situated to co-
employees if they were (1) subject to the same performance evaluation and discipline
standards and (2) engaged in comparable conduct."  *Ruiz v. County of Rockland*, 609 F.3d
486, 493-94 (2d Cir. 2010) (internal quotation marks omitted).  Plaintiff alleges that
Defendants (1) required Plaintiff to work in the office 100 percent of the time while other
executives were permitted to work remotely, (2) required him to maintain a New York

residence while permitting other executives to reside elsewhere, and (3) passed him over for promotion to interim CEO in favor of a white woman. Opp. at 3-6. The Court previously found that similar allegations in the SAC did not support an inference of discrimination because Plaintiff had alleged insufficient detail about potential comparators and had not pleaded that he applied for the interim CEO position. *See Mitchell I*, 745 F. Supp. 3d at 92-94. Plaintiff has now added more details in the TAC, but he still falls short of stating a claim.

Plaintiff's first claim, that PPGNY let other executive-level employes work remotely while requiring Plaintiff to always work in person, does not support an inference of discrimination. Plaintiff alleges that Messina, a white, lesbian, Jewish woman who was the CFO and interim CEO, was permitted to work remotely 95 percent of the time, despite being "similarly situated" to Plaintiff as a "chief-level executive[] with the same reporting lines" and "headcount responsibilities." TAC ¶ 147. Plaintiff alleges that none of the other executive-level employees were Black men and that they were permitted to work remotely 40 to 100 percent of the time. *Id.* ¶ 63. Except for Messina, Plaintiff has not alleged any facts about these executive-level employees "other than their race and gender, thus preventing the Court from assessing whether they were similarly situated to Plaintiff." *Mitchell I*, 745 F. Supp. 3d at 93 (citing *Littlejohn*, 795 F.3d at 312). And Plaintiff's allegations about Messina, while slightly more robust, do not support an inference of discrimination. Plaintiff has not alleged any information about Messina's job duties as CFO or interim CEO, other than the fact that as CFO she had the same "headcount responsibilities" as Plaintiff, that would permit the Court to assess whether Plaintiff and Messina "engaged in comparable conduct." *Ruiz*, 609 F.3d at 494; *see, e.g.*, *Eng. v. City of New York*, 715 F. App'x 49, 52 (2d Cir. 2017) (summary order) (plaintiff failed to allege similarly situated comparators where he failed to "provide[] factual allegations about her or the comparators' job duties, skills, efforts, or responsibilities to

demonstrate that their respective jobs were substantially equal"); *Lopez v. Advantage Plumbing & Mech. Corp.*, No. 15-cv-04507 (AJN), 2016 WL 3950087, at *2 (S.D.N.Y. July 19, 2016) (allegation that proposed comparators were "similarly situated" did not support discrimination claim where plaintiffs did "not even allege that [they] and [their] co-coworker[s] had similar job descriptions or responsibilities" (alterations in original) (internal quotation marks omitted)); *Wegmann v. Young Adult Inst.*, No. 15-cv-03815 (KPF), 2016 WL 827780, at *10 (S.D.N.Y. Mar. 2, 2016) (allegations did not support claim that plaintiff and male comparators were similarly situated where plaintiff alleged only that "she and each of the male participants were at some time, for some period, some sort of 'management' employee"). Indeed, Plaintiff's other allegations suggest that he and Messina were not similarly situated for purposes of remote work, since his role was an operational role that involved managing the day-to-day operations of the affiliate (unlike Messina's financial and later interim CEO role). TAC ¶ 143; *cf. Moss v. Bd. of Educ. of Sachem Cent. Sch. Dist.*, No. 24-2096, 2025 WL 946417, at *1 (2d Cir. Mar. 28, 2025) (summary order) (plaintiff failed "to plausibly allege that his comparators were similarly situated in all material respects" where he alleged he had different prior experience than his differently treated coworkers (internal quotation marks omitted)). Thus, these allegations fail to give "at least minimal support for the proposition that [Defendants were] motivated by discriminatory intent." *Buon*, 65 F.4th at 79 (citation omitted).

Next, Plaintiff again alleges that Messina, Davidson, and Morin (all white women) were permitted to work remotely without changing their residencies to New York. TAC ¶¶ 147-150. As discussed above, the TAC's allegations about Messina's roles at PPGNY do not demonstrate that she is a suitable comparator and so do not support an inference of discrimination as to this incident either. The Court also previously found that Plaintiff's

allegations about Davidson and Morin did not support an inference of discrimination because

he did not plead anything about them except their race and gender.  *See Mitchell I*, 745 F.

