UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SAMUEL RICARLOS MITCHELL, JR.,

                       Plaintiff,

        -against-

PLANNED PARENTHOOD OF GREATER
NEW YORK, INC., et al.,

                  Defendants.

Case No. 1:23-cv-01932 (JLR)

**<u>OPINION AND ORDER</u>**

JENNIFER L. ROCHON, United States District Judge:

Defendant/Counterclaimant Planned Parenthood of Greater New York, Inc. ("PPGNY")

filed counterclaims against Plaintiff/Counterclaim Defendant Samuel R. Mitchell, Jr.

("Mitchell") for breach of contract and fraud arising from Mitchell's conduct during and after his

tenure at PPGNY.  Mitchell now moves to dismiss the Amended Counterclaims under Federal

Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim.  For the following reasons,

the Court GRANTS in part and DENIES in part Mitchell's motion to dismiss the Amended

Counterclaims.

## BACKGROUND

The following facts are taken from the Amended Counterclaims and are accepted as true

for purposes of this motion.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir.

2002).

### I.    Factual Background

In the fall of 2021, PPGNY's then–Chief Executive Officer ("CEO") Joy Calloway led

the search for an Interim Chief Operating Officer ("COO").  Dkt. 69 ("Am. Countercls.") ¶ 7.

One of the applicants for the COO position was Mitchell, who submitted written statements and

other documents in support of his application.  *Id.* ¶ 8.  In these materials, Mitchell made

representations regarding his employment history and professional qualifications that he represented to be true. *Id.* In addition to these submissions, Mitchell answered written questions regarding his employment history for a standard background check and discussed his employment history during the interview process, again representing that the information was true and accurate. *Id.* ¶ 9. Relying on these submissions, in or around September 2021, PPGNY offered Mitchell the Interim COO position. *Id.* ¶¶ 10, 13, 22. While he was Interim COO, Mitchell's employment was governed by the Interim Contractor Agreement, *see* Dkt. 83-3, which he signed on August 26, 2021. Am. Countercls. ¶ 15.

On February 23, 2022, PPGNY offered Mitchell the position of COO, furnishing him with an Offer Letter that governed the employment relationship, *see* Dkt. 83-2 ("OL"), which both parties signed. Am. Countercls. ¶¶ 15, 22. Per the Offer Letter, which the parties agree is a valid contract between them, Mitchell was designated as an at-will employee. *See* OL at 2. The Amended Counterclaims allege that the contract also includes several explicit and implicit terms and conditions, including that Mitchell could not "materially breach PPGNY's trust, nor engage in conduct materially detrimental to PPGNY's reputation, operations or activities"; he could "not . . . reveal confidential PPGNY information"; and he had "an implied duty not to publish personal information regarding PPGNY employees." *See* Am. Countercls. ¶¶ 15–18. Specifically, the contract, which is incorporated by reference in the Amended Counterclaims, states that Mitchell was entitled to certain compensation if he was terminated without "Cause," which is defined, in part, as:

> (a) your death, . . . (d) any suspension or barring of you by any regulatory agency from performing your material duties, or any governmental directive that would result in a cessation of any government funding of PPGNY if you remain in your position as COO, (e) your inability to work in the United States, . . . (h) your material misconduct, material breach of duty and/or material neglect of duties, in each case in the performance of duties to PPGNY, (i) your material breach of trust, (j) your material breach of any of PPGNY's policies, procedures, rules or orders,

and/or (k) your conduct or performance considered by the CEO or, in the absence of the CEO, PPGNY's Board, to be materially detrimental to the reputation, operation or activities of PPGNY.

OL at 2–3.  The Offer Letter further provided that: "During the time that you are employed by PPGNY and following the termination of your employment, regardless of the reason for such termination, you shall remain in strict compliance with the terms of PPGNY's Non-Disclosure Agreement, a copy of which is attached to this letter as Exhibit 3." *Id.* at 4.

The Offer Letter also required Mitchell, "as a condition of [his] employment," to "establish residency in the State of New York within 90 days of [his] Start Date," which was anticipated to be March 1, 2022. *Id.* at 1.  While he was working in an interim capacity, PPGNY had been paying for temporary housing for Mitchell, and in the Offer Letter, PPGNY agreed to continue to do so "until the earlier of the date that you have rented or bought a residence in New York State, or May 31, 2022." *Id.*; *see* Am. Countercls. ¶ 26.

PPGNY alleges that Mitchell breached the Offer Letter in three respects.  First, PPGNY claims that Plaintiff breached his Offer Letter by failing "to establish residency in the State of New York within 90 days of his start date."  Am. Countercls. ¶ 26.  Second, PPGNY asserts that, earlier in March 2023, "while still employed as PPGNY COO," Mitchell "held a press-conference where he made a series of comments about PPGNY in breach of [his] contractual obligations" not to "materially breach PPGNY's trust, [or] to engage in conduct materially detrimental to PPGNY's reputation, operations or activities." *Id.* ¶ 17.  Lastly, PPGNY alleges that over a year after his employment was terminated, "on or around September 13, 2024, [Plaintiff] published online confidential PPGNY information, making statements that materially undermine PPGNY's reputation, operations and activities, and publicly making allegations regarding the private lives of his former colleagues," in contravention of his "contractual obligation not to reveal confidential PPGNY information, as well as an implied duty not to

3

publish personal information regarding PPGNY employees, nor, . . . to materially breach PPGNY's trust, or to engage in conduct materially detrimental to PPGNY's reputation, operations or activities[.]" *Id.* ¶ 18. These statements included "a series of false attacks on PPGNY's medical practices and standards of care." *Id.* ¶ 19.

