UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
SAMUEL RICARLOS MITCHELL, JR.,

*Plaintiff*,

Case No. 23-CV-1932

-against-

PLANNED PARENTHOOD OF GREATER NEW YORK, et al.,

*Defendants*.

---------------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE**

Tracey L. Brown, Esq.
The Cochran Firm
17 State Street, 14th Floor
New York, NY 10004
T: (212) 553-9215
F: (212) 227-8763
tbrown@cochranfirmny.com

# TABLE OF CONTENTS

TABLE OF CONTENTS ........ i

TABLE OF AUTHORITIES ........ iii

PRELIMINARY STATEMENT ........ 1

BACKGROUND ........ 4

I. PPGNY's Surviving Counterclaims ........ 4

II. The Alleged Omission of HCE ........ 5

III. Rennova, GIA, and Other Prior Employers Are Collateral to the HCE Issue ........ 5

IV. PPGNY's Generalized Pleading of Fraud Damages ........ 6

V. PPGNY Did Not Disclose Fraud Damages During Discovery ........ 7

LEGAL STANDARD ........ 7

ARGUMENT ........ 9

I. PPGNY Should Be Precluded from Referencing Rennova, GIA, or Any Prior Employer Other Than HCE ........ 9

II. PPGNY Should Not Be Permitted to Use Rennova, GIA, or Other Employers as Alternative Bases for Its Fraud Counterclaim ........ 13

III. The Risk of Unfair Prejudice and Jury Confusion Substantially Outweighs Any Marginal Probative Value ........ 14

IV. Evidence Concerning the HCE Lawsuit and Settlement Should Be Strictly Limited 15

V. PPGNY Should Be Precluded from Offering Character and Propensity Arguments . 16

VI. PPGNY Should Be Precluded from Introducing Any Evidence of Fraud Damages Because It Failed to Disclose Damages Information During Discovery ........ 17

VII. PPGNY's Nondisclosure Was Not Harmless ........ 21

VIII. PPGNY Should Not Be Permitted to Cure Its Nondisclosure Through Pretrial Submissions or Trial Evidence ........ 22

IX. Alternatively, Every Undisclosed Category or Computation of Fraud Damages Should Be Excluded ........ 22

X. Any Fraud-Damages Evidence Must Be Tied to the Particular Misrepresentation Allegedly Causing the Loss ........ 23

XI. Speculative Contract-Damages Theories Should Be Excluded ........ 23

XII. Evidence Unrelated to the Surviving Counterclaims Should Be Excluded ........ 24

CONCLUSION ........ 25

# TABLE OF AUTHORITIES

**Cases**


Arlio v. Lively, 474 F.3d 46 (S.D.N.Y.2007) ........ 8, 10, 17, 24

Bryant v. City of Hartford, 585 F.Supp.3d 179 (D.Conn 2022)........ 18

Carofino v. Forester, 2008 U.S. Dist. LEXIS 30609 (SDNY 2008) ........ 16

Doe v. Lima, 2020 U.S. Dist. LEXIS 25558 (S.D.N.Y. 2020)........ 2, 8, 14

Heredia v. Americare, Inc., 2020 U.S. Dist LEXIS 128880 (S.D.N.Y. 2020) ........ 19

Huddleston v. United States, 485 U.S. 681, 686 (1988) ........ 9

Lodge v. United Homes, LLC 787 F.Supp.2d 247 (E.D.N.Y, 2011)........ 19

Maddox v. Francemone, 2025 U.S. Dist. LEXIS 84320 (N.D.N.Y. 2025)........ 17

Old Chief v. United States, 519 U.S. 172 (1997)........ passim

Rodriguez v. City of New York, 2021 U.S. Dist. LEXIS 74835 (S.D.N.Y.2021)........ 19

Underpinning & Found. Skanska, Inc. v. Travelers, 726 F.Supp.2d 339 (S.D.N.Y.2010)........ 21

United States v. Ferguson, 246 F.R.D. 107 (D.Conn. 2007) ........ 11, 16

United States v. Garcia, 291 F.3d 127 (2d Cir 2002) ........ 9, 18

United States v. Rossy, 2023 U.S. Dist. LEXIS 207432 (S.D.N.Y 2023) ........ 12

United States v. Ulbricht, 79 F.Supp.3d 466 (S.D.N.Y.2015)........ 2, 8


**Statutes**


Fed R. Civ. P. 37........ 21

Fed. R. Civ. P. 26........ 18

## PRELIMINARY STATEMENT

This trial should decide questions concerning PPGNY's surviving breach-of-contract and fraud counterclaims. It should not become a wide-ranging examination of every position Mr. Mitchell has held, every variation among versions of his resume, or the merits and settlement of an unrelated employment dispute. Nor should PPGNY be permitted to present a fraud-damages case that it never disclosed during discovery.

A definitive ruling is necessary concerning references to Rennova, GIA, and Mr. Mitchell's other former employers. On March 7, 2023, Mr. Mitchell filed his lawsuit alleging discrimination and retaliation against PPGNY and held a press conference announcing the lawsuit. Two days later, PPGNY executive, Kelley Krutz conducted an internet search and circulated to PPGNY leadership an article about Mr. Mitchell's former employment with HCE. Two weeks later, PPGNY terminated Mr. Mitchell after discovering that his resume did not identify HCE, his immediately preceding employer. PPGNY's termination notice stated that Mr. Mitchell was terminated for cause due to his alleged misrepresentation of his employment history. The Court later examined the asserted basis for that decision and expressly found that PPGNY had identified Mr. Mitchell's omission of HCE—not matters concerning Rennova or GIA—as its reason for terminating him.