Supp. 3d at 93-94.  Plaintiff amended the TAC to include an additional detail that Davidson

and Morin "both had critical supervisory jobs in Human Resources and the Equity & Learning

Departments requiring them to be onsite."  TAC ¶ 148.  This new allegation does not explain

how Plaintiff, the COO who was in charge of operations throughout the affiliate, was

similarly situated to these employees, both "of whom held different titles, . . . worked in

different departments, or had different levels of seniority than" Plaintiff.  *Bramble v. Moody's

Corp.*, No. 23-506, 2024 WL 705955, at *3 (2d Cir. Feb. 21, 2024) (summary order).  Since

"adverse actions taken against employees who are not similarly situated cannot establish an

inference of discrimination," *Littlejohn*, 795 F.3d at 312, these allegations do not support an

inference of discrimination.

Next, Plaintiff alleges that he should have been selected as interim CEO in August

2022, rather than Messina, a white woman.  TAC ¶¶ 136-137, 139.  The Court previously

dismissed this claim because Plaintiff did not allege he applied for the interim CEO role, a

prerequisite for a failure-to-promote claim.  *See Mitchell I*, 745 F. Supp. 3d at 94.  Plaintiff

now alleges that Messina's selection violated PPGNY's Recommendation for Promotion

process, TAC ¶ 143, and that board members reached out to Messina directly to offer her the

interim CEO position, indicating it was "not a posted role and that the Plaintiff could [not]

apply for the promotion," *id.* ¶ 140 (emphasis omitted).  He argues this "word-of-mouth hiring

establishes a reasonable inference of discrimination" and that he did not have to plead he

applied for the interim CEO role because PPGNY did not post the role or give Plaintiff an

opportunity to apply.  Opp. at 12-13.  The requirement that a plaintiff apply for a promotion to

state a failure-to-promote claim can be excused if the employee alleges that "(1) the vacancy

22

at issue was not posted, and (2) the employee either had (a) no knowledge of the vacancy before it was filled or (b) attempted to apply for it through informal procedures endorsed by the employer." *Jimenez v. City of New York*, 605 F. Supp. 2d 485, 497 (S.D.N.Y. 2009) (quoting *Petrosino v. Bell Atl.*, 385 F.3d 210, 227 (2d Cir. 2004)).  Plaintiff has not alleged that he either did not know about the interim CEO vacancy before it was filled or attempted to apply for it through informal procedures.  As such, the fact that Plaintiff did not apply to the interim CEO role still defeats any potential inference of discriminatory intent.  *See Mitchell I*, 745 F. Supp. 3d at 93 (collecting cases).

The final category of allegations involves statements by people affiliated with PPGNY that, in Plaintiff's view, support an inference of discriminatory intent.  The Court previously found that these allegations did not support a plausible discrimination claim because Plaintiff had not alleged "sufficient contextual information to support a plausible inference" that these comments were motivated by his membership in a protected class.  *See Mitchell I*, 745 F. Supp. 3d at 94.  In the TAC, Plaintiff repeats his allegations that Dean and Davis began subjecting him to discriminatory comments based on his race, age, color, and gender like "angry," "offensive," "out of control," "harsh," and "aggressive," TAC ¶ 98, and attempts to cure his earlier pleading deficiencies by alleging that the "tone and context of these words were always delivered in a condescending manner," *id.*; *see Mitchell I*, 745 F. Supp. 3d at 94 (explaining SAC's allegations did not "provide sufficient contextual information to support a plausible inference that the facially race-neutral terms used by Dean and Davis were in fact racially motivated").  Plaintiff now alleges that "Davis and Dean's usage of microaggressions towards the Plaintiff was an aggressive and pervasive plot to cripple Plaintiff's character and credibility throughout the organization, especially with the Clinical/Medical teams," and that Dean and Davis used these words with "Plaintiff's direct reports, to the Board, to Davis and

Dean's direct reports, and in certain community settings." TAC ¶ 103. Plaintiff's additional conclusory allegations still do not support a plausible inference of discriminatory intent. Plaintiff does not sufficiently allege the context in which the facially neutral remarks were made, that they were made in connection with any adverse employment action, or that they were made by someone with the power to fire Plaintiff or assign him work. "Without more, [Plaintiff's] subjective interpretation of [his] co-workers' use of these critical but facially non-discriminatory terms does not, itself, reveal discriminatory animus." *Humphries v. City Univ. of N.Y.*, No. 13-cv-02641 (PAE), 2013 WL 6196561, at *9 (S.D.N.Y. Nov. 26, 2013).

Plaintiff has supplemented his allegations about an incident in January 2022 when Dean and Davis told Plaintiff that his use of red text via email was "aggressive" and advised him to use blue or green text instead. TAC ¶¶ 99-102. The Court previously explained that these comments by someone who also used red text were at most hypocritical but did not support an inference of discriminatory intent, particularly since Davis did not have the authority to fire Plaintiff and there was a long gap between the comment and the timely adverse employment actions. *See Mitchell I*, 745 F. Supp. 3d at 94-95. Plaintiff's new allegations — elaborating on an email he sent Dean and Davis calling out their "discriminatory and hypocritical use of 'aggressive' red text" because they "found it appropriate for use as white women, but not for Mr. Mitchell as a black male," TAC ¶ 102 — do nothing to cure these deficiencies.