PPGNY separately asserts that Mitchell made false representations about his employment history and professional qualifications when applying for the COO position. *Id.* ¶ 11. Some of his misrepresentations included omitting work history, "claim[ing] to have held a key leadership position at a company over a period of alleged success" when he had been terminated before the success occurred, falsely claiming to work for a company before it existed, and taking credit for accomplishments that were not his own. *Id.* ¶ 12. "Upon learning of [Mitchell]'s extensive fraudulent conduct PPGNY terminated [Mitchell]'s employment" on March 28, 2023. *Id.* ¶ 39; Dkt. 49 ¶ 204.

## II.    Procedural Background

On March 7, 2023, prior to the termination of his employment, Mitchell sued PPGNY and some of its officers for employment discrimination under federal and state law. *See generally* Dkt. 1. Mitchell amended the complaint three times, *see* Dkt. 14 ("First Amended Complaint" or "FAC"); Dkt. 34 ("Second Amended Complaint" or "SAC"); Dkt. 49 ("Third Amended Complaint" or "TAC"), and the Court granted in part the motions to dismiss the Second and Third Amended Complaints, *see Mitchell v. Planned Parenthood of Greater N.Y., Inc.* (*Mitchell I*), 745 F. Supp. 3d 68 (S.D.N.Y. 2024); *Mitchell v. Planned Parenthood of Greater N.Y., Inc.* (*Mitchell II*), No. 23-cv-01932 (JLR), 2025 WL 1795378 (S.D.N.Y. June 30, 2025).

The only claim remaining is Mitchell's retaliation claim against PPGNY. *See Mitchell II*, 2025 WL 1795378, at *19. After *Mitchell II*, PPGNY thereafter filed its answer, asserting

4

counterclaims against Mitchell for breach of contract and fraud.  *See* Dkt. 64.  Mitchell then filed

a motion to dismiss, after which PPGNY amended its answer, and Mitchell refiled his motion to

dismiss the amended counterclaims.  *See* Dkts. 65, 69, 83.  Mitchell's motion to dismiss is fully

briefed.  *See* Dkt. 84 ("Br."); Dkt. 87 ("Opp."); Dkt. 88 ("Reply").

## LEGAL STANDARD

A motion to dismiss a counterclaim under Rule 12(b)(6) is governed by the same legal

standard as a motion to dismiss a complaint.  *Zurich Am. Life Ins. Co. v. Nagel*, 571 F. Supp. 3d

168, 175 (S.D.N.Y. 2021).  To survive a motion to dismiss, a counterclaim "must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)).  A counterclaim is plausible when the pleading contains sufficient "factual content

that allows the court to draw the reasonable inference that the [plaintiff] is liable for the

misconduct alleged."  *Id.*  When assessing the sufficiency of the pleading, the Court "accept[s]

all factual allegations in the [counterclaim] and draw[s] all reasonable inferences in the

[counterclaimant]'s favor."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.

2007).  In addition to the allegations in the counterclaim, the Court "may [also] consider any

written instrument attached to the complaint [or Answer], [and] statements or documents

incorporated into the complaint [or Answer] by reference."  *Id.*  Although the Court accepts all

factual allegations in the pleading as true, if the counterclaim contains only "labels and

conclusion" or a "formulaic recitation of the elements of a cause of action," the Court should

grant the motion to dismiss.  *Twombly*, 550 U.S. at 555.

## DISCUSSION

PPGNY brings two counterclaims against Mitchell: breach of contract and fraud.  Am.

Countercls. ¶¶ 21–40.  Mitchell has moved to dismiss both counterclaims.  The Court holds that

5

PPGNY's breach of contract claim survives in part, and PPGNY's fraud counterclaim survives in full.

## I.    Breach of Contract Counterclaim

PPGNY's first counterclaim alleges that Mitchell was subject to "various written and implicit contracts," including, "(i) his Interim Contractor Agreement; (ii) his Employment Contract; (iii) his Offer Letter and associated Exhibits; and (iv) other written and implied codes of conduct, policies and agreements governing the terms and conditions of [his] employment at PPGNY." *Id.* ¶ 22.  PPGNY does not ever define or allege the existence of an "Employment Contract."  And the Offer Letter supersedes the Interim Contractor Agreement.  OL at 2 ("This offer letter supersedes any previous letters, agreements or terms of employment, whether verbal or written.").  Therefore, PPGNY's allegations relate primarily to the Offer Letter and unspecified "associated Exhibits," as well as alleged implied obligations.

According to the Amended Counterclaims, Mitchell breached "the aforesaid contracts" by "breaching the confidentiality clauses contained within the various aforementioned contracts; breaching the non-disparagement clauses contained within the various aforementioned contracts; breaching his contractual obligations prohibiting him from engaging in fraud and dishonesty; breaching his contractual obligations prohibiting him from engaging in conduct detrimental to the reputation, operations or activities of PPGNY; and breaching [his] duties of good faith and fair dealing."  Am. Countercls. ¶¶ 24–25.