The Court discussed Rennova and other resume matters only as contextual information and expressly characterized the additional alleged inaccuracies as "not directly at issue" in the summary-judgment motion. Dkt. 121 at p. 11. The Court likewise explained that Mr. Mitchell's evidence concerning references from Rennova and GIA was inconsequential because PPGNY's stated reason for terminating him was his alleged misrepresentation concerning HCE. PPGNY should not now be permitted to place those collateral matters before the jury as alternative bases for fraud or as supposed proof that Mr. Mitchell has a dishonest character.

Any references to Rennova, GIA, or still other former employers would have little, if any, legitimate probative value once the trial is confined to the alleged HCE omission. Their presentation would instead require satellite disputes over corporate affiliates, consulting arrangements, overlapping engagements, job titles, and employment dates. Those collateral disputes would obscure the questions the jury must decide and create the substantial danger that the jury would infer that Mr. Mitchell acted fraudulently concerning HCE merely because PPGNY accuses him of inaccuracies concerning other entities.

Federal Rule of Evidence 404(b) does not permit evidence of other acts when offered to prove character and action in conformity with that character. Even under the Second Circuit's inclusionary approach, other-act evidence must concern a genuinely disputed issue, serve a proper non-character purpose, and survive Rule 403 balancing. Doe v. Lima, 2020 U.S. Dist. LEXIS 25558 (S.D.N.Y. 2020). The inclusionary approach is not permission to offer prior acts indiscriminately merely because they fall within the same general category as the conduct being tried United States v. Ulbricht, 79 F.Supp.3d 466, 479 (S.D.N.Y.2015).

The fraud-damages issue also requires a definitive pretrial ruling. PPGNY did not provide any category, computation, methodology, or supporting evidentiary material for damages arising from its fraud counterclaim in its initial disclosures. It did not cure that omission by supplementing its disclosures during discovery. PPGNY served no initial disclosures related to their counterclaims. PPGNY likewise did not otherwise provide Mr. Mitchell during discovery with a computation identifying the amount sought, the method used to calculate that amount, the documents supporting the calculation, or the causal allocation of any claimed expense between fraud and breach of contract.

At the pleading stage, PPGNY alleged generally that it incurred temporary-housing costs, costs associated with investigating the alleged fraud, and expenses associated with recruiting, hiring, and training a replacement Chief Operating Officer. The Court held only that those allegations were sufficient to plead damages because damages could be alleged generally at that procedural stage. Dkt. No. 96 at p. 12. That ruling did not excuse PPGNY from providing the damages information required in initial disclosures and discovery.

PPGNY's omission is neither technical nor harmless. Without a disclosed fraud-damages computation, Mr. Mitchell could not determine the amounts sought, test whether the claimed expenses were actually incurred, investigate causation, examine the allocation between counterclaims, or prepare a defense to each asserted category. PPGNY should not be permitted to cure that prejudice through pretrial submissions or evidence first presented to the jury. In fact, PPGNY has still not provided any discovery on their damages and only in September 2026 as part of their draft JPTOs for the first time provided self-serving calculations with no discovery to back up their claimed damages..

In addition, the evidence concerning Mr. Mitchell's prior HCE lawsuit and settlement should be limited. Mr. Mitchell's position is that the settlement's confidentiality provisions affected what he believed he could disclose about HCE. The agreement required confidentiality concerning the agreement, the nature and terms of the settlement, and its subject matter. Those provisions may bear on Mr. Mitchell's intent and understanding, but the underlying allegations, negotiations, settlement payment, and merits of the HCE dispute do not.

The Court should therefore preclude references to Rennova, GIA, and every prior employer other than HCE;[1] limit the HCE evidence to the narrow matters relevant to the alleged omission

[1] The requested ruling should encompass not merely exhibits but also opening statements, witness examinations, demonstratives, and summation. PPGNY should be directed to instruct its witnesses not to volunteer the names

and Mr. Mitchell's explanation; preclude PPGNY's undisclosed fraud-damages evidence; and impose the additional evidentiary limits stated below.

## BACKGROUND

### I. PPGNY's Surviving Counterclaims

PPGNY asserted counterclaims against Mr. Mitchell for breach of contract and fraud. The Court sustained the breach-of-contract counterclaim only insofar as it arose from Mr. Mitchell's alleged failure to establish New York residency within 90 days of his start date. The Court dismissed the contract theories based on Mr. Mitchell's March 2023 press conference and September 2024 publications.

The surviving residency theory arises from the February 23, 2022, Offer Letter. The agreement required Mr. Mitchell to establish residency in New York within 90 days and provided that PPGNY would pay for housing until the earlier of May 31, 2022, or the date he rented or purchased a New York residence. PPGNY paid for Mr. Mitchell's accommodation through May 31, 2022, after which Mr. Mitchell paid for his housing at his own expense through his March 2023 termination.

PPGNY's fraud counterclaim alleges that Mr. Mitchell misrepresented his employment history and professional qualifications during the hiring process by omitting HCE from his resume and application and answering in the negative to Interim CEO Ms. Calloway's question of whether there was anything in his background that she needed to know about. PPGNY alleges that it relied on those representations when hiring Mr. Mitchell and would not have hired him but for them.

---

Rennova, GIA, or any other prior employer besides HCE. If PPGNY later believes that Mr. Mitchell has opened the door to a particular item, it should first seek leave outside the jury's presence and identify the precise non-propensity purpose for which the evidence is offered.

The Court subsequently denied PPGNY's motion for summary judgment on liability for its breach-of-contract and fraud counterclaims, leaving those counterclaims for trial.