As in *Mitchell I*, the remaining comments Plaintiff identifies do not support an inference of discriminatory intent. The new allegation that Merle McGee, who Dean called a "loud black woman" in February 2022, "reported directly to the Plaintiff," TAC ¶ 105, does not provide the missing connection to "Plaintiff's termination in March 2023 or any other adverse employment action by PPGNY during the filing period," *Mitchell I*, 745 F. Supp. 3d

at 95.  Plaintiff has not elaborated on his allegations about Hagan's comments in the
September 14, 2022 CHN meeting; as such,  "Plaintiff [has] not plausibly connect[ed]
Hagan's comments to Plaintiff's race, color, sex, religion, age, or disability," nor "any adverse
employment actions taken by PPGNY" for the same reasons explained in *Mitchell I.  Id.* at
95-96.  Finally, Plaintiff has not pleaded any additional facts about Herz's comment to a
Black female PPGNY employee about her hair on February 27, 2023, *see* TAC ¶¶ 193-194,
except to allege he complained about the act afterwards, *id.* ¶ 194.  This does not overcome
the deficiencies identified in *Mitchell I*, namely that Plaintiff has not "plausibly allege[d] that
[the comment] 'reflected discriminatory intent,' let alone that it 'played a motivating factor in
[any] adverse employment' action by PPGNY *against Plaintiff*."  745 F. Supp. 3d at 96 (third
alteration in original) (quoting *Hanks v. City of Syracuse*, No. 22-2819, 2023 WL 8889764, at
*2 (2d Cir. Dec. 26, 2023) (summary order)).

     Since Plaintiff's allegations still do not support an inference that any timely adverse
employment action against Plaintiff was motivated by discriminatory intent based on
Plaintiff's race, color, sex, or religion, or that Plaintiff's age or disability was a but-for cause
of any adverse employment action, Plaintiff's Title VII, ADEA, and ADA discrimination
claims are dismissed.

### C.  Retaliation Claims (Counts VII and IX)

     As explained in *Mitchell I*, Plaintiff has plausibly alleged that Defendants retaliated
against him for filing the Complaint in this case in violation of Title VII and the ADA.  745 F.
Supp. 3d at 96.  However, the Court previously dismissed Plaintiff's retaliation claim insofar
as it was based on his March 28, 2023 email forwarding a complaint by two coworkers
because he failed to allege he participated in protected activity by forwarding that complaint.
*See id.* at 98-99.  The TAC expands slightly on the allegations about the March 28, 2023

email, *see* TAC ¶ 199, but does not do enough to cure the pleading deficiencies identified in *Mitchell I.*  The TAC also includes new allegations about other complaints Plaintiff made in 2022, *see id.* ¶¶ 111, 121-125, 128, 132, 133, but these do not support a claim for the reasons that follow.

The antiretaliation provisions of Title VII and the ADA are "substantially similar," *Sharikov v. Phillips Med. Sys. MR, Inc.*, 103 F.4th 159, 170 (2d Cir. 2024), and courts analyze retaliation claims under both statutes using the "well-known *McDonnell Douglas* burden-shifting framework," *Mitchell I*, 745 F. Supp. 3d at 96 (quoting *Duplan v. City of New York*, 888 F.3d 612, 62 (2d Cir. 2018)) (collecting cases).  To plead a retaliation claim under either statute, the plaintiff must plausibly allege "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action."  *Littlejohn*, 795 F.3d at 316 (citation omitted).  The Court addresses each element in turn.

### 1.  Protected Activity

Title VII and the ADA prohibit employers from "retaliat[ing] on account of an employee's having opposed, complained of, or sought remedies for, unlawful workplace discrimination."  *Felder v. U.S. Tennis Ass'n*, 27 F.4th 834, 842 (2d Cir. 2022) (quoting *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 342 (2013)).  "A plaintiff seeking to demonstrate that he engaged in protected activity need not show that the behavior he opposed in fact violated Title VII or the ADA, but rather that his protected activity was motivated by a good faith, reasonable belief that the underlying employment practice was unlawful."  *Mitchell I*, 745 F. Supp. 3d at 97 (internal quotation marks and citation omitted).