"To make out a viable claim for breach of contract, a '[counterclaim] need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the [counterclaimant], (3) breach of contract by the defendant, and (4) damages.'"  *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)); *see also 34-06 73, LLC v. Seneca Ins.*

*Co.*, 198 N.E.3d 1282, 1287 (N.Y. 2022).  "To show that an enforceable contract existed, the [counter]claimant must plead facts surrounding the formation of the contract such as the date the parties entered into the contract, the major terms of the contract, the parties to the contract, and that the party to be bound assented to the contract."  *Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 412 (S.D.N.Y. 2009).  Additionally, the Counterclaimant "must allege the specific provisions of the contract upon which the breach of contract claim is based," *id.* at 412, and "the defendant's acts or omissions constituting the breach," *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 468 (S.D.N.Y. 2014); *see also D'Accord Fin. Servs., Inc. v. Metsa-Serla Oy*, No. 98-cv-05847 (DLC), 1999 WL 58916, at *6 (S.D.N.Y. Feb. 8, 1999) (dismissing a breach of contract counterclaim when the court was "unable to discern the nature of the breach sufficient to give notice of the claim").  As for damages, the counterclaim must allege facts that support an inference of damages; "a boilerplate allegation that a party suffered damages is generally inadequate to allege a breach of contract claim."  *Korpak, Ltd. v. Williams Lea Inc.*, No. 20-cv-06880 (KPF), 2022 WL 375543, *4 (S.D.N.Y. Feb. 7, 2022) (finding that counterclaimant made a "concrete allegation that it suffered damages" by stating that it incurred attorneys' fees); *see also Miller v. HSBC Bank U.S.A., N.A.*, No. 13-cv-07500 (RWS), 2015 WL 585589, at *4 (S.D.N.Y. Feb. 11, 2015) (dismissing breach of contract claim in part because plaintiff alleged that she "'suffered damages' without any further factual enhancement").

### A.    PPGNY states a plausible claim that Mitchell breached his contract with PPGNY by failing to establish residency in New York

PPGNY plausibly states a claim that Mitchell breached his contract by failing to establish residency in New York.  The Amended Counterclaims allege sufficient facts about formation, terms, and parties to show that the Offer Letter was a valid contract signed by both parties on February 23, 2022.  *See* Am. Countercls. ¶ 13, 15.  The Offer Letter's terms provide that, as a

7

"condition of [Mitchell's] employment, [Mitchell] shall be required to establish residency in the State of New York within 90 days of [his] Start Date," which was expected to be March 1, 2022, OL at 1; Am. Countercls. ¶ 26, and "PPGNY [would] continue to cover the expenses for [temporary housing] until the earlier of the date that [Mitchell] ha[d] rented or bought a residence in New York State, or May 31, 2022," OL at 1; Am. Countercls. ¶ 26. The Amended Counterclaims also contain sufficient facts to plead that PPGNY complied with the terms of the contract, claiming that PPGNY paid for the first 90 days of temporary housing, but that Mitchell breached this provision because he "never intended to establish residency in New York State, and, in fact, at no point did he ever establish residency in New York State." Am. Countercls. ¶ 14. This breach, according to the Amended Counterclaims, caused PPGNY "tens of thousands of dollars in costs to provide [Mitchell] with temporary housing in New York City while he falsely claimed to be looking for a permanent home in New York." *Id.* Assuming all these allegations to be true, PPGNY states sufficient facts to show each element of a breach of contract for failing to establish residency.

Mitchell argues that PPGNY fails to state a claim because (1) the Offer Letter language regarding the residency requirement is ambiguous, rendering the breach allegation "improperly conclusory"; (2) PPGNY waived the requirement that Mitchell move to New York; (3) PPGNY failed to plead damages; and (4) to the extent that PPGNY suffered damages from the alleged breach, it failed to mitigate those damages. Br. at 4–9. These arguments are unpersuasive.

First, Mitchell argues that PPGNY's breach of contract claim regarding his failure to establish residency should be dismissed because the term "residency" is ambiguous. The Offer Letter required that Mitchell establish "residency in the State of New York within 90 days of [his] Start Date." OL at 1. According to Mitchell, because "residency" is undefined in the Offer Letter, it is unclear whether he was required to purchase or rent real estate in New York, or

8

whether he was only required to spend the majority of his time in New York. Br. at 5. Given this, Mitchell argues that the term is "meaningless" and that PPGNY therefore does not state a claim for breach of contract based on that clause. *Id.* The Court disagrees.

The terms of the Offer Letter with respect to residency are clear and unambiguous. The first sentence of the paragraph regarding establishing residency within 90 days is clarified by the second sentence that expressly refers to the deadline for Mitchell to rent or buy a residence in New York. OL at 1. Given the plain language of the contract provision, there is no need to resort to the extraneous information on which Mitchell relies in support of his argument, such as the tax requirements for establishing a domicile under 20 NYCRR § 105.20, or dictionary definitions. Reply at 1-2. *See Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011) ("If the document as a whole makes clear the parties' over-all intention, courts examining isolated provisions should then choose that construction which will carry out the plain purpose and object of the agreement." (alterations adopted) (internal quotation marks omitted)); *see also JA Apparel Corp. v. Abboud*, 568 F.3d 390, 397 (2d Cir. 2009) ("In interpreting an unambiguous contract, the court is to consider its particular words not in isolation but in the light of the obligation as a whole and the intention of the parties as manifested thereby . . . ." (alterations adopted) (internal quotation marks omitted)).