## II. The Alleged Omission of HCE

Mr. Mitchell applied to become PPGNY's Interim Chief Operating Officer in August 2021 through HealthTechS3. As part of his application, he submitted a resume, biography, and other materials. PPGNY hired him as Interim Chief Operating Officer in September 2021 and later as permanent Chief Operating Officer under an agreement signed on February 23, 2022.

In March 2023, when PPGNY terminated Mr. Mitchell's employment, they stated that it was for cause related to him not disclosing HCE as his former immediately before joining PPGNY. In addressing PPGNY's stated reason for termination at summary judgment, the Court explained that PPGNY relied upon the omission of HCE from Mr. Mitchell's resume and application materials. The Court subsequently reiterated that HCE—not Rennova or GIA—was the employment-history subject PPGNY identified as its basis for terminating Mr. Mitchell.

Mr. Mitchell testified that he omitted HCE because he understood the confidentiality clause in his HCE settlement agreement to prohibit him from identifying the company. The agreement required Mr. Mitchell to maintain the confidentiality of the agreement, the settlement's nature and terms, and its subject matter, while permitting him to state only that the dispute had been resolved.

## III. Rennova, GIA, and Other Prior Employers Are Collateral to the HCE Issue

Mr. Mitchell's resume identified positions at Rennova and GIA before his employment with PPGNY. During discovery and summary-judgment briefing, the parties disputed the descriptions and timing of those positions, including whether Mr. Mitchell's work for GIA began as unpaid or part-time consulting before he became a full-time employee. The Court expressly placed those subjects in their proper context. It characterized the matters involving Rennova and other resume entries as "additional inaccuracies" that were not directly at issue in the present

motion. The Court also found that PPGNY's termination rationale was the omission of HCE and that references from Rennova and GIA were therefore inconsequential to the stated basis for termination. Dkt. No. 121 at p. 22.

Evidence concerning Rennova would require collateral disputes over Mr. Mitchell's work for Rennova's subsidiaries and affiliates, the consolidation of those experiences under the parent company on his resume, his titles, and the timing of Rennova's public listing. Evidence concerning other employers would similarly require disputes over job titles, dates, and differences among employment documents and resume versions. Those collateral disputes are not necessary to determine whether Mr. Mitchell omitted HCE with fraudulent intent, whether PPGNY relied on that omission, or whether the omission caused a timely disclosed loss. They would instead broaden the trial into a general examination of Mr. Mitchell's employment history and character.

## IV. PPGNY's Generalized Pleading of Fraud Damages

In its Amended Counterclaims, PPGNY alleged that it suffered damages consisting of temporary-housing costs, costs of investigating the alleged fraud, and expenses associated with recruiting, hiring, and training a replacement Chief Operating Officer. At the motion-to-dismiss stage, the Court held that these generalized allegations were sufficient to plead damages and loss causation.

That ruling addressed the adequacy of PPGNY's pleading. It did not decide whether PPGNY later complied with its disclosure obligations or whether particular damages evidence would be admissible at trial.

## V. PPGNY Did Not Disclose Fraud Damages During Discovery[2]

Despite seeking affirmative monetary relief on its fraud counterclaim, PPGNY did not identify a fraud-damages category or provide a computation of fraud damages in its initial disclosures. Its disclosures did not state an amount sought for temporary housing, an investigation, recruiting, hiring, training, or any other purported fraud-related loss. They also did not identify a formula or methodology for calculating any such loss or the documents and other evidentiary materials supporting a computation. In fact, PPGNY made no initial disclosures on their counterclaims whatsoever, nor did they cure those omissions during discovery. It did not supplement its initial disclosures with a fraud-damages computation or otherwise provide Mr. Mitchell during discovery with information identifying: 1) The amount of fraud damages sought; 2) The amount attributed to each claimed category; 3) The manner in which each amount was calculated; 4) The documents or other evidentiary materials supporting each computation; 5) The alleged misrepresentation that purportedly caused each claimed loss; or 6) The allocation of any claimed expense between the fraud counterclaim, the residency-based contract counterclaim, and expenses PPGNY would have incurred regardless of the alleged misconduct.

Thus, although PPGNY pleaded generalized categories of purported loss, discovery closed without PPGNY providing a computation or evidentiary basis for damages attributable to its fraud counterclaim as well as some of the breach of contract damages.

## LEGAL STANDARD

Evidence is relevant only if it tends to make a consequential fact more or less probable than it would be without the evidence. Doe v. Lima, 2020 U.S. Dist. LEXIS 25558 (S.D.N.Y. 2020).

[2] PPGNY also failed to fully disclose contract damages in discovery. Only today, October 2, 2026, when pre-trial filings are due has PPGNY provided their proposed exhibits which include purported contract damage information that was not previously disclosed in discovery.

Rule 403 permits the Court to exclude relevant evidence when its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, wasting time, or needless presentation of cumulative evidence Old Chief v. United States, 519 U.S. 172, 179 (1997). Unfair prejudice includes an undue tendency to induce a decision on an improper basis rather than on proof specific to the matter being tried. Id.

Evidence concerning claims or damages not at issue does not become relevant merely because it supplies background or context. Courts are correspondingly reluctant to cloud the issues at trial with evidence concerning prior litigation involving one or both parties. Arlio v. Lively, 474 F.3d 46, 53 (S.D.N.Y.2007).