Plaintiff's new allegations about the March 28, 2023 email do not support a plausible retaliation claim under Title VII or the ADA.  The Court previously explained that the SAC's

allegations about that email were insufficient to plead participation in protected activity because Plaintiff did not provide "information about the 'details' of his coworkers' complaint against Dean" or "specify what 'complaint of discrimination' against Dean" (among several alleged in the SAC) he believed the coworkers' complaint "corroborated." *Mitchell I*, 745 F. Supp. 3d at 98. The additions to the TAC do not correct these problems. In fact, Plaintiff makes no new allegations about the content of the March 28, 2023 email. Instead, Plaintiff amended the TAC to allege that two of Plaintiff's "newest" team members informed him on March 23, 2023, that "they had also been victim to and experienced environmental hostilities, acts of discrimination, and witnessed outward expressions of not wanting to participate in equity commitments, by Dean." TAC ¶ 199. There are no allegations linking the March 23, 2023 conversation between Plaintiff and two of his "newest [team] members" to the March 28, 2023 email, since the TAC still does not provide information about the details of the complaint discussed in that email or what complaint of discrimination against Dean the coworkers' complaint corroborated. The March 28 email thus still does not support a retaliation claim under either Title VII or the ADA.

Next, the Court turns to Plaintiff's new allegations about other email complaints he made during 2022. Plaintiff alleges that on February 22, 2022, he emailed Dean after receiving complaints about "harm being done to black and brown woman during the delivery of patient care" and complained about insensitivity to the needs of those patients. TAC ¶ 111. This does not plausibly allege participation in a protected activity. Title VII and the ADA's antiretaliation provisions provide protection for "those opposing discrimination proscribed by [Title VII or the ADA]." *Jute v. Hamilton Sunstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005); *accord Natofsky v. City of New York*, 921 F.3d 337, 354 (2d Cir. 2019) (ADA). However, the conduct Plaintiff complained of, disregard for patients based on race, does not

involve disability discrimination and so does not amount to protected activity under the ADA. *See, e.g.*, *Cornetta v. Town of Highlands*, 434 F. Supp. 3d 171, 188 (S.D.N.Y. 2020) (plaintiff's complaints that defendants engaged in illegal acts of corruption and intimidation did not contain any language that "could be construed as a complaint — formal or informal — of disability discrimination"). Plaintiff's claims of "disregard for the welfare of black and brown" patients also do not implicate the conduct Title VII prohibits, namely, employment discrimination. *See Felder*, 27 F.4th at 841; 42 U.S.C. § 2000e-2; *see, e.g.*, *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 17 (2d Cir. 2013) (no protected activity where "nothing in [plaintiff's] behavior . . . would have allowed her employer to 'reasonably have understood[] that [plaintiff's] opposition was directed at conduct prohibited by Title VII'" (second alteration in original) (quoting *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998)). Thus, the February 22, 2022 email does not support a retaliation claim under Title VII or the ADA.

Similarly, Plaintiff's allegation that he emailed Calloway and Williams on March 3, 2022, about certain of PPGNY's medical practices, *see* TAC ¶¶ 121-125, and on July 20, 2022 complaining that Dean and Davis were "inciting a rebellion amongst the registered nursing staff against the Plaintiff's operational staff," *id.* ¶ 132, does not amount to participation in a protected activity. The complained-of activities would not support a good-faith reasonable belief that the challenged actions were unlawful under Title VII or the ADA, since they did not involve conduct that could reasonably be understood to complain of employment discrimination on the basis of race, sex, or, gender, or disability. And insofar as these emails (as well as another sent April 22, 2022, *id.* ¶ 128) emphasized Plaintiff's generalized concerns that Dean and Davis were insensitive to the needs of PPGNY's black and brown female

patients, these complaints do not support a retaliation claim under Title VII or the ADA for the reasons explained above.

On the other hand, Plaintiff has plausibly alleged that emails sent on March 28, 2022, and on an unspecified date in 2022, support a retaliation claim under Title VII, but not the ADA. Plaintiff alleges that on March 28, 2022, he complained to Calloway and others "about the offensive and illegal race and gender discrimination he was being subjected to by Dean and Davis." TAC ¶ 125. He also alleges that at a different point in 2022, some time after his July 20, 2022 email and before Messina's August 2022 promotion, he "yet again formally complained" in an email that "detailed the race and age discrimination Mr. Mitchell was subjected to by Dean and Davis." *Id.* ¶ 133. These emails do not mention disability discrimination and so do not involve protected activity under the ADA. However, the allegations support an inference that Plaintiff engaged in protected activity under Title VII, since Plaintiff claims he complained to PPGNY about race and gender discrimination in employment. *See Moore v. Hadestown Broadway Ltd. Liab. Co.*, 722 F. Supp. 3d 229, 255 (S.D.N.Y. 2024) (allegation that plaintiff complained about "discrimination . . . in the form of hostility and anti-black sentiment" adequately pleaded participation in a protected activity).

In sum, Plaintiff has plausibly alleged that he participated in a protected activity under Title VII and the ADA when he filed the Complaint, and under Title VII when he sent the March 22, 2022 and undated 2022 email. The Court's discussion of retaliation under Title VII and the ADA will focus on these three incidents.