Moreover, even if there was some ambiguity, it would be premature to dismiss the counterclaim on this ground. *U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*, No. 16-cv-08507 (AJN), 2017 WL 3610584, at *7 (S.D.N.Y. July 26, 2017) ("[I]f the contract is ambiguous, the Court cannot resolve the parties' dispute on a motion to dismiss or a motion for judgment on the pleadings."); *see also Maniolos v. United States*, 741 F. Supp. 2d 555, 567 (S.D.N.Y. 2010) (collecting cases), *aff'd*, 469 F. App'x 56 (2d Cir. 2012). Mitchell cites to the doctrine of *contra proferentem*, which provides that ambiguities in a contract must be construed

9

against the drafter.  S*ee* Br. at 5 n.5.  But *contra proferentem* does not justify dismissing an allegedly ambiguous contract at the pleading stage, because it is applied "only as a matter of last resort after all aids to construction have been employed without a satisfactory result."  *Gillespie v. St. Regis Residence Club, N.Y. Inc.*, 461 F. Supp. 3d 96, 117 (S.D.N.Y. 2020) (quoting *Albany Sav. Bank, F.S.B. v. Halpin*, 117 F.3d 669, 674 (2d Cir. 1997)); *see also McCostis v. Home Ins. Co. of Ind.*, 31 F.3d 110, 113 (2d Cir. 1994) ("If the extrinsic evidence does not yield a conclusive answer as to the parties' intent, it is appropriate for a court to resort to other rules of construction, including the contra-insurer rule, which states that any ambiguity in an insurance policy should be resolved in favor of the insured."); *Aircraft Servs. Resales LLC v. Oceanic Cap. Co.*, No. 09-cv-08129 (PKC), 2013 WL 4400453, at *4 (S.D.N.Y. Aug. 14, 2013), *aff'd*, 586 F. App'x 761 (2d Cir. 2014) (considering the doctrine *contra proferentem* at the motion for summary judgment).  Thus, the Court rejects Mitchell's argument that the counterclaim should be dismissed because the provision regarding residency is ambiguous.

Second, Mitchell argues that PPGNY cannot state a claim because it "1) waived the alleged breach, 2) through performance, modified the Offer Letter to remove the provision requiring NY residency, and 3) is estopped from asserting the claim."  Br. at 6.  According to Mitchell, PPGNY waived its claim arising from Mitchell's failure to establish residency by not terminating Mitchell on this ground or seeking reimbursement for the first 90 days of living expenses, as provided for in the Offer Letter.  *Id.*  However, as with a claim of ambiguity, Mitchell's waiver contention does not warrant dismissal at the pleading stage.

"Waiver occurs when a plaintiff with 'actual knowledge' of a breach 'continues to perform under and accepts the benefits of a contract.'"  *Eastman Chem. Co. v. Nestle Waters Mgmt. & Tech.*, No. 11-cv-02589 (JPO) (HBP), 2012 WL 4474587, *2 (S.D.N.Y. Sept. 28, 2012) (quoting *Sauer v. Xerox Corp.*, 5 F. App'x 52, 56 (2d Cir. 2001)).  "[W]aiver requires a

10

'clear manifestation of an intent by plaintiff to relinquish her known right' and 'mere silence, oversight or thoughtlessness in failing to object' to a breach of the contract will not support a finding of waiver." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 585 (2d Cir. 2006) (quoting *Courtney-Clarke v. Rizzoli Int'l Publ'ns, Inc.*, 676 N.Y.S.2d 529, 529 (N.Y. App. Div. 1998)).  Hence, "[t]he general rule in New York is that questions of waiver are not decided on a motion to dismiss." *CreditSights, Inc. v. Ciasullo*, No. 05-cv-09345 (DAB), 2007 WL 943352, at *9 (S.D.N.Y. Mar. 29, 2007).  "The only exception to this rule is where 'waiver is clear on the face of the complaint,' in which case the plaintiff's waiver can be determined as a matter of law." *Eastman Chem. Co.*, 2012 WL 4474587, at *3 (quoting *Schonberger v. Serchuk*, 742 F. Supp. 108, 114–15 (S.D.N.Y. 1990)).

Mitchell identifies no allegations in the Amended Counterclaims supporting a finding that PPGNY had actual knowledge and a clear intent to waive the residency requirement. Mitchell even admits in his Reply that, "PPGNY does not state in its opposition . . . when it came to learn of the alleged breach."  Reply at 4.  Accordingly, the Court will not resolve questions of waiver or estoppel at the pleading stage. *See Eastman Chem. Co.*, 2012 WL 4474587, at *3 (holding that waiver could not be established on the face of the complaint where there is a plausible claim that the plaintiff did not have actual knowledge of the breach).

Third, Mitchell argues that even if he breached the residency requirement, PPGNY did not suffer damages because the failure to establish residency would not constitute a breach until 90 days after his start date, and PPGNY incurred no housing expenses after that date.  Br. at 7–8. This argument fails, however, because PPGNY alleges that Mitchell breached the contract from the outset in February 2022 because he never intended to (and ultimately did not) establish residency in New York.  Am. Countercls. ¶ 26.  In other words, if Mitchell had abided by his contractual obligation to secure residency in New York within 90 days, PPGNY may not have

11

incurred the costs for his temporary housing during at least some of that period.  According to

PPGNY, it "accrued tens of thousands of dollars in costs to provide Mitchell with temporary

housing in New York City while he falsely claimed to be looking for a permanent home in New

York." *Id.* ¶ 14.  Drawing all inferences in favor of PPGNY, there is at least a plausible claim

that it suffered damages.