Rule 404(b)(1) prohibits using evidence of another act to establish a person's character and show that the person acted in accordance with that character on the occasion at issue. Although other-act evidence may be admissible for a proper purpose, it must relate to a genuinely disputed issue, remain relevant, and satisfy Rule 403. Doe v. Lima *supra*. The inclusionary approach to Rule 404(b) does not provide carte blanche to introduce prior acts merely because they fall within the same general category as the conduct being tried. United States v. Ulbricht *supra* at 479.

Other-act evidence presents a recognized danger that the factfinder will punish a party for the collateral act or infer that the party is a bad person inclined to engage in wrongdoing Huddleston v. United States, 485 U.S. 681, 686 (1988). Courts therefore examine whether the evidence serves a proper non-character purpose, relates to a disputed issue, survives Rule 403 balancing, and can be confined through an appropriate limiting instruction. United States v. Garcia, 291 F.3d 127,135 (2d Cir 2002).

## ARGUMENT

### I. PPGNY Should Be Precluded from Referencing Rennova, GIA, or Any Prior Employer Other Than HCE

PPGNY should be precluded from mentioning, eliciting testimony about, introducing documents concerning, or arguing about Rennova, GIA, or any prior employer or engagement other than HCE. The Court should likewise preclude PPGNY from referring to alleged inaccuracies, omissions, inconsistencies, or "red flags" associated with those entities.

The relevant issue is PPGNY's claim that Mr. Mitchell fraudulently omitted HCE from the employment history he provided during the hiring process. PPGNY apparently discovered Mr. Mitchell's employment with HCE in March 2023 and determined that HCE was not identified in his resume or biography. In seeking summary judgment, PPGNY characterized the discovery of Mr. Mitchell's HCE employment and the omission of HCE from his application materials as the intervening event that led to his termination. The evidence concerning references from Rennova and GIA did not refute that stated rationale because the asserted basis for termination concerned HCE.

That distinction controls the proper scope of the trial. Evidence is relevant only when it tends to make a consequential fact more or less probable. Doe v. Lima at 13. PPGNY's generalized characterization of this evidence as part of Mr. Mitchell's "employment history" cannot make every dispute involving every prior employer relevant. Relevance depends on the relationship between the evidence and a matter properly proven in the case; facts concerning claims or damages that are not at issue should be excluded. Arlio v. Lively *supra* at 53.

The Court's January 2, 2026, decision on Mr. Mitchell's motion to dismiss PPGNY's counterclaims sustaining the fraud counterclaim at the pleading stage does not require a different result. That decision accepted PPGNY's allegations that Mr. Mitchell made misrepresentations

concerning his employment history and qualifications in written submissions, interviews, and background-check responses. It did not adjudicate the admissibility of every employment-history matter or authorize PPGNY to prove one alleged misrepresentation through unrelated disputes involving other entities. Indeed, Rule 404(b)(1) prohibits using another act to establish character and action in conformity with that character. Doe v. Lima at 13.

The Court's August 14, 2026, summary-judgment decision reinforces the need for a limiting order. The Court described the Rennova matters and other resume entries as additional alleged inaccuracies that were not directly at issue and discussed them only for context. Dkt. No at 121 p. 11. PPGNY should not be permitted to transform contextual information from the summary-judgment record into substantive proof that Mr. Mitchell acted fraudulently regarding HCE.

The same limitation should apply to GIA. Although Mr. Mitchell's resume listed GIA during a period that overlapped with his HCE employment, the parties' dispute over GIA would require evidence concerning the progression from unpaid services to paid consulting and then full-time employment. That dispute would not resolve the narrower question whether Mr. Mitchell omitted HCE with an intent to defraud PPGNY. Instead, it would generate a separate controversy over how consulting work should have been characterized and dated.

The potential Rennova dispute would be even more attenuated. Mr. Mitchell's resume consolidated work involving Rennova, its subsidiaries, and affiliated entities under the parent company, and Mr. Mitchell testified that a recruiter advised him against separately listing each of the many subsidiaries and affiliates. Trying that issue would require testimony and documents concerning corporate relationships, multiple titles, the nature and duration of consulting services,

resume conventions, and the timing of Rennova's public listing. None of those subjects is necessary to determine whether Mr. Mitchell omitted HCE with the intent to defraud PPGNY.

Evidence concerning still other employers would expand the collateral inquiry further. The summary-judgment record identified possible disputes involving differences among resume versions, employment records, job titles, and dates associated with additional entities. If admitted, that evidence would require successive mini-trials concerning each employer and each challenged entry.

Rule 403 permits exclusion when probative value is substantially outweighed by unfair prejudice, confusion of the issues, misleading the jury, undue delay, wasting time, or needless cumulative presentation. Old Chief v. U.S. *supra* at 179. Courts exclude collateral evidence when its presentation threatens a "trial within a trial" that diverts the jury from the issues it must decide. United States v. Ferguson, 246 F.R.D. 107, 116 (D.Conn. 2007). Evidence involving an unrelated history can likewise be excluded when it risks creating multiple mini-trials over issues having only tangential bearing on the actual dispute. United States v. Rossy, 2023 U.S. Dist. LEXIS 207432, 9 (S.D.N.Y 2023).

Those dangers are substantial here. The jury could improperly infer that Mr. Mitchell intended to deceive PPGNY concerning HCE because PPGNY contends that he inaccurately described a different position. Other-act evidence carries the recognized danger that the factfinder will punish a party for collateral conduct or infer that the party is inclined to engage in wrongdoing. Huddleston at 686. The evidence would also invite the jury to aggregate unrelated disputes and reach a general conclusion about Mr. Mitchell's character instead of deciding whether PPGNY proved the particular alleged fraud and resulting loss.