### 2. Defendants' Knowledge of the Protected Activity

The second element of a retaliation claim is that the employer knew about the protected activity. *Moll*, 94 F.4th at 239. Defendants do not contest that Plaintiff has sufficiently pleaded this element. *See* Br. at 13-14; Reply at 5.

### 3.  Materially Adverse Action

The third element of a retaliation claim is a materially adverse action.  *Moll*, 94 F.4th
at 239.  "An action qualifies as materially adverse if it is harmful to the point that it could well
dissuade a reasonable worker from making or supporting a charge of discrimination."  *Id.*
(alteration adopted) (internal quotation marks and emphasis omitted).  In *Mitchell I*, the Court
held that Plaintiff sufficiently alleged materially adverse actions by pleading that after he filed
his Complaint in this case, Defendants excluded him from meetings, reduced his
responsibilities, recorded certain meetings without his consent, and ultimately terminated his
employment.  *See* 745 F. Supp. 3d at 99-100.  Defendants do not contest that Plaintiff has
sufficiently pleaded this element in the TAC.

### 4.  Causal Connection

To adequately plead causation for a retaliation claim under Title VII and the ADA,
"the plaintiff must plausibly allege that the retaliation was a but-for cause of the employer's
adverse action."  *Duplan*, 88 F.3d at 625; *accord Sharikov*, 103 F.4th at 170.  "Causation may
be shown by direct evidence of retaliatory animus or inferred through temporal proximity to
the protected activity."  *Duplan*, 888 F.3d at 625.

Plaintiff succeeds in showing a causal link between the filing of his Complaint in this
case and the materially adverse actions identified above, as explained in *Mitchell I*.  *See* 745
F. Supp. 3d at 100.  Defendants do not address the temporal proximity between the materially
adverse actions preceding Plaintiff's termination and his protected activity.  Instead, citing the
SAC, Defendants argue that Plaintiff has not pleaded facts giving rise to an inference of
causation because PPGNY terminated Plaintiff because there were concerns about Plaintiff
falsifying his employment history and having conflict with his colleagues.  Br. at 13-14.
These allegations in the SAC are not before the Court, and inferring that PPGNY terminated

Plaintiff because of these other issues would require the Court to draw inferences in Defendants' favor, which the Court may not do at this stage. The question before the Court is whether, drawing all inferences in Plaintiff's favor, Plaintiff has adequately pleaded causation. The Court concludes he has.

On the other hand, Plaintiff has not succeeded in showing a causal link between his emailed complaints in 2022 and the materially adverse actions that began in March 2023. Almost a year elapsed between Plaintiff's March 28, 2022 email and the materially adverse actions that began after he filed the Complaint on March 7, 2023, and courts in this Circuit have found that time periods of more than a year do not support an inference of causation, even at the pleading stage. *See, e.g.*, *Dimitracopoulos v. City of New York*, 26 F. Supp. 3d 200, 217 (E.D.N.Y. 2014) ("[A] gap of more than one year between protected activity and retaliatory action is generally insufficient[.]" (citation omitted)); *Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 464 (S.D.N.Y. 2023) (dismissing retaliation claim because "approximately six months elapsed between [plaintiff's] protected act" and the materially adverse act). Plaintiff has not pleaded in which month he sent the undated 2022 email. *See* TAC ¶ 133. However, his allegations suggest he sent the email after his July 20, 2022 email, and before Messina was announced as interim CEO in August 2022, dating the undated email to (at best) eight months before his termination. Likewise, a gap of this length, without more, does not support an inference of discrimination. *See, e.g.*, *Gonzalez v. City of New York*, 377 F. Supp. 3d 273, 291 (S.D.N.Y. 2019) (passage of approximately six months between protected activity and adverse employment action, without more, did not permit an inference of causation).

Based on the foregoing, Plaintiff states a claim for retaliation under Title VII and the ADA based on Plaintiff's protected activity of filing the Complaint in this case. Defendants' motion to dismiss those claims is therefore denied.

### D. Hostile Work Environment (Count X)

Plaintiff also brings a hostile work environment claim under the ADA. TAC ¶¶ 273-275. The Court previously dismissed this claim because the only allegations related to Plaintiff's alleged disability were that he had to go through a "disproportionate number of background checks" compared to nondisabled prospective employees and that several board members commented in September 2022 that they thought Plaintiff's subordinate was a better communicator than Plaintiff, and these allegations at most amounted to "stray incidents" that did not support a hostile work environment claim. *Mitchell I*, 745 F. Supp. 3d at 101-02. Plaintiff has amended the TAC to provide more detail about an instance when Corso mocked his drawl and pronunciation in November 2021, alleging that Corso mimicked his "inability to pronounce and articulate a white woman's name correctly due to his disabling condition." *See* TAC ¶¶ 89-90. He also alleges that two non-Black employees were not subjected to the same background check process, but he does not make any allegation about whether these employees were disabled. *See id.* ¶ 57. Plaintiff has not otherwise augmented the allegations related to his alleged disability. For the reasons explained in *Mitchell I*, the facts alleged remain inadequate to give rise to a hostile work environment claim under the ADA, since "[u]nder federal law, 'simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." 745 F. Supp. 3d at 101 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). The Court grants the motion to dismiss the ADA hostile work environment claim.