Fourth, and lastly, Mitchell argues that PPGNY's Amended Counterclaims fail to state a

claim for breach of the residency requirement because PPGNY did not mitigate its damages.  Br.

at 8.  The Offer Letter, by its terms, permitted PPGNY to recover housing costs if it terminated

Mitchell within six months of his start date.  OL at 1.  Mitchell argues that, by not seeking this

remedy, PPGNY failed to make reasonable efforts to mitigate its damages.  Br. at 8.  This

argument is unavailing.

As a threshold matter, Mitchell was not terminated within six months of his start date,

and therefore the provision that provided for recoupment of the housing costs does not come into

play.  Moreover, "[f]ailure to mitigate damages is an affirmative defense to a breach of contract

claim, which 'requires the defendant to establish not only that the plaintiff *unreasonably* failed to

mitigate, but that reasonable efforts would have reduced the damages.'"  *Mohegan Lake Motors,*

*Inc. v. Maoli*, 559 F. Supp. 3d 323, 346 (S.D.N.Y. 2021) (emphasis added) (quoting *Robin Bay*

*Assocs., LLC v. Merrill Lynch Co.*, No. 07-cv-00376 (JMB), 2008 WL 2275902, at *8 (S.D.N.Y.

June 3, 2008)), *opinion clarified sub nom. Mohegan Lake Motiors, Inc. v. Maoli*, No. 16-cv-

06717 (NSR), 2023 WL 1070247 (S.D.N.Y. Jan. 27, 2023).  "Whether a party puts forth

sufficient effort to mitigate damages is a question of fact and typically resolved during trial."  *Id.*

(quoting *Robin Bay*, 2008 WL 2275902, at *8).  Thus, whether PPGNY could have mitigated its

damages is not a question to be resolved at the motion to dismiss stage.  *See Tang Cap. Partners,*

*LP. v. BRC Inc.*, 661 F. Supp. 3d 48, 75 (S.D.N.Y. 2023) (refusing to dismiss a claim for failure

to mitigate damages because it turned on whether the plaintiff failed to make reasonable efforts to mitigate damages).

In sum, the Amended Counterclaims contain sufficient facts to plausibly plead each element of a breach of contract claim related to Mitchell's failure to establish residency in New York.

### B. PPGNY fails to state a claim for breach of contract based on the March 2023 press conference

PPGNY next alleges that Mitchell breached his contracts with PPGNY based on his statements at a March 2023 press conference. Am. Countercls. ¶ 17. PPGNY points to the language in the Offer Letter that states that termination for "Cause" includes "material breach[es] of trust" or "conduct or performance considered by the CEO or, in the absence of the CEO, PPGNY's Board, to be materially detrimental to the reputation, operation or activities of PPGNY." OL at 2-3; Am. Countercls. ¶ 17 ("For example, as part of the terms of [Mitchell's] employment, he was not permitted to materially breach PPGNY's trust, nor to engage in conduct materially detrimental to PPGNY's reputation, operations or activities."). PPGNY alleges that Mitchell violated this contractual provision because "while still employed as PPGNY COO, in March 2023, [Mitchell] held a press-conference where he made a series of comments about PPGNY in breach of those contractual obligations." Am. Countercls. ¶ 17.

PPGNY does not state a claim for breach of contract on this basis, because it does not identify any comments that breached the various contractual provisions cited that would be sufficient to put Mitchell on notice of the counterclaim. Instead, it makes the conclusory assertion that Mitchell "made a series of comments about PPGNY in breach of those contractual obligations" at the March 2023 press conference. *Id.* This general assertion of breach, without more, does not support a breach of contract claim. *See Berman v. Sugo LLC*, 580 F. Supp. 2d

191, 202 (S.D.N.Y. 2008) ("Stating in a conclusory manner that an agreement was breached does not sustain a claim of breach of contract."); *Hadami, S.A. v. Xerox Corp.*, 272 F. Supp. 3d 587, 597–98 (S.D.N.Y. 2017) (dismissing breach of contract claim because plaintiff did "no more than list terms in the [contract] and conclusorily allege that [defendant] violated them"); *Soroof Trading Dev. Co. v. GE Fuel Cell Sys., LLC*, 842 F. Supp. 2d 502, 512–13 (S.D.N.Y. 2012) (dismissing breach of contract claim only supported by "naked assertions without any factual enhancement to support"); *cf. Steward Partners Glob. Advisory, LLC v. Tucker*, No. 23-cv-06532 (JGLC), 2025 WL 2463637, at *5 (S.D.N.Y. Aug. 27, 2025) (deciding that allegations of breach of a non-disparagement clause were sufficiently pleaded when the amended complaint "allege[d] what [plaintiff] stated, when he stated it, and who [the statement] was directed to").

In its opposition brief, PPGNY cites to a news article that reports that Mitchell insinuated at the press conference that Planned Parenthood continued to promote its controversial founder, Margaret Sanger. Opp. at 18. Mitchell in turn counters that his comments at the press conference were "simply recitations of the allegations contained in his pleadings, and as such constituted a 'fair and true report' of the judicial proceedings Mr. Mitchell undertook" against PPGNY. Br. at 13. However, these contentions are beyond the scope of the pleadings, as there are no allegations in the Amended Counterclaims regarding the substance of the statements at the press conference or how those allegedly constituted a breach of the agreements between the parties.