The Second Circuit's inclusionary approach to Rule 404(b) does not save the evidence. Other-act evidence must be offered for a proper purpose, be relevant to an issue actually in dispute, survive Rule 403 balancing, and remain susceptible to an appropriate limiting instruction U.S. v. Garcia at 135. The inclusionary approach does not authorize indiscriminate admission of prior acts merely because they resemble the conduct at issue. Ulbricht at 479

PPGNY cannot avoid these restrictions by labeling the evidence proof of "intent," "knowledge," or "absence of mistake." A label does not establish that the evidence is genuinely relevant to a disputed issue or that its probative value outweighs its prejudicial effect. Rule 404(b) evidence must relate to an issue in dispute and satisfy Rule 403 even when a non-character purpose is asserted. Doe v. Lima at 13. Where the proposed evidence principally invites an inference of general dishonesty, the asserted non-propensity rationale is insufficient. Nor is the evidence necessary to give the jury a coherent account of the alleged fraud. PPGNY may present its contention that Mr. Mitchell worked for HCE immediately before joining PPGNY, omitted HCE from the materials supplied during the hiring process, and failed to disclose HCE when asked whether there was anything further in his background that Ms. Calloway should know. PPGNY does not need evidence concerning Rennova, GIA, or other former employers to present that theory.

The requested relief should apply throughout the trial. PPGNY, its counsel, and its witnesses should be prohibited from referring to Rennova, GIA, or any prior employer other than HCE during voir dire, opening statements, witness examinations, presentation of exhibits, use of demonstratives, and summation. PPGNY should also be directed to redact excluded employer names and related information from any otherwise admissible exhibit before displaying it to the jury.

PPGNY should further be required to instruct its witnesses not to volunteer excluded information. If PPGNY believes that testimony or argument at trial has opened the door to a particular item, it should first seek leave outside the jury's presence and identify the specific disputed issue and proper non-character purpose for which the evidence is offered. This procedure will prevent an inadmissible reference from creating prejudice that cannot be fully cured after the jury hears it.

## II. PPGNY Should Not Be Permitted to Use Rennova, GIA, or Other Employers as Alternative Bases for Its Fraud Counterclaim

PPGNY should also be precluded from presenting Rennova, GIA, or another prior employer as an alternative basis for liability. PPGNY's asserted rationale for terminating Mr. Mitchell was the discovery that he had omitted HCE from his resume and application materials. The termination notice itself stated only that Mr. Mitchell was terminated because of a misrepresentation of [his] employment history. The later summary-judgment record identified the underlying subject as HCE and explained that PPGNY discovered the HCE omission after finding the April 19, 2020, article on March 9, 2020.

PPGNY should not be allowed to broaden that theory at trial by arguing that it would have terminated Mr. Mitchell, declined to hire him, or suffered loss because of alleged issues involving Rennova, GIA, or other employers. Such an expansion would substitute collateral disputes for the alleged omission PPGNY actually identified and would obscure which representation supposedly caused which employment decision or economic loss.

The Court's pleading-stage decision does not establish the admissibility of such alternative theories. The Court held that PPGNY had adequately alleged misrepresentations for purposes of surviving dismissal. That ruling addressed whether the allegations stated a plausible claim, not whether every item referenced in discovery satisfies Rules 401, 403, and 404(b) at trial. The

distinction is especially important because PPGNY's counterclaim requires the jury to evaluate particular alleged representations rather than Mr. Mitchell's general character. Allowing PPGNY to present a catalogue of disputes involving multiple employers would encourage the jury to infer fraud from volume: if enough resume entries are challenged, the jury may assume the HCE omission must also have been fraudulent. That is precisely the character-to-conduct reasoning prohibited by Rule 404(b)(1). Doe v. Lima *supra* at 13.

The Court should therefore limit PPGNY to the alleged HCE omission and representations directly concerning whether Mr. Mitchell disclosed HCE. PPGNY should not be permitted to contend that Rennova, GIA, or another former employer independently supports liability, reliance, causation, or damages.

## III. The Risk of Unfair Prejudice and Jury Confusion Substantially Outweighs Any Marginal Probative Value

Even if some aspect of Mr. Mitchell's work for Rennova, GIA, or another employer has marginal relevance, Rule 403 warrants exclusion. The Supreme Court has recognized that unfair prejudice includes the capacity of evidence to induce a decision on a ground different from proof specific to the matter being tried. Old Chief v. U.S. *supra* at 179. Here, the collateral evidence would encourage the jury to decide whether Mr. Mitchell is generally honest rather than whether PPGNY proved the alleged HCE fraud.

The danger is not theoretical. PPGNY has used sweeping descriptions of Mr. Mitchell's employment history and alleged extensive fraudulent conduct. Its pleading alleged multiple forms of supposed resume misconduct, including omitted work history, claims regarding leadership positions, employment predating a company's existence, and credit for accomplishments allegedly belonging to others. Unless the Court imposes a clear boundary, those allegations could become a

vehicle for presenting an extended character case involving entities and events far removed from the HCE omission.

The time required to litigate those matters would be substantial. Evidence concerning Rennova would require the parties to address the relationships among the parent company, subsidiaries, and affiliates, as well as Mr. Mitchell's titles and services for those entities. Evidence concerning GIA would require the parties to distinguish unpaid services, paid consulting, and full-time employment. Evidence concerning additional employers would require still more testimony and documents addressing dates, job titles, compensation, separation circumstances, and differences among employment records.