## II.    Section 1981 Claim (Counts I and IV)

Plaintiff next brings claims against all Defendants under 42 U.S.C. § 1981 for

discrimination and retaliation.  TAC ¶¶ 223-229, 244-250.  Section 1981 provides that "[a]ll

persons within the jurisdiction of the United States shall have the same right in every State

and territory to make and enforce contracts, . . . as is enjoyed by white citizens."  42 U.S.C.

§ 1981(a).  "[T]he term 'make and enforce contracts' includes the making, performance,

modification, and termination of contracts, and the enjoyment of all benefits, privileges,

terms, and conditions of the contractual relationship."  *Id.* § 1981(b); *see also Patterson v.

County of Oneida*, 375 F.3d 206, 224 (2d Cir. 2004) ("[Section 1981] thus outlaws

discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a

contractual relationship, such as employment . . . .").  Discrimination and retaliation claims

based on race are cognizable under section 1981, and are subject to a four-year statute of

limitations.  *See Patterson*, 375 F.3d at 225 (discrimination); *Hawkins v. 1115 Legal Serv.

Care*, 163 F.3d 684, 693 (2d Cir. 1998) (retaliation); *Banks*, 81 F.4th at 260 (statute of

limitations).  The Court will discuss Plaintiff's discrimination claim first and then his

retaliation claim.

### A.  Discrimination Claim (Count I)

Section 1981 discrimination claims are also analyzed under the *McDonnell Douglas*

test.  *See Hamilton v. Siemens Healthcare Diagnostics, Inc.*, No. 23-cv-07408 (KMK), 2025

WL 863572, at *9 (S.D.N.Y. Mar. 18, 2025); *Kirkland-Hudson*, 665 F. Supp. 3d at 449.  To

survive a motion to dismiss, a plaintiff must plausibly allege that he "is a member of a

protected class, was qualified, suffered an adverse employment action, and has at least

minimal support for the proposition that the employer was motivated by discriminatory

intent."  *Littlejohn*, 795 F.3d at 311; *see also Comcast Corp. v. Nat'l Ass'n of African Am.*

*Owned Media*, 140 S. Ct. 1009, 1019 (2020) ("To prevail, a [section 1981] plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right.").  Claims against individuals are cognizable under section 1981, but "in order to make out a claim for individual liability under § 1981, a plaintiff must demonstrate 'some affirmative link to causally connect the actor with the discriminatory action.'"  *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000) (quoting *Allen v. Denver Pub. Sch. Bd.*, 928 F.2d 978, 983 (10th Cir. 1991), *overruled on other grounds by Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220 (10th Cir. 2000)); *accord Moy v. Napoli Shkolnik, PLLC*, No. 23-cv-03788 (DEH), 2024 WL 3498131, at *13 (S.D.N.Y. July 22, 2024).

The Court previously dismissed Plaintiff's section 1981 discrimination claim because he did not allege race was the but-for cause of his injury, *see Mitchell I*, 745 F. Supp. 3d at 102-03, and Defendants argue that the TAC still fails to plausibly allege but-for causation, Br. at 15.  The Court agrees with Defendants.  "To plead but-for causation, [a plaintiff] need only allege 'facts that indirectly show discrimination by giving rise to a plausible inference of discrimination.'"  *Kiseleva v. Greenspan*, 755 F. Supp. 3d 367, 383 n.8 (S.D.N.Y. 2024) (quoting *Vega*, 801 F.3d at 87).  While Plaintiff has now conclusorily pleaded that "[b]ut for Plaintiff's race as a black, African American, he would not have suffered the loss of his legally protected rights," TAC ¶ 226, he has not pleaded facts that give rise to a plausible inference of discrimination based on race, as set forth above, *see supra* pp. 19-25.  Accordingly, the Court dismisses Plaintiff's section 1981 discrimination claim.