### C.    PPGNY fails to state a claim for breach of contract arising from Mitchell's September 2024 publications

PPGNY finally alleges that Mitchell breached his contract with PPGNY because, in September 2024, Mitchell "published online confidential PPGNY information, making statements that materially undermine PPGNY's reputation, operations and activities, and

14

publicly making allegations regarding the private lives of his former colleagues," including "publish[ing] online a series of false attacks on PPGNY's medical practices and standards of care" on September 13, 2024.  Am. Countercls. ¶¶ 18-19.  Such behavior constituted a breach of contract, according to PPGNY, because Mitchell "had a contractual obligation not to reveal confidential PPGNY information, as well as an implied duty not to publish personal information regarding PPGNY employees, nor, as set forth[,] to materially breach PPGNY's trust, or to engage in conduct materially detrimental to PPGNY's reputation, operations or activities."  *Id.* ¶ 18.

PPGNY fails to state a breach of contract claim on this basis.  As stated earlier, to survive a motion to dismiss, the counterclaimant "must set forth the material terms of the agreement, including the particular terms that were allegedly breached by the defendants."  *Grayson v. Ressler & Ressler*, 271 F. Supp. 3d 501, 521 (S.D.N.Y. 2017) (dismissing complaint because it did not "set forth the material terms of the agreement with the requisite specificity, preventing the [c]ourt from ascertaining what was promised and whether [d]efendants' alleged actions breached such promises"); *see also Pierce Coach Line, Inc. v. Port Washington Union Free Sch. Dist.*, 185 N.Y.S.3d 187, 189–90 (N.Y. App. Div. 2023) ("To state a cause of action to recover damages for a breach of contract, the plaintiff's allegations must identify the provisions of the contract that were breached." (alteration adopted) (quoting *NFA Grp. v. Lotus Research*, 120 N.Y.S.3d 75, 76 (N.Y. App. Div. 2020))).  Here, PPGNY does not clearly allege which contractual provisions Mitchell allegedly breached based on his September 2024 online publications, nor what those publications said or how they breached those obligations.  PPGNY seems to be referencing provisions of the Offer Letter regarding "materially breach[ing] PPGNY's trust, or . . . engag[ing] in conduct materially detrimental to PPGNY's reputation, operations or activities," Am. Countercls.  ¶¶ 18-19, but Mitchell had been terminated a year

15

earlier, and PPGNY does not plausibly allege that these contractual provisions remained in effect after termination.  Indeed, PPGNY admits in its opposition brief that "the explicit terms of the Offer Letter and a majority of [Mitchell]'s other contracts with PPGNY were no longer in effect in September 2024," and instead argues that the online publications violated Mitchell's implied "duty of good faith and fair dealing."  Opp. at 13.  But even assuming that PPGNY has brought a claim for breach of the covenant of good faith and fair dealing as part of its breach of contract claim, it does not provide any authority that supports its claim that such an amorphous implied duty lasts for years after the termination of Mitchell's contracts with PPGNY.  *See Kitchen Winners NY Inc. v. Rock Fintek LLC*, 668 F. Supp. 3d 263, 288 (S.D.N.Y. 2023) ("Because the duties imposed by the implied covenant of good faith and fair dealing arise as a result of the formation of a contractual relationship between the parties, a claim for breach of the implied covenant of good faith and fair dealing must be dismissed when there is no valid and enforceable contract between the parties." (quoting *Hadami*, 272 F. Supp. 3d at 598)); *see also ARI and Co., Inc. v. Regent Int'l Corp.*, 273 F. Supp. 2d 518, 523 (S.D.N.Y. 2003) ("New York law is clear that the implied covenant [of good faith and fair dealing] cannot be used to create independent obligations beyond the contract.").

While it is conceivable that PPGNY is basing its breach of contract claim on PPGNY's Non-Disclosure Agreement that survives termination of the contract, Am. Countercls. ¶ 18 (referencing Mitchell's "contractual obligation not to reveal confidential PPGNY information"); OL at 4 (referencing separate incorporated Non-Disclosure Agreement that survives termination and covers disclosure of PPGNY's defined Confidential Information), there are no facts alleged that support either the information that was disclosed in violation of that agreement, or the terms of that agreement that were violated.  And any claim for the implied covenant of good faith and fair dealing regarding disclosure of confidential information would then be duplicative of

16

PPGNY's claim for breach of the express contract terms. *See Atl. Neurosurgical Specialists, P.A. v. Multiplan, Inc.*, No. 20-cv-10685 (LLS), 2022 WL 158658, at *8 (S.D.N.Y. Jan. 18, 2022) ("To sustain a claim for breach of the implied covenant, the underlying conduct must be distinct from that alleged in a corresponding breach of contract claim."); *MacPhee v. Verizon Commc'ns Inc.*, No. 06-cv-07870 (BSJ), 2008 WL 162899, at *6 (S.D.N.Y. Jan. 15, 2008) (dismissing a claim for breach of good faith and fair dealing where the complaint alleged only a breach of explicit contractual provisions). Accordingly, PPGNY does not state a claim for breach of contract based on Mitchell's September 2024 disclosures.

In sum, the Court denies the motion to dismiss PPGNY's breach of contract claim based on Mitchell's alleged failure to secure residency in New York within 90 days of his start date but will grant the motion as to other aspects of PPGNY's breach of contract claim.