Courts may exclude collateral fraud evidence under Rule 403 when it adds comparatively little to admissible evidence but risks diverting the jury to a separate question whether the collateral transaction was itself fraudulent. U.S. v. Ferguson *supra* at 116. Evidence concerning prior misconduct can similarly be excluded when it would likely confuse the jury about the issues properly before it. Carofino v. Forester, 2008 U.S. Dist. LEXIS 30609, 9 (SDNY 2008). Those principles apply directly here.

A limiting instruction would not adequately eliminate the danger created by repeated references to alleged dishonesty across numerous former employers. Once the jury hears that Mr. Mitchell supposedly misstated multiple positions, it would be difficult to prevent the jury from using the evidence as proof that he has a dishonest character. The more effective and proportionate remedy is to exclude the collateral evidence and confine the trial to HCE.

## IV. Evidence Concerning the HCE Lawsuit and Settlement Should Be Strictly Limited

Although HCE is the one prior employer properly at issue, the permissible evidence concerning HCE should remain narrow. Mr. Mitchell acknowledges that he omitted HCE from his resume and has explained that he understood the HCE settlement agreement's confidentiality

provision to restrict disclosure of that employer. The jury may therefore need to consider the existence of the settlement and the provisions bearing on Mr. Mitchell's asserted understanding and intent.

The agreement provided that its nature, terms, and subject matter would remain confidential and contained non-disparagement terms as well. Those provisions may be presented to the extent necessary to evaluate Mr. Mitchell's explanation. The remaining details of the HCE dispute should be excluded. The underlying allegations, the parties' settlement positions, the amount or form of consideration, the negotiations, and the merits of the prior controversy do not determine whether Mr. Mitchell intended to deceive PPGNY. Evidence about previous litigation is disfavored when it would cloud the issues presented at trial. Arlio v. Lively *supra* at 53.

The Court should therefore permit only the evidence necessary to establish that Mr. Mitchell worked for HCE, that the employment ended, that a dispute and settlement followed, and that the agreement contained the provisions relevant to Mr. Mitchell's asserted understanding. PPGNY should be precluded from suggesting that Mr. Mitchell's commencement of prior litigation reflects a litigious character, that settlement reflects wrongdoing, or that the merits of the HCE dispute demonstrate fraud in this case.

## V. PPGNY Should Be Precluded from Offering Character and Propensity Arguments

PPGNY should not refer to Mr. Mitchell as a "serial liar," "fraudster," "con man," "habitually dishonest," or by any comparable characterization. It likewise should not argue that alleged inaccuracies involving Rennova, GIA, or another employer establish that Mr. Mitchell acted in conformity with a dishonest character when dealing with PPGNY.

Rule 404(b)(1) prohibits the use of another act to prove a person's character and action in accordance with that character. Doe v. Lima at 13. The inclusionary approach is not "carte blanche" to admit prejudicial extrinsic-act evidence offered to prove propensity. Maddox v. Francemone,

2025 U.S. Dist. LEXIS 84320, 3 (N.D.N.Y. 2025). Evidence that appears to serve no meaningful function other than portraying a party as generally dishonest remains improper propensity evidence.

If the Court permits any collateral evidence over Mr. Mitchell's objection, PPGNY should be required to identify its precise evidentiary purpose outside the jury's presence. The Court should also limit the evidence to that purpose and instruct the jury that it may not use the evidence to conclude that Mr. Mitchell has a dishonest character or acted in conformity with such a character. Courts evaluating other-act evidence consider both whether a proper purpose exists and whether an appropriate limiting instruction can confine the jury's use of the evidence. U.S. Garcia *supra* at 135.

## VI. PPGNY Should Be Precluded from Introducing Any Evidence of Fraud Damages Because It Failed to Disclose Damages Information During Discovery

PPGNY seeks affirmative monetary relief on its fraud counterclaim, yet it did not provide a computation for any category of fraud damages in its initial disclosures. It did not disclose an amount, formula, methodology, allocation, or supporting evidentiary basis for temporary-housing expenses, investigation costs, replacement costs, or any other purported fraud-related loss. PPGNY also did not supplement its disclosures with that information at any time during discovery.

In federal actions within the Second Circuit, FRCP 26(a)(1)(A) mandates that unless exempted under Rule 26(a)(1)(B) or otherwise stipulated or ordered by the Court, a party must provide to other parties without awaiting a discovery request:

- The names, address and, telephone number of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses;
- A copy, or a description by category and location, of all documents, electronically stored information, and tangible things in the party's possession, custody, or control that it may use to support its claims or defenses;

- A computation of each category of damages claimed by the disclosing party, as well as the non-privileged documents or evidentiary material on which the computation is based.

Fed. R. Civ. P. 26; Bryant v. City of Hartford, 585 F.Supp.3d 179 (D.Conn 2022); Rodriguez v. City of New York, 2021 U.S. Dist. LEXIS 74835 (S.D.N.Y.2021).

Because these obligations explicitly apply to supporting a party's "claims", they also encompass counterclaims. Consequently, a defendant asserting a counterclaim is a claimant and must provide the required computations of damages and supporting witnesses and documents. Here, PPGNY provided absolutely nothing. Not until the drafting of the JPTO in September 2026, well after discovery closed on December 19, 2025 (Dkt. No. 77), have they provided calculations without any supporting documentation. In fact, in the days since the Parties have been meeting and conferring and exchanging draft Joint Pre-trial Orders PPGNY has materially changed their damage calculations three times, most recently yesterday, the day before the filings were due. Exhibits 1-3 hereto. Further, under FRCP 26(e)(1)(A), a party has an ongoing duty to timely supplement or correct its initial disclosures if it learns the information is incomplete or incorrect, and if the additional information has not otherwise been made known during the discovery process. Lodge v. United Homes, LLC 787 F.Supp.2d 247 (E.D.N.Y, 2011); Heredia v. Americare, Inc., 2020 U.S. Dist LEXIS 128880 (S.D.N.Y. 2020).