## B.  Retaliation Claim (Count IV)

Plaintiff brings retaliation claims under section 1981 against all Defendants.  TAC ¶¶ 244-250.  "Retaliation claims under section 1981 are 'subject to the same standards' as

retaliation claims under Title VII." *Mitchell I*, 745 F. Supp. 3d at 103 (quoting *Banks*, 81 F.4th at 275). Thus, insofar as Plaintiff states a claim against PPGNY for race-based retaliation under Title VII, he states a retaliation claim under section 1981 against PPGNY. As to Plaintiff's claims against the Individual Defendants, "an individual may be held liable for retaliation under § 1981 'if that individual is personally involved in the alleged deprivation.'" *McFadden v. County of Monroe*, 672 F. App'x 81, 83 (2d Cir. 2016) (summary order) (quoting *Littlejohn*, 795 F.3d at 314)). Defendants once more argue that Plaintiff's allegations do not support retaliation claims against the Individual Defendants under section 1981. Dkt. 41-6 at 21-26; Br. at 5-6. Plaintiff again does not respond to this argument, effectively conceding it. *See Mitchell I*, 745 F. Supp. 3d at 103; Opp. at 18-21. Therefore, the Court dismisses Plaintiff's section 1981 discrimination claim as to the Individual Defendants.

## III.    NYCHRL and NYSHRL Claims (Counts II, III, IV, and V)

The Court next turns to Plaintiff's timely state and city law claims under the NYCHRL and NYSHRL for discrimination on the basis of race, age, sex/gender, sexual orientation, and disability; retaliation; and harassment/hostile work environment.[3] *See Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 238 (2d Cir. 2007) ("[C]laims under the NYSHRL and the NYCHRL are time-barred unless filed within three years of the alleged discriminatory acts.").

---

[3] While *Mitchell I* did not resolve the effect of the 2019 NYSHRL amendments, *see* 745 F. Supp. 3d at 106-07, this Court has since treated NYSHRL discrimination, hostile work environment, and retaliation claims as analytically similar to NYCHRL claims, as have the Second Circuit and courts in this district. *See Mumin v. City of New York*, 760 F. Supp. 3d 28, 44 (S.D.N.Y. 2024) (discrimination); *Qorroli v. Metro. Dental Assocs.*, 124 F.4th 115, 122 (2d Cir. 2024) (retaliation); *Lee v. Riverbay Corp.*, 751 F. Supp. 3d 259, 287 (S.D.N.Y. 2024) (hostile work environment). In any event, as in *Mitchell I*, the ultimate resolution of the effects of the 2019 amendments makes no difference since Plaintiff's employment discrimination claims fall short even under the NYCHRL's more liberal standards. 745 F. Supp. 3d at 106-07.

**A.  Discrimination (Count II)**

To state a discrimination claim under the NYCHRL and post-amendment NYSHRL, "a plaintiff must allege only that [he] was 'treated "less well"' . . . because of a discriminatory intent,' *i.e.*, that the unequal treatment was based, at least in part, on a protected characteristic." *Lee v. Riverbay Corp.*, 751 F. Supp. 3d 259, 275 (S.D.N.Y. 2024) (omission in original) (quoting *Mihalik*, 715 F.3d at 110); *see also Wolf v. Time Warner, Inc.*, 548 F. App'x 693, 696 (2d Cir. 2013) (summary order) ("To state a claim for discrimination [under the NYCHRL], a plaintiff must only show differential treatment of any degree based on a discriminatory motive . . . .").

Unlike Title VII, the NYCHRL and NYSHRL permit suits against individual supervisors.  *See McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 157 (2d Cir. 2017) (per curiam) (NYCHRL); *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 365-66 (S.D.N.Y. 2012) (NYSHRL).  Individual liability under the NYSHRL is "limited to individuals with ownership interest or supervisors, who themselves, have the authority to hire and fire employees." *Malena*, 886 F. Supp. 2d at 365-66 (citation omitted).  For purposes of individual liability under the NYCHRL, supervisors include "not just those with formal managerial or titular authority over a plaintiff," but also "those who wield any ability to dictate or administer the compensation, terms, conditions, or privileges of the plaintiff's employment." *Russell v. N.Y. Univ.*, 246 N.E.3d 868, 877 (N.Y. 2024).  To be liable under the NYCHRL and NYSHRL, individual employees must also have "actually participated in the conduct giving rise to the discrimination." *Espinoza v. CGJC Holdings LLC*, No. 23-cv-09133 (DLC), 2024 WL 3520662, at *5 n.5 (S.D.N.Y. July 23, 2024); *accord Mahoney v. City of Albany*, 181 N.Y.S.3d 716, 722 (App. Div. 2022); *Feingold v. City of New York*, 366 F.3d 138, 157-58 (2d Cir. 2004).

For substantially the same reasons stated above regarding Plaintiff's claims under Title VII, the ADEA, and the ADA, and those stated in *Mitchell I*, Plaintiff does not plausibly allege that he "has been treated less well [by Defendants] at least in part because of" any protected characteristic.  *Mihalik*, 715 F.3d at 110 (emphasis, quotation marks, and citation omitted); *see Mitchell I*, 745 F. Supp. 3d at 104-05.  The Court therefore dismisses Plaintiff's discrimination claims under the NYCHRL and NYSHRL.