## II.    Fraud Counterclaim

PPGNY also asserts a counterclaim for fraud, which Mitchell moves to dismiss. "To state a claim for fraud under New York law, a plaintiff must allege (1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 402 (2d Cir. 2015). Under Federal Rule of Civil Procedure ("Rule") 9(b), "[f]raud must be pled with particularity, which requires that the [counterclaimant] '(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent.'" *Eternity Glob. Master Fund*, 375 F.3d at 187 (citation omitted) (quoting *Harsco Corp.*, 91 F.3d at 347). The particularity requirement does not apply, however, to allegations of "[m]alice, intent, knowledge, or other conditions of a person's mind," which

17

"may be alleged generally." Fed. R. Civ. P. 9(b); *see Eternity Glob. Master Fund*, 375 F.3d at 187.

To start, PPGNY alleges sufficient facts to plead that Mitchell made material misrepresentations that he knew to be false. The Amended Counterclaims allege that Mitchell materially misrepresented his employment history and qualifications in his written application, during interviews, and in connection with background checks while applying to PPGNY in 2021. Am. Countercls. ¶¶ 7–10. PPGNY further alleges that Mitchell fraudulently misrepresented that his employment history was truthful, when in fact he knew it was not. *Id.* ¶¶ 11–12. Taken together, these pleadings satisfy Rule 9(b) because the allegations identify the specific false statements, who made the misrepresentations, when and where the statements were made, and why the misrepresentations are fraudulent. *See Baker v. Dorfman*, 239 F.3d 415, 423–24 (2d Cir. 2000) (affirming a district court's finding that a defendant's false statements about his qualifications and accomplishments on a resume meet the requirement for knowledge that the statements were fraudulent); *Robinson v. MSG Ent. Grp., LLC*, No. 23-cv-9366 (LJL), 2025 WL 1883597, at *4 (S.D.N.Y. July 8, 2025) (holding that the knowledge of falsity was met when applicant lied about his birthday to avoid potential employer learning of past criminal convictions).

PPGNY also alleges sufficient facts to show an intent to defraud. While conditions of a person's mind do not need to be pled in particularity, the counterclaim "'must allege facts that give rise to a strong inference of fraudulent intent,' which may be established 'either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" *Eternity Glob. Master Fund*, 375 F.3d at 187 (quoting *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir. 1995)). "Motive . . . entail[s] concrete benefits that could be

18

realized by one or more of the false statements and wrongful nondisclosures alleged. Opportunity . . . entail[s] the means and likely prospect of achieving concrete benefits by the means alleged." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1130 (2d Cir. 1994). Here, PPGNY's allegations create a strong inference of fraudulent intent by alleging facts sufficient to show that Mitchell had motive and opportunity to commit fraud. Mitchell had a motive to make the material misrepresentations about his employment history in order to increase the likelihood that he would obtain employment with PPGNY. PPGNY has also pleaded an opportunity for Mitchell to commit this alleged fraud because the employment information from Mitchell was presented as truthful and accurate and was utilized as part of the PPGNY hiring process. Thus, PPGNY has adequately pleaded that Mitchell had both the motive and opportunity to commit fraud. *See Robinson*, 2025 WL 1883597, at *4 (finding motive and intent adequately pleaded where job applicant provided false information regarding his background for purposes of circumventing the background check).

PPGNY has also sufficiently pleaded that it reasonably relied on Mitchell's false statements. Pleading reasonable reliance at the motion to dismiss stage "is not onerous" because it is usually a fact issue. *Id.* at *5; *Country World, Inc. v. Imperial Frozen Foods Co.*, 589 N.Y.S.2d 81, 82 (N.Y. App. Div. 1992) ("In a fraud action, whether a party could have ascertained the facts with reasonable diligence so as to negate justifiable reliance is a factual question."). Here, PPGNY asserts that it reasonably relied on these misrepresentations when, in September 2021, it decided to hire Mitchell as Interim COO and, subsequently, as COO. Am. Countercls. ¶¶ 12–13. PPGNY alleges that it would not have hired Mitchell but for these representations. *Id.* ¶ 33. These allegations are sufficient.

Finally, PPGNY sufficiently pleads that the fraud caused it damages. To adequately plead this element of a fraud claim, the pleading must set forth sufficient facts to establish loss

causation and damages. "Loss causation 'is the causal link between the alleged misconduct and the economic harm ultimately suffered by the [counterclaimant].'" *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 172 (2d Cir. 2005) (quoting *Emergent Cap. Inv. Mgmt., LLC v. Stonepath Grp., Inc.,* 343 F.3d 189, 197 (2d Cir. 2003)). The pleading must state facts sufficient to show that the "loss was foreseeable to the party alleged to have concealed or misrepresented the material fact and that [the] loss was caused by the materialization of the concealed (or misrepresented) fact." *Glidepath Holding B.V. v. Spherion Corp.*, 590 F. Supp. 2d 435, 457 (S.D.N.Y. 2007). The damages themselves can be alleged with generality and are not subject to Rule 9(b). *See Robinson*, 2025 WL 1883597, at *5 (collecting cases). Here, PPGNY surpasses this bar.

PPGNY claims it "has suffered extensive damages, including but not limited to, the costs of the temporary housing, of investigating the scope of the fraud conducted by one of its senior executives, and of recruiting, hiring and training a replacement Chief Operating Officer." Am. Countercls. ¶ 39. These harms are a reasonably foreseeable consequence of Mitchell's alleged misstatements regarding his employment history that he presented to PPGNY as part of the hiring process and that resulted in his hiring by PPGNY. PPGNY need not specify a particular amount of damages sought. *See, e.g.*, *Robinson*, 2025 WL 1883597, at *5 (holding that a claim for damages from fraud is sufficient when the defendant "merely asks . . . for 'actual damages according to proof,' 'liquidated damages as provided by statute,' 'punitive damages according to proof,' and attorneys' fees"); *Xcellence, Inc. v. Arkin Kaplan Rice LLP*, No. 10-cv-03304 (HB), 2011 WL 1002419, at *5 (S.D.N.Y. Mar. 15, 2011) (finding that assertions in a complaint that the claimant "was 'damaged in an amount to be determined at trial' and specifie[d] that it paid two invoices . . . withst[oo]d a motion to dismiss"). PPGNY's Amended Counterclaims therefore plead each element of fraud sufficiently to survive a motion to dismiss.