PPGNY's generalized pleading of damages does not cure that omission. The Court's January 2, 2026, decision held that PPGNY's allegations were sufficient at the pleading stage because damages could be alleged generally. The Court did not determine that PPGNY had substantiated any category of loss, established the amount of any loss, or satisfied its subsequent disclosure obligations. The distinction is dispositive here: the adequacy of a pleading does not establish the admissibility of evidence withheld throughout discovery.

Nor was Mr. Mitchell required to construct PPGNY's damages theory from undifferentiated documents. PPGNY bore the responsibility for identifying the damages it sought on its own counterclaim. Without a computation and supporting methodology, Mr. Mitchell could not know which expenses PPGNY attributed to fraud, which alleged misrepresentation supposedly caused each expense, or whether PPGNY intended to seek the same amount under both its fraud and contract theories.

The nondisclosure caused concrete prejudice. Mr. Mitchell was denied a meaningful opportunity during discovery to:

1. Determine the amount sought for each category of fraud damages;
2. Test whether each claimed expense was incurred;
3. Examine the methodology used to calculate each amount;
4. Identify and depose the witnesses responsible for the relevant calculations;
5. Test the causal relationship between each expense and a particular alleged misrepresentation;
6. Determine whether an expense instead arose from the residency dispute, Mr. Mitchell's termination, ordinary employee turnover, or another cause; and
7. Evaluate whether expert testimony or rebuttal evidence was necessary.

The prejudice is particularly substantial because the categories pleaded by PPGNY involve different documents, witnesses, calculations, and causation questions. Temporary housing expenses would require proof materially different from investigation costs or expenses associated with recruiting, hiring, and training a replacement. Without category-by-category computations, Mr. Mitchell could not conduct focused discovery concerning any of those theories.

Permitting PPGNY to introduce a damages calculation for the first time in pretrial submissions or at trial would also risk confusing and misleading the jury. Rule 403 authorizes exclusion when the probative value of evidence is substantially outweighed by unfair prejudice,

confusion, misleading the jury, undue delay, or wasting time. Old Chief v. United States, 519 U.S. 172, 179 (1997). A newly presented damages case would require the parties to litigate foundational discovery issues before the jury and would obscure the distinction between PPGNY's fraud and contract counterclaims.

In the Second Circuit, a party's failure to provide these initial disclosures for its counterclaims triggers the automatic and self-executing preclusion sanction of Fed. R. Civ. P. 37(c)(1). Specifically, the non-disclosing party is not allowed to use the undisclosed information ort witnesses to supply evidence on a motion, at a hearing, or at trial, unless the failure to disclose "was substantially justified or harmless". Fed R. Civ. P. 37(c)(1). Underpinning & Found. Skanska, Inc. v. Travelers Casualty & Surety Co. of America, 726 F.Supp.2d 339 (S.D.N.Y.2010). Under FRCP 37(c)(1), preclusion is designed to prevent the practice of sandbagging an opposing party with new evidence. Id.

The Court should therefore preclude PPGNY from introducing testimony, documents, summaries, computations, demonstratives, or argument concerning damages allegedly caused by fraud. PPGNY should also be precluded from requesting a fraud-damages award or asking the jury to calculate fraud damages from evidence that was never identified as supporting a disclosed computation.

In addition to or instead of precluding the evidence, a district Court has broad discretion under Rule 37 to impose alternative or additional sanctions. These consequences include:

- Payment of expenses: The Court may order the non-disclosing party, their attorney or both to pay the reasonable expenses, including attorney fees caused by the failure;
- Informing the jury: The Court may inform the jury of the party's failure to make the required disclosures.
- Procedural sanctions under Rule 37(b)(2)(A): the Court may issue severe procedural orders which include: directing that designated facts be taken as

> established for purposes of the action; prohibiting the disobedient party from supporting designated claims, or from introducing designated matters into evidence; striking pleadings (including counterclaims); staying further proceedings until the disclosure is made; dismissing the action un whole or in part or rendering a default judgement against the disobedient party.

## VII. PPGNY's Nondisclosure Was Not Harmless

PPGNY's omission persisted from its initial disclosures through the close of discovery. This was not a minor error involving a single supporting document. PPGNY failed to disclose the basic structure of its fraud-damages case: the categories pursued, the amount sought for each category, the method of calculation, the supporting evidence, and the allocation among claims.

The importance of damages to PPGNY's requested relief makes the omission more consequential, not less. PPGNY alleges that Mr. Mitchell's purported misrepresentations caused it economic harm. The Court held at the pleading stage that loss causation required a causal link between the alleged misconduct and the economic harm claimed. Yet PPGNY did not disclose the information necessary for Mr. Mitchell to test that asserted link.

A damages theory disclosed now would require additional document discovery, depositions, and potentially expert analysis. It would also require Mr. Mitchell to investigate whether the claimed expenditures were ordinary business expenses, whether PPGNY would have incurred them regardless of the alleged fraud, and whether they were caused by the alleged HCE omission rather than some other event.

A continuance would not provide a proportionate cure. It would require reopening discovery and delaying resolution of the action because PPGNY failed to provide information during the period established for discovery. The appropriate remedy is to confine PPGNY's trial presentation to information timely disclosed while discovery remained open.

### VIII. PPGNY Should Not Be Permitted to Cure Its Nondisclosure Through Pretrial Submissions or Trial Evidence

PPGNY should not be permitted to unveil its fraud-damages case in a proposed pretrial order, exhibit list, witness disclosure, proposed jury instruction, verdict form, opening statement, or trial testimony. Any amount, calculation, methodology, allocation, or supporting material first identified through those means would necessarily present a theory Mr. Mitchell had no opportunity to test during discovery.

The Court should preclude PPGNY from introducing evidence from which the jury would be invited to create its own damages calculation. A claimant may not avoid disclosing a computation by presenting a mass of expense records and asking the opposing party or jury to determine which entries might support an award. Such a presentation would leave the jury to speculate about the category, amount, allocation, and causal basis of the requested relief.

### IX. Alternatively, Every Undisclosed Category or Computation of Fraud Damages Should Be Excluded

If the Court does not preclude fraud damages in their entirety, it should exclude each category, computation, methodology, and supporting item that PPGNY did not disclose during discovery. PPGNY should not be permitted to combine its contract and fraud theories into an undifferentiated damages demand. In addition, any specific contract damages not previously disclosed should be precluded.

This alternative relief should apply specifically to temporary-housing expenses, investigation costs, and expenses associated with recruiting, hiring, or training a replacement Chief Operating Officer. Although PPGNY identified those categories generally in its pleading, it did not disclose a computation or supporting methodology for any of them. Pleading a category and disclosing a trial-ready computation are distinct matters.

The Court should also preclude any newly asserted category, including reputational injury, generalized operational disruption, unidentified lost opportunities, hypothetical savings, or anticipated profits. Evidence concerning damages not properly at issue should not be admitted merely as background or context. Arlio v. Lively *supra* at 53.

**X. Any Fraud-Damages Evidence Must Be Tied to the Particular Misrepresentation Allegedly Causing the Loss**

If any fraud-damages evidence is admitted, PPGNY should be required to connect each claimed expense to the particular representation it contends caused that expense. PPGNY should not be permitted to present an aggregate total encompassing multiple alleged representations, collateral employment-history disputes, the residency issue, Mr. Mitchell's termination, and ordinary replacement expenses.

This limitation is especially necessary if the Court grants Mr. Mitchell's request to confine the fraud claim to the alleged omission of HCE. In that event, PPGNY should not attribute to the HCE omission expenses allegedly resulting from a dispute concerning Rennova, GIA, another employer, residency, or a post-employment event. Allowing such aggregation would undermine the requested evidentiary limitation and make it impossible for the jury to determine which alleged act caused which claimed loss.

PPGNY's pleading-stage allegations do not establish causation at trial. The Court held only that the alleged costs were reasonably foreseeable consequences sufficient to survive dismissal. PPGNY must not be permitted to treat that preliminary ruling as proof that any particular expense was incurred, quantified, caused by the alleged fraud, or otherwise admissible.

**XI. Speculative Contract-Damages Theories Should Be Excluded**

PPGNY's surviving contract theory concerns Mr. Mitchell's alleged failure to establish New York residency within the required period. The Offer Letter required Mr. Mitchell to establish

New York residency and provided that PPGNY would pay for temporary housing until the earlier of May 31, 2022, or the date he rented or purchased a New York residence. PPGNY paid through May 31, 2022, and Mr. Mitchell thereafter extended his stay at his own expense.

PPGNY's contract-damages presentation should remain tied to that surviving residency theory. It should not seek reputational damages, generalized operational losses, replacement expenses unrelated to residency, unidentified lost opportunities, or other amounts that do not arise from the alleged failure to establish residency. PPGNY's housing cost theory should likewise be limited to amounts it attributes to the asserted breach through a timely disclosed computation. The Court's pleading-stage ruling found only that PPGNY had stated a plausible claim that it might not have incurred at least some temporary-housing costs if Mr. Mitchell had satisfied the residency requirement. That ruling did not establish that every housing payment is recoverable or relieve PPGNY of the obligation to prove the amount and causal basis of its requested damages.

Any attempt to present an undisclosed or speculative contract-damages theory would risk misleading the jury and confusing the issues. Rule 403 permits the Court to exclude evidence when those risks substantially outweigh its probative value. Old Chief v. U.S. *supra* at 179.

## XII. Evidence Unrelated to the Surviving Counterclaims Should Be Excluded

The Court dismissed PPGNY's contract theories arising from Mr. Mitchell's March 2023 press conference and September 2024 publications. It sustained only the contract theory concerning Mr. Mitchell's alleged failure to establish New York residency. PPGNY should not be permitted to revive the dismissed theories through evidence or argument at trial.

The March 2023 press conference, Mr. Mitchell's public criticism of PPGNY, alleged post-employment disclosures, and statements concerning former colleagues do not concern the surviving residency theory. Those matters also postdate the hiring representations underlying PPGNY's fraud counterclaim. Evidence concerning claims that are no longer at issue is not

relevant merely because it supplies background or context. Even if some aspect of those matters has marginal relevance, presenting them would risk unfair prejudice, confusion, undue delay, and a diversion into disputes the jury is not being asked to resolve. Rule 403 permits exclusion on those grounds.

The Court should therefore preclude PPGNY from presenting the dismissed allegations as independent evidence of breach, fraud, damages, or Mr. Mitchell's character.

**CONCLUSION**

Mr. Mitchell respectfully requests that the Court grant this motion and enter an order granting the relief sought in Mr. Mitchell's Notice of Motion.

Dated: October 2, 2026
New York, NY

Respectfully submitted,

/s/ Tracey L. Brown
Tracey L. Brown, Esq.