### B.  Retaliation (Count IV)

"Retaliation claims under the NYCHRL and NYSHRL are assessed under a 'similar but slightly broader standard'" than federal retaliation claims.  *Ronen v. RedRoute, Inc.*, 763 F. Supp. 3d 319, 333 (E.D.N.Y. 2025) (quoting *Qorroli v. Metro. Dental Assocs.*, 124 F.4th 115, 122 (2d Cir. 2024)).  "[A] plaintiff claiming retaliation must demonstrate 'that she took an action opposing her employer's discrimination and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action.'"  *Qorrolli*, 124 F.4th at 122 (quoting *Mihalik*, 715 F.3d at 112).

For the reasons articulated in *Mitchell I*, since Plaintiff states claims against PPGNY for retaliation under Title VII, the ADA, and section 1981, he also states a retaliation claim against PPGNY under the NYCHRL.  *Mitchell I*, 745 F. Supp. 3d at 105.  The Court previously dismissed Plaintiff's retaliation claims against the Individual Defendants (other than Hagan) because Plaintiff did not allege that any Individual Defendant but Hagan actually participated in retaliatory acts against Plaintiff.  *Id.* at 105-06.  In an attempt to correct this deficiency, Plaintiff has now alleged that the decision to terminate Plaintiff's employment was made by Stark, who was the "only person to whom he reported and who had the authority to terminate his employment."  TAC ¶ 204.  The Court will therefore deny the motion to dismiss the retaliation claim against Stark.  Plaintiff also conclusorily alleges that "Hagan, Stark,

Corso, Davis, and Dean conspired and co-conspired and worked together to terminate Plaintiff's employment." *Id.* ¶ 219. But Plaintiff does not provide factual allegations that support his conclusory statement that multiple people conspired to terminate his employment, especially given his earlier allegation that Stark, as his sole supervisor with authority to fire him, decided to terminate Plaintiff's employment. Thus, as with the SAC, Plaintiff does not allege, except in the most conclusory of ways, that Dean, Davis, or Corso took any retaliatory actions against Plaintiff. *See Mitchell I*, 745 F. Supp. 3d at 105-06. The Court therefore denies the motion to dismiss Plaintiff's NYSHRL and NYCHRL retaliation claims as to PPGNY, Hagan, and Stark, but grants it as to the other Individual Defendants.

### C. Hostile Work Environment (Counts III and V)

"The NYCHRL does not distinguish between claims of 'discrimination' and 'harassment' or hostile work environment, which is a term of art borrowed from the more restrictive Title VII jurisprudence." *Mitura v. Finco Servs., Inc.*, 712 F. Supp. 3d 442, 452 n.3 (S.D.N.Y. 2024); *accord Doolittle v. Bloomberg L.P.*, No. 22-cv-09136 (JLR), 2023 WL 7151718, at *8 (S.D.N.Y. Oct. 31, 2023) ("Under the NYCHRL, the standard for a hostile-work-environment claim is the same as for a discrimination claim."). The NYCHRL and NYSHRL prohibit employers from discriminating based on race, color, sex, gender, and sexual orientation, including by creating a hostile work environment. *Small v. N.Y.C. Dep't of Educ.*, 650 F. Supp. 3d 89, 97, 99 (S.D.N.Y. 2023). To state a claim, a plaintiff must allege "unequal treatment based upon membership in a protected class," *Nieblas-Love v. N.Y.C. Housing Auth.*, 165 F. Supp. 3d 51, 68 (S.D.N.Y. 2016) (citation omitted), that is, that he "was treated 'less well' because of discriminatory intent," *Colon v. Fashion Inst. of Tech. (State Univ. of N.Y.)*, 983 F. Supp. 2d 277, 292 (S.D.N.Y. 2013) (quoting *Mihalik*, 715 F.3d at 110). For the reasons stated above regarding the federal and NYCHRL discrimination claims,

Plaintiff still has not plausibly alleged that he was treated less well because of his protected status and he thus fails to state hostile work environment claims under the NYCHRL. *See Mitchell I*, 745 F. Supp. 3d at 106 (collecting cases).

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Specifically, the Court grants the motion to dismiss as to Counts I, II, III, V, VI, VIII, IX, X, and X. Those claims are dismissed with prejudice. The Court dismisses with prejudice the Count IV NYSHRL and NYCHRL retaliation claims against Dean, Corso, and Davis, and Count IV's section 1981 retaliation claim against all Individual Defendants. The Court denies the motion to dismiss Count IV in its entirety as against PPGNY. Finally, the Court denies the motion to dismiss Count VII. The Clerk of Court is respectfully directed to terminate the motion at Dkt. 57.

Dated:  June 30, 2025
      New York, New York

                      SO ORDERED.

                      JENNIFER L. ROCHON
                      United States District Judge