Mitchell argues that PPGNY's fraud counterclaim should be dismissed because PPGNY acted negligently during the hiring process and failed to mitigate any harm incurred because it did not exercise reasonable care during the hiring process and discover Mitchell's alleged misrepresentations.  Br. at 17-20.  Mitchell claims that PPGNY had a duty to "to undertake reasonable efforts to ensure that their employees do not have a propensity for committing torts that the employer should reasonably foresee," *id.* at 18, and that PPGNY is "a negligent employer sporting a self-inflicted wound," *id.* at 19.  Relatedly, Mitchell argues that PPGNY has not pleaded that it was damaged by the alleged fraud because, "courtesy of its own negligent failures to undertake reasonable mitigation efforts and exercise self-styled remedies and its breach of its standing common law duty to not be negligent in its hiring practices, it cannot plead entitlement to damages."  *Id.* at 20-21.  The Court does not agree.

While an employer can be sued for failing to take reasonable care when hiring an employee, "contributory negligence is no bar to recovery because fraudulent misrepresentation is an intentional tort."  *Field v. Mans*, 516 U.S. 59, 70 (1995); *see also Commodity Futures Trading Comm'n v. Alexandre*, No. 22-cv-03822 (VEC), 2025 WL 270123, at *2 n.2 (S.D.N.Y. Jan. 22, 2025) ("Even if the purported defense were well pled, it would be legally irrelevant because contributory negligence is not a defense to fraud."); *Solutia Inc. v. FMC Corp.*, 456 F. Supp. 2d 429, 451–52 (S.D.N.Y. 2006) (dismissing an affirmative defense of "comparative and/or contributory negligence" in relation to a fraud claim).  More importantly, there are no allegations that suggest that PPGNY knew or should have known that Mitchell's representations during the hiring process were untruthful.  In addition, the duty to mitigate damages is an affirmative defense, *see Travellers Int'l., A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1580 (2d Cir. 1994), that is inappropriate to resolve at the motion to dismiss stage.  In sum, PPGNY has

adequately pleaded the elements of a fraud claim and that it suffered damages from Mitchell's alleged misrepresentations during the hiring process.

Based on the foregoing, the Court denies Mitchell's motion to dismiss PPGNY's fraud counterclaim.

### III.    Leave to Amend

PPGNY argues that any lack of specificity with respect to its breach of contract claim "is easily curable by amendment," Opp. at 13, and that Mitchell has not shown that amendment would be futile. *Id.* at 23. The Court agrees.

A court "should freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). It "may deny leave to amend 'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *Cohen v. Am. Airlines, Inc*., 13 F.4th 240, 247 (2d Cir. 2021) (per curiam) (quoting *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014)). Mitchell has not articulated any bad faith or undue delay, or shown that amendment would be futile. Mitchell's contention that leave to amend should be denied because PPGNY already amended its counterclaims in response to his prior motion to dismiss, Br. at 22, is unpersuasive. Just as the Court stated in granting Mitchell leave to amend his complaint, the Second Circuit is "'particularly skeptical of denials of requests to amend when a [party] did not previously have a district court's ruling on a relevant issue' because 'without the benefit of a ruling, many a [party] will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies.'" *Mitchell I,* 745 F. Supp. 3d at 108 (quoting *Attestor Value Master Fund v. Republic of Argentina*, 940 F.3d 825, 833 (2d Cir. 2019) (per curiam)); *cf. Cresci v. Mohawk Valley Cmty. Coll*., 693 F. App'x 21, 25 (2d Cir. 2017) (summary order) ("It is the [d]istrict [c]ourt's ruling, not the defendant's arguments in support of a motion to dismiss, that puts a plaintiff on notice of the complaint's deficiencies.").

Therefore, the Court will grant PPGNY leave to replead its breach of contract counterclaims. *See Cruz v. TD Bank, N.A.*, 742 F.3d 520, 523 (2d Cir. 2013) ("[I]t is the usual practice upon granting a motion to dismiss to allow leave to replead."); *see also Johnson v. AFNI, Inc.*, No. 22-cv-02930 (JGK), 2023 WL 2970919, at *3 (S.D.N.Y. Apr. 15, 2023) ("Because this is the first dismissal of the complaint and it cannot be concluded that the plaintiff cannot cure deficiencies in the complaint, the complaint is dismissed without prejudice.").

## CONCLUSION

For the aforementioned reasons, the Court GRANTS in part and DENIES in part Mitchell's motion to dismiss. PPGNY's breach of contract counterclaim based on the press conference and September 2024 disclosures is dismissed without prejudice to repleading within thirty (30) days if PPGNY still wishes to pursue those aspects of its breach of contract counterclaim. The Clerk of the Court is respectfully directed to terminate the motion at Dkt. 83.

Dated: January 2, 2026
    New York, New York

SO ORDERED.

*Jennifer Rochon*

JENNIFER L. ROCHON
United States District Judge